No. 23-10073

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

IVAN JIMENEZ, *et al.*,

*Plaintiff-Appellants*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendant-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
No. 19-21546-cv-DPG (Darrin P. Gayles, J.)

_____

**APPENDIX VOL. I**

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellants*

## INDEX of APPENDIX

**Document**                                                          **Docket/Tab #**

## VOLUME I

District Court Docket Sheet .............................................................A

Complaint .......................................................................1

Proof of Service ...............................................................11

Defendants' Motion for Summary Judgment ...................................29

Declaration of James V. M. L. Holzer..........................................29-1

Declaration of Eric F. Stein....................................................29-3

Stein Declaration Exhibits 1-29: State FOIA correspondence ........................29-4

Defendants' Statement of Undisputed Facts.....................................30

Plaintiffs' Motion for Status Conference and to Stay Briefing ......................44

Defendants' Response to Plaintiffs' Motion for Status Conference and to
    Stay Briefing.............................................................45

Plaintiffs' Reply for Status Conference and to Stay Briefing .........................47

Ex. A: 2/16/21 Raurell-McClanahan email ....................................47-1

Declaration of Fernando Pineiro ...............................................54-1

ICE Vaughn index ............................................................54-2

Machado 5/28/19 USCIS-ICE Referral letter..................................54-3

Machado 2/18/20 ICE FOIA response .........................................54-4

Machado 12/30/20 ICE FOIA response ........................................54-5

Machado 3/23/21 ICE FOIA response .................................................................54-6

Sealed Ex. A: Muñoz 2013 OBIM FOIA release ...............................................59-1

Sealed Ex. B: Muñoz 2019 OBIM FOIA release................................................59-2

Sealed Ex. C: Machado USCIS FOIA release (excerpt) ....................................59-3

## VOLUME II

Sealed Ex. D: Machado 2/18/20 ICE FOIA release (continued).....................59-4

Sealed Ex. E: Machado 6/9/20 ICE FOIA release ..............................................59-5

Sealed Ex. F: Machado 12/30/20 ICE FOIA release .........................................59-6

Sealed Ex. G: Machado 3/21/21 ICE FOIA release...........................................59-7

Sealed Ex. H: Machado State FOIA release (excerpt) .......................................59-8

Sealed Ex. I: Muñoz State FOIA release (excerpt) ............................................59-9

Sealed Ex. K: Vásquez State FOIA release (excerpt) ......................................59-11

Plaintiffs' Opposition to Summary Judgment....................................................61

Ex. L: Machado 6/9/20 ICE FOIA response.....................................................61-1

Ex. M: Litigation Considerations (excerpt) ......................................................61-2

Ex. N: Advanced FOIA Litigation (excerpt) .....................................................61-3

Ex. O: Machado 5/31/19 USCIS FOIA response ..............................................61-4

## VOLUME III

Declaration of Jill A. Eggleston ......................................................................66-1

Corrected Transcript of 3/17/21 Status Conference..........................................73

Defendants' Reply for Summary Judgment.........................................................74

Second Declaration of Eric F. Stein ..............................................................74-1

Machado 11/14/18 OBIM FOIA request ........................................................74-2

Plaintiffs' Reply for Summary Judgment .........................................................75

Ex. T: Machado 5/8/19 DHS FOIA response ..................................................75-1

Ex. V: Machado 11/20/18 DHS FOIA response ..............................................75-3

Report and Recommendation on Cross-Motions for Summary Judgment .......86

Transcript of 2/9/22 Motion Hearing...............................................................91

Order ............................................................................................................103

Notice of Appeal to Court of Appeals ...........................................................104

DOCKET

RECAP Actions

AOR,APPEAL,CLOSED,MOTREF,REF_EVENTS ONLY (NEFs),REF_RR,STAYED

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:19-cv-21546-DPG

Jimenez et al v. Department of Homeland Security et al
Assigned to: Judge Darrin P. Gayles
Referred to: Magistrate Judge Alicia M. Otazo-Reyes
Case in other court:  USCA, 23-10073-CC
Cause: 05:0552 Freedom of Information Act

Date Filed: 04/23/2019
Date Terminated: 03/03/2022
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Ivan Jimenez**                          represented by  **Kelly McClanahan**
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
Email: Kel@NationalSecurityLaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew Franklin Knopf**
Paul Knopf Bigger
840 South Denning Drive
Suite 200
Winter Park, FL 32789
407 622-2111
Fax: 407-622-2112
Email: andrew@pkblawfirm.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Juan Machado**                          represented by  **Kelly McClanahan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew Franklin Knopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Jose Munoz** | represented by | **Kelly McClanahan**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrew Franklin Knopf**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Guillermo Sencion** | represented by | **Kelly McClanahan**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrew Franklin Knopf**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Miguel Vasquez** | represented by | **Kelly McClanahan**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrew Franklin Knopf**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Department of Homeland Security** | represented by | **Carlos Javier Raurell**<br>United States Attorney's Office<br>99 NE 4 Street<br>Miami, FL 33132<br>305-961-9243<br>Fax: 305-530-7139<br>Email: carlos.raurell@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Department of State** | represented by | **Carlos Javier Raurell**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 04/23/2019 | 1 R | COMPLAINT against All Defendants. Filing fees $ 400.00 receipt number 113C-11580435, filed by Guillermo Sencion, Ivan Jimenez, Jose Munoz, Juan Machado, Miguel Vasquez. (Attachments: # 1 Summon(s) DHS, # 2 Summon(s) DOS, # 3 Summon(s) AG, # 4 Summon(s) USA-SDFL, # 5 Civil Cover Sheet) (Knopf, Andrew) (Entered: 04/23/2019) |
| 04/23/2019 | 2 | Clerks Notice of Judge Assignment to Judge Darrin P. Gayles.

Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Alicia M. Otazo-Reyes is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent.

Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (pcs) (Entered: 04/23/2019) |
| 04/23/2019 | 3 | Summons Issued as to Department of State, U.S. Attorney and U.S. Attorney General (pcs) (Entered: 04/23/2019) |
| 04/23/2019 | 4 | Clerks Notice to Filer re: Summons(es) cannot be issued. Summons NOT issued for the following reason - Incomplete Address for Department of Homeland Security. (pcs) (Entered: 04/23/2019) |
| 04/23/2019 | 5 | NOTICE OF COURT PRACTICE. Unless otherwise specified by the Court, every motion shall be double-spaced in Times New Roman 12-point typeface. **Multiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position.** If conflicts of position exist, parties shall explain the conflicts in their separate motions. Failure to comply with **ANY** of these procedures may result in the imposition of appropriate sanctions, including but not limited to, the striking of the motion or dismissal of this action. Signed by Judge Darrin P. Gayles (isc) (Entered: 04/23/2019) |
| 04/24/2019 | 6 | Summons Issued as to Department of Homeland Security (pcs) (Entered: 04/24/2019) |
| 04/26/2019 | 7 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for KellyMcClanahan. Filing Fee $ 75.00 Receipt # 113C-11590697 by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 5/10/2019 (Attachments: # 1 Text of Proposed Order Proposed Order on Motion for PHV)(Knopf, Andrew) (Entered: 04/26/2019) |
| 04/29/2019 | 8 | ENDORSED ORDER granting 7 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Kelly McClanahan is permitted to appear before this Court on behalf of Plaintiffs for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. McClanahan at Kel@NationalSecurityLaw.org. Signed by Judge Darrin P. Gayles (isc) (Entered: 04/29/2019) |

| | | |
|---|---|---|
| 05/09/2019 | 9 | ACKNOWLEDGMENT OF SERVICE as to 1 R Complaint, filed by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Knopf, Andrew) (Entered: 05/09/2019) |
| 05/09/2019 | 10 | NOTICE of Striking 9 Acknowledgment of Service filed by Jose Munoz, Guillermo Sencion, Ivan Jimenez, Miguel Vasquez, Juan Machado by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez (Knopf, Andrew) (Entered: 05/09/2019) |
| 05/09/2019 | 11 | SUMMONS (Affidavit) Returned Executed by Guillermo Sencion, Ivan Jimenez, Jose Munoz, Juan Machado, Miguel Vasquez. Department of Homeland Security served on 5/3/2019, answer due 7/2/2019; Department of State served on 5/3/2019, answer due 7/2/2019. (Knopf, Andrew) (Entered: 05/09/2019) |
| 05/22/2019 | 12 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 1 R Complaint, by Department of Homeland Security, Department of State. Attorney Carlos Javier Raurell added to party Department of Homeland Security(pty:dft), Attorney Carlos Javier Raurell added to party Department of State(pty:dft). (Raurell, Carlos) (Entered: 05/22/2019) |
| 05/22/2019 | 13 | Unopposed MOTION for ECF Access for Pro Hac Vice Counsel by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 05/22/2019) |
| 05/24/2019 | 14 | PAPERLESS ORDER granting 12 Defendant's Unopposed Motion for 30-day Extension of Time to Respond to Plaintiffs' Complaint. In light of Defendant's representations in the Motion, this case shall be administratively closed. The parties shall file a status report on or before July 3, 2019, advising the Court as to Defendant's progress in providing Plaintiffs with the requested documents. The parties shall continue to file status reports with the Court every sixty (60) days thereafter. Either party may move to reopen when warranted. Signed by Judge Darrin P. Gayles (lfn) (Entered: 05/24/2019) |
| 05/24/2019 | 15 | PAPERLESS Administrative Order Closing Case pursuant to the Court's 14 Order. Signed by Judge Darrin P. Gayles (lfn) (Entered: 05/24/2019) |
| 05/24/2019 | 16 | PAPERLESS ORDER denying 13 Plaintiffs' Unopposed Motion for ECF Access for Pro Hac Vice Counsel. Signed by Judge Darrin P. Gayles (lfn) (Entered: 05/24/2019) |
| 07/03/2019 | 17 | STATUS REPORT *regarding Defending Agencies' Processing of Plaintiffs' FOIA Requests* by Department of Homeland Security, Department of State (Raurell, Carlos) (Entered: 07/03/2019) |
| 03/27/2020 | 18 | STATUS REPORT *Regarding Underlying FOIA Requests* by Department of Homeland Security, Department of State (Raurell, Carlos) (Entered: 03/27/2020) |
| 06/01/2020 | 19 | STATUS REPORT *(THIRD) regarding underlying FOIA requests* by Department of Homeland Security, Department of State (Raurell, Carlos) (Entered: 06/01/2020) |
| 06/03/2020 | 20 | NOTICE by Department of State re 19 Status Report *(THIRD)* (Raurell, Carlos) (Entered: 06/03/2020) |
| 06/04/2020 | 21 | PAPERLESS ORDER Setting Status Conference: Telephonic Status Conference set for **10:00 A.M. on June 10, 2020**, before Judge Darrin P. Gayles. Counsel shall enter their appearances telephonically using the following dial-in information: |

|  |  |  |
|---|---|---|
|  |  | **Dial-in Number 888-273-3658**; **Access Code 7032614**; **Security Code 5170**. Please dial in at least ten minutes before the Status Conference begins and wait until your case is called. Signed by Judge Darrin P. Gayles (jsi) (Entered: 06/04/2020) |
| 06/10/2020 | 22 | PAPERLESS Minute Entry for proceedings held before Judge Darrin P. Gayles: Status Conference held on June 10, 2020. Attorney Appearances: Carlos Javier Raurell and Kelly McClanahan. Court Reporter: Patricia Diaz, 305-523-5178 / Patricia_Diaz@flsd.uscourts.gov. (jsi) (Entered: 06/10/2020) |
| 06/10/2020 | 23 | PAPERLESS ORDER. As set forth during the Status Conference on June 10, 2020, the parties shall submit their fourth Joint Status Report and a proposed amended scheduling order on or before **July 10, 2020**. All other requirements of submitting status reports shall be superseded by this Order. Signed by Judge Darrin P. Gayles (jsi) (Entered: 06/10/2020) |
| 07/10/2020 | 24 | Unopposed MOTION for Extension of Time to file Fourth Status Report and Proposed Schedule re 23 Administrative Order, by Department of Homeland Security, Department of State. Responses due by 7/24/2020 (Raurell, Carlos) (Entered: 07/10/2020) |
| 07/13/2020 | 25 | PAPERLESS ORDER granting 24 Defendants' Unopposed Motion for Two-Week Extension of Time to File Fourth Status Report and Joint Scheduling Report. The parties shall file their Fourth Status Report and Joint Scheduling Report on or before July 24, 2020. Signed by Judge Darrin P. Gayles (jsi) (Entered: 07/13/2020) |
| 07/23/2020 | 26 | STATUS REPORT *(JOINT) and Proposed Briefing Schedule* by Department of Homeland Security, Department of State (Raurell, Carlos) (Entered: 07/23/2020) |
| 08/17/2020 | 27 | ORDER - It is Ordered and Adjudged that the parties proposed briefing schedule detailed in the Fourth Joint Status Report and Proposed Briefing Schedule, [ECF No. 26], is ADOPTED. Signed by Judge Darrin P. Gayles on 8/17/2020. *See attached document for full details.* (scn) (Entered: 08/17/2020) |
| 10/07/2020 | 28 | Unopposed MOTION for Leave to File *Excess Pages in Consolidated Motion for Summary Judgment* by Department of Homeland Security, Department of State. (Raurell, Carlos) (Entered: 10/07/2020) |
| 10/07/2020 | 29 | Defendant's MOTION for Summary Judgment by Department of Homeland Security, Department of State. Responses due by 10/21/2020 (Attachments: # 1 Exhibit Holzer Declaration, # 2 Exhibit Eggleston Declaration, # 3 Exhibit Stein Declaration, # 4 Appendix Exhibits to Stein Declaration)(Raurell, Carlos) (Main Document 29 replaced on 4/15/2021) (ra). (Attachment 1 replaced on 4/15/2021) (ra). (Attachment 2 replaced on 4/15/2021) (ra). (Attachment 3 replaced on 4/15/2021) (ra). (Attachment 4 replaced on 4/15/2021) (ra). (Entered: 10/07/2020) |
| 10/07/2020 | 30 | Statement of: *Undisputed Facts* by Department of Homeland Security, Department of State re 29 Defendant's MOTION for Summary Judgment (Raurell, Carlos) (Entered: 10/07/2020) |
| 10/08/2020 | 31 | PAPERLESS ORDER granting 28 Defendants' Unopposed Motion for Leave to File Excess Pages in Their Motion for Summary Judgment. Defendants may file a motion for summary judgment that is no more than thirty (30) pages in length. *Clerks Notice: Filer must separately re-file the amended pleading pursuant to* |

| | | *Local Rule 15.1, unless otherwise ordered by the Judge.* Signed by Judge Darrin P. Gayles (jsi) (Entered: 10/08/2020) |
|---|---|---|
| 10/21/2020 | 32 | Notice of Supplemental Authority re 29 Defendant's MOTION for Summary Judgment by Department of Homeland Security, Department of State (Attachments: # 1 Exhibit Spadaro v. US Customs and Border Protection, No. 19-1157 (2d Cir. Oct. 20, 2020)) (Raurell, Carlos) (Entered: 10/21/2020) |
| 11/16/2020 | 33 | Unopposed Nunc Pro Tunc MOTION to Amend/Correct 27 Order, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 11/30/2020 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) Modified Text on 11/17/2020 (ls). (Entered: 11/16/2020) |
| 11/19/2020 | 34 | PAPERLESS ORDER granting 33 Plaintiffs' Unopposed *Nunc Pro Tunc* Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order. The parties shall adhere to following amended deadlines:<br><br>1. Plaintiffs shall file their response to Defendants' Motion(s) for Summary Judgment and/or any cross Motion(s) for Summary Judgment on or before **December 8, 2020**;<br><br>2. Defendants shall file their Reply in Support of their Motion(s) for Summary Judgment and Response(s) to any cross Motion(s) for Summary Judgment on or before **January 8, 2021**;<br><br>3. Plaintiffs shall file their Reply in Support of any cross Motion(s) for Summary Judgment on or before **January 29, 2021**;<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 11/19/2020) |
| 12/08/2020 | 35 | Unopposed MOTION to Amend/Correct 34 Order on Motion to Amend/Correct,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 12/22/2020 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 12/08/2020) |
| 12/09/2020 | 36 | PAPERLESS ORDER granting 35 Plaintiffs' Consent Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines:<br><br>1. Plaintiffs shall file their response to Defendants' Motion(s) for Summary Judgment and/or any cross Motion(s) for Summary Judgment on or before **January 8, 2021**;<br><br>2. Defendants shall file their Reply in Support of their Motion(s) for Summary Judgment and Response(s) to any cross Motion(s) for Summary Judgment on or before **February 8, 2021**; and<br><br>3. Plaintiffs shall file their Reply in Support of any cross Motion(s) for Summary Judgment on or before **March 2, 2021**. Signed by Judge Darrin P. Gayles (jsi) (Entered: 12/09/2020) |

| | | |
|---|---|---|
| 01/08/2021 | 37 | Consent MOTION to Amend/Correct 36 Order on Motion to Amend/Correct,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 1/22/2021 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 01/08/2021) |
| 01/14/2021 | 38 | PAPERLESS ORDER granting 37 Plaintiffs' Consent Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines:<br><br>1. Plaintiffs shall file their response to Defendants' Motion(s) for Summary Judgment and/or any cross Motion(s) for Summary Judgment on or before **January 29, 2021**;<br><br>2. Defendants shall file their Reply in Support of their Motion(s) for Summary Judgment and Response(s) to any cross Motion(s) for Summary Judgment on or before **March 1, 2021**; and<br><br>3. Plaintiffs shall file their Reply in Support of any cross Motion(s) for Summary Judgment on or before **March 23, 2021**.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 01/14/2021) |
| 01/29/2021 | 39 R | Consent MOTION to Amend/Correct 38 Order on Motion to Amend/Correct,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 2/12/2021 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 01/29/2021) |
| 02/03/2021 | 40 | PAPERLESS ORDER granting 39 R Plaintiffs' Consent Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines:<br><br>1. Plaintiffs shall file their response to Defendants' Motion(s) for Summary Judgment and/or any cross Motion(s) for Summary Judgment on or before January **February 8, 2021**;<br><br>2. Defendants shall file their Reply in Support of their Motion(s) for Summary Judgment and Response(s) to any cross Motion(s) for Summary Judgment on or before **March 11, 2021**; and<br><br>3. Plaintiffs shall file their Reply in Support of any cross Motion(s) for Summary Judgment on or before **April 2, 2021**.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/03/2021) |
| 02/08/2021 | 41 | Consent MOTION to Amend/Correct 40 Order on Motion to Amend/Correct,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 2/22/2021 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 02/08/2021) |
| 02/09/2021 | 42 | PAPERLESS ORDER granting 41 Plaintiffs' Consent Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines:<br><br>1. Plaintiffs shall file their response to Defendants' Motion(s) for Summary |

| | | |
|---|---|---|
| | | Judgment and/or any cross Motion(s) for Summary Judgment on or before **February 16, 2021**;<br><br>2. Defendants shall file their Reply in Support of their Motion(s) for Summary Judgment and Response(s) to any cross Motion(s) for Summary Judgment on or before **March 17, 2021**; and<br><br>3. Plaintiffs shall file their Reply in Support of any cross Motion(s) for Summary Judgment on or before **April 8, 2021**.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/09/2021) |
| 02/16/2021 | 43 | Unopposed MOTION to Seal *Certain Exhibits* per Local Rule 5.4 by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order) (Knopf, Andrew) (Entered: 02/16/2021) |
| 02/16/2021 | 44 | Plaintiff's MOTION for Hearing *Status Conference*, Plaintiff's MOTION to Stay *Briefing* ( Responses due by 3/2/2021) by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 02/16/2021) |
| 02/16/2021 | 45 R | RESPONSE in Opposition re 44 Plaintiff's MOTION for Hearing *Status Conference*Plaintiff's MOTION to Stay *Briefing* filed by Department of Homeland Security, Department of State. Replies due by 2/23/2021. (Attachments: # 1 R Exhibit Plaintiffs' Counsel's Twitter Feed, # 2 R Exhibit Email Exchange between Plaintiffs' Counsel and AUSA)(Raurell, Carlos) (Entered: 02/16/2021) |
| 02/16/2021 | 46 R | NOTICE by Department of Homeland Security, Department of State re 45 R Response in Opposition to Motion, *of Filing Supplement to Exhibit A* (Attachments: # 1 R Exhibit Additional Tweets by Plaintiff's Counsel) (Raurell, Carlos) (Entered: 02/16/2021) |
| 02/17/2021 | 47 R | REPLY to Response to Motion re 44 Plaintiff's MOTION for Hearing *Status Conference*Plaintiff's MOTION to Stay *Briefing* filed by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Exhibit A)(Knopf, Andrew) (Entered: 02/17/2021) |
| 02/25/2021 | 48 | PAPERLESS ORDER granting 43 Plaintiffs' Unopposed Motion to File Certain Exhibits Under Seal. Plaintiffs may file certain exhibits to their dispositive briefs under seal. Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/25/2021) |
| 02/25/2021 | 49 | PAPERLESS ORDER granting 44 Plaintiffs' Motion for Status Conference and deferring ruling on 44 Plaintiffs' Motion to Stay Briefing.<br><br>The parties shall attend a Telephonic Status Conference before Judge Darrin P. Gayles on March 17, 2021, at 10:00 A.M. Counsel shall enter their appearances telephonically using the following dial-in information: **Dial-in Number 888-273-3658; Access Code 7032614; Security Code 5170**. Please dial in at least ten minutes before the Telephonic Status Conference begins and wait until your case is called. Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/25/2021) |
| 03/17/2021 | 50 | PAPERLESS Minute Entry for proceedings held before Judge Darrin P. Gayles: Telephonic Status Conference held at 10:00 A.M. on March 17, 2021, regarding 44 Plaintiffs' Motion for Status Conference and to Stay Briefing. Attorney Appearances: Carlos Javier Raurell and Kelly McClanahan. Court Reporter: |

| | | |
|---|---|---|
| | | Patricia Diaz, 305-523-5178 / Patricia_Diaz@flsd.uscourts.gov. (jsi) (Entered: 03/17/2021) |
| 03/17/2021 | 51 | PAPERLESS ORDER REOPENING CASE. Signed by Judge Darrin P. Gayles (jsi) (Entered: 03/17/2021) |
| 03/17/2021 | 52 | PAPERLESS ORDER denying 44 Plaintiffs' Motion to Stay Briefing for the reasons stated during the Telephonic Status Conference on March 17, 2021. <br><br> Plaintiffs shall respond to 29 Defendants' Motion for Summary Judgment on or before **March 31, 2021**. Defendants shall file their reply on or before **April 7, 2021**. The parties' filings shall comply with all requirements detailed in the Court's 5 Notice of Court Practice, which requires filings to be double-spaced and in Times New Roman 12-point typeface. Signed by Judge Darrin P. Gayles (jsi) (Entered: 03/17/2021) |
| 03/25/2021 | 53 | TRANSCRIPT of Telephonic Status Conference held on 03/17/21 before Judge Darrin P. Gayles, 1-27 pages, Court Reporter: Patricia Diaz, 305-523-5178 / Patricia_Diaz@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/15/2021. Redacted Transcript Deadline set for 4/26/2021. Release of Transcript Restriction set for 6/23/2021. (pdz) (Entered: 03/25/2021) |
| 03/26/2021 | 54 | NOTICE by Department of Homeland Security re 29 Defendant's MOTION for Summary Judgment *(of filing Declaration Regarding ICE's Production of Records to Plaintiffs* (Attachments: # 1 Exhibit Declaration of Fernando Pineiro, # 2 Appendix Ex 1 to Pineiro Decl., # 3 Appendix Ex 2 to Pineiro Decl., # 4 Appendix Ex 3 to Pineiro Decl., # 5 Appendix Ex 4 to Pineiro Decl., # 6 Appendix Ex 5 to Pineiro Decl.) (Raurell, Carlos) (Entered: 03/26/2021) |
| 03/31/2021 | 55 | Unopposed MOTION to Amend/Correct *Motion to Modify Scheduling Order* by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 4/14/2021 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 03/31/2021) |
| 04/01/2021 | 56 | PAPERLESS ORDER granting 55 Plaintiffs' Unopposed Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines: <br><br> 1. Plaintiffs shall file their response to Defendants' 29 Motion for Summary Judgment and/or any cross Motion for Summary Judgment on or before **April 2, 2021**; <br><br> 2. Defendants shall file their Reply in Support of their Motion for Summary Judgment and Response to any cross Motion for Summary Judgment on or before **April 9, 2021**; and <br><br> 3. Plaintiffs shall file their Reply in Support of any cross Motion for Summary Judgment on or before **April 16, 2021**. <br><br> Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/01/2021) |

| 04/02/2021 | 57 | Plaintiff's MOTION to Amend/Correct 56 Order on Motion to Amend/Correct,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 4/16/2021 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/02/2021) |
|---|---|---|
| 04/06/2021 | 58 | PAPERLESS ORDER granting 57 Plaintiffs' Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines:<br><br>1. Plaintiffs shall file their response to Defendants' 29 Motion for Summary Judgment and/or any cross Motion for Summary Judgment on or before **April 6, 2021**;<br><br>2. Defendants shall file their Reply in Support of their Motion for Summary Judgment and Response to any cross Motion for Summary Judgment on or before **April 13, 2021**; and<br><br>3. Plaintiffs shall file their Reply in Support of any cross Motion for Summary Judgment on or before **April 20, 2021**.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/06/2021) |
| 04/06/2021 | | SYSTEM ENTRY - Docket Entry 59 [misc] restricted/sealed until further notice. (986202) (Entered: 04/06/2021) |
| 04/09/2021 | 60 | Unopposed MOTION for Leave to File Excess Pages by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/09/2021) |
| 04/09/2021 | 61 | RESPONSE in Opposition re 29 Defendant's MOTION for Summary Judgment filed by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Replies due by 4/16/2021. (Attachments: # 1 Exhibit L - 2d ICE response letter, # 2 Exhibit M - Litigation Considerations excerpts, # 3 Exhibit M - Advanced FOIA Litigation excerpts, # 4 Exhibit O - 3d USCIS response, # 5 Exhibit P - CJIS report, # 6 Exhibit Q - OBIM ADIS response, # 7 Exhibit R - Heyman testimony, # 8 Exhibit S - USCIS FOIA Guide excerpts, # 9 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/09/2021) |
| 04/09/2021 | 62 | Cross MOTION for Summary Judgment by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 4/23/2021 (Attachments: # 1 Exhibit L - 2d ICE response letter, # 2 Exhibit M - Litigation Considerations excerpts, # 3 Exhibit N - Advanced FOIA Litigation excerpts, # 4 Exhibit O - 3d USCIS response, # 5 Exhibit P - CJIS report, # 6 Exhibit Q - OBIM ADIS response, # 7 Exhibit R - Heyman testimony, # 8 Exhibit S - USCIS FOIA Guide excerpts, # 9 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/09/2021) |
| 04/09/2021 | 63 | Plaintiff's MOTION to Amend/Correct 58 Order on Motion to Amend/Correct,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 4/23/2021 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/09/2021) |
| 04/11/2021 | 64 R | Partially Unopposed MOTION for Extension of Time to File Response/Reply /Answer as to 61 Response in Opposition to Motion,, 62 Cross MOTION for |

| | | |
|---|---|---|
| | | Summary Judgment by Department of Homeland Security, Department of State. Responses due by 4/26/2021 (Raurell, Carlos) Modified Relief on 4/12/2021 (ls). (Entered: 04/11/2021) |
| 04/12/2021 | 65 | Clerks Notice to Filer re 64 **R** Defendant's MOTION for Extension of Time to file Reply in Support of Motion for Summary Judgment and to Disallow Further Reply from Plaintiffs re 61 Response in Opposition to Motion,, 62 Cross MOTION for Summary Judgment . **Wrong Motion Relief(s) Selected**; ERROR - The Filer selected the wrong motion relief(s) when docketing the motion. The correction was made by the Clerk. It is not necessary to refile this document but future motions filed must include applicable reliefs. (ls) (Entered: 04/12/2021) |
| 04/12/2021 | 66 **R** | Unopposed MOTION to Strike 29 Defendant's MOTION for Summary Judgment *and Replace Exhibit 2 in Defendants' Motion for Summary Judgment* by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 4/26/2021 (Attachments: # 1 Exhibit Eggleston Decl. (redacted), # 2 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/12/2021) |
| 04/12/2021 | 67 | PAPERLESS ORDER granting 63 Plaintiffs' *Nunc Pro Tunc* Unopposed Motion to Modify Scheduling Order. The Court finds good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines: <br><br> 1. Plaintiffs shall file their response to Defendants' 29 Motion for Summary Judgment and/or any cross Motion for Summary Judgment on or before **April 9, 2021**; <br><br> 2. Defendants shall file their Reply in Support of their Motion for Summary Judgment and Response to any cross Motion for Summary Judgment on or before **April 16, 2021**; and <br><br> 3. Plaintiffs shall file their Reply in Support of any cross Motion for Summary Judgment on or before **April 23, 2021**. <br><br> Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/12/2021) |
| 04/12/2021 | 68 | PAPERLESS ORDER granting 60 Plaintiffs' Unopposed Motion for Leave to File Excess Pages in Their Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment. Plaintiffs' 61 Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment shall not exceed twenty-five (25) pages. Plaintiffs' 62 Cross-Motion for Summary Judgment shall not exceed twenty-five (25) pages. Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/12/2021) |
| 04/12/2021 | 69 | PAPERLESS ORDER granting in part and denying in part 64 **R** Defendants' Partially Unopposed Motion for Modification of Briefing Schedule. <br><br> The Motion is **DENIED** as to Defendants' request to modify the briefing schedule. Plaintiffs' shall be permitted to file a Reply in support of their 62 Cross-Motion for Summary Judgment. <br><br> The Motion is **GRANTED** as to Defendants' request for an extension of time to file a Reply in support of their 29 Motion for Summary Judgment. The Court finds |

| | | |
|---|---|---|
| | | good cause to amend the current 27 Scheduling Order, as amended. The parties shall adhere to following amended deadlines:<br><br>1. Defendants shall file their Reply in support of their 29 Motion for Summary Judgment and Response in opposition to 62 Plaintiffs' Cross-Motion for Summary Judgment on or before **June 14, 2021**; and<br><br>2. Plaintiffs shall file their Reply in support of their 62 Cross-Motion for Summary Judgment on or before **June 28, 2021**.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/12/2021) |
| 04/12/2021 | 70 R | RESPONSE in Opposition re 64 R Partially Unopposed Motion for Extension of Time to File Response/Reply/Answer as to 61 Response in Opposition to Motion,, 62 Cross MOTION for Summary Judgment filed by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Replies due by 4/19/2021. (Attachments: # 1 R Exhibit A - Bahr declaration, # 2 Text of Proposed Order) (Knopf, Andrew) (Entered: 04/12/2021) |
| 04/12/2021 | | Reset Deadlines as to 29 Defendant's MOTION for Summary Judgment , Replies due by 4/16/2021. As to 62 Cross MOTION for Summary Judgment . Replies due by 4/23/2021. (ls)(per DE #67) (Entered: 04/13/2021) |
| 04/12/2021 | | Reset Deadlines as to 29 Defendant's MOTION for Summary Judgment , Replies due by 6/14/2021. As to 62 Cross MOTION for Summary Judgment . Responses due by 6/14/2021 and Replies due by 6/28/2021. (ls)(per DE #69) (Entered: 04/13/2021) |
| 04/15/2021 | 71 | PAPERLESS ORDER granting 66 R Plaintiffs' Unopposed Motion to Strike and Replace Exhibit. The Declaration of Jill A. Eggleston [29-2] attached to 29 Defendants' Motion for Summary Judgment is **STRIKEN**. The Clerk shall replace Docket Entry 29-2 with Docket Entry 66-1, the redacted version of the Declaration of Jill A. Eggleston. Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/15/2021) |
| 04/15/2021 | 72 | CLERK'S PAPERLESS NOTICE of Compliance re 71 Order on Motion to Strike, (ra) (Entered: 04/15/2021) |
| 04/27/2021 | 73 | Corrected Transcript and Notice of Correction of Corrected Transcript of Telephonic Status Conference held on 03/17/2021 before Judge Darrin P. Gayles, 1-26 pages, re: 53 Transcript, Court Reporter: Patricia Diaz, 305-523-5178 / Patricia_Diaz@flsd.uscourts.gov. (pdz) (Entered: 04/27/2021) |
| 06/14/2021 | 74 | RESPONSE in Opposition re 62 Cross MOTION for Summary Judgment *and REPLY in Further Support of Defendants' Motion for Summary Judgment* filed by Department of Homeland Security, Department of State. Replies due by 6/21/2021. (Attachments: # 1 Exhibit Second Stein Declaration, # 2 Exhibit Plaintiff Machado's FOIA Request to OBIM)(Raurell, Carlos) (Entered: 06/14/2021) |
| 07/08/2021 | 75 | REPLY to Response to Motion re 62 Cross MOTION for Summary Judgment filed by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Exhibit T - 2d OBIM letter, # 2 Exhibit U - Ex. L full, # 3 Exhibit V - 1st OBIM letter)(Knopf, Andrew) Modified/Stricken per DE 76 on 7/16/2021 (pes). Modified by removing stricken per DE 82 Vacating DE 76 Order on 8/17/2021 (mc). (Entered: 07/09/2021) |

| | | |
|---|---|---|
| 07/15/2021 | 76 | (VACATED per DE 82) PAPERLESS ORDER striking 75 Plaintiffs' Reply in Support of Their Cross-Motion for Summary Judgment. As stated in the Court's 69 Order on April 12, 2021, Plaintiffs' Reply was due June 28, 2021. Plaintiffs untimely filed their Reply on July 8, 2021, and failed to seek leave from the Court to extend the deadline. Signed by Judge Darrin P. Gayles (jsi) Modified text on 8/17/2021 (mc). (Entered: 07/15/2021) |
| 07/29/2021 | 77 | Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to 75 Reply to Response to Motion, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order) (Knopf, Andrew) (Entered: 07/29/2021) |
| 08/04/2021 | 78 | PAPERLESS ORDER regarding 77 Plaintiffs' *Nunc Pro Tunc* Motion for Enlargement of Time within which to File their Reply in Support of their Cross-Motion for Summary Judgment (the "Motion"). Defendants shall file a response to the Motion on or before **August 9, 2021**. Signed by Judge Darrin P. Gayles (jsi) (Entered: 08/04/2021) |
| 08/05/2021 | 79 | RESPONSE to Motion re 77 Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to 75 Reply to Response to Motion, filed by Department of Homeland Security, Department of State. Replies due by 8/12/2021. (Raurell, Carlos) (Entered: 08/05/2021) |
| 08/06/2021 | 80 | NOTICE by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez re 79 Response to Motion, *of Non-Reply* (Knopf, Andrew) (Entered: 08/06/2021) |
| 08/17/2021 | 81 | PAPERLESS ORDER granting 77 Plaintiffs' *Nunc Pro Tunc* Motion for Enlargement of Time Within Which to File Their Reply in Support of Their Cross-Motion for Summary Judgment. Plaintiffs' 75 Reply in Support of Their Cross-Motion for Summary Judgment shall be considered timely filed as of July 8, 2021. Signed by Judge Darrin P. Gayles (jsi) (Entered: 08/17/2021) |
| 08/17/2021 | 82 | PAPERLESS ORDER vacating the Court's 76 Order on July 15, 2021, pursuant to its 81 Order on August 17, 2021. Signed by Judge Darrin P. Gayles (jsi) (Entered: 08/17/2021) |
| 12/06/2021 | 83 | PAPERLESS ORDER REFERRING MOTIONS to Magistrate Judge Alicia M. Otazo-Reyes for a report and recommendation on 29 Defendants' Motion for Summary Judgment and 62 Plaintiffs' Cross-Motion for Summary Judgment. Signed by Judge Darrin P. Gayles on 12/6/2021. (jsi) (Entered: 12/06/2021) |
| 12/17/2021 | 84 | PAPERLESS ORDER Setting Hearing on 29 Defendant's MOTION for Summary Judgment , 62 Cross MOTION for Summary Judgment for 2/9/22 at 10:30 AM in Miami Division before Magistrate Judge Alicia M. Otazo-Reyes. The hearing will be conducted by Zoom Conference. Conference instructions will be provided to counsel via e-mail. Signed by Magistrate Judge Alicia M. Otazo-Reyes on 12/17/2021. (kvz) (Entered: 12/17/2021) |
| 02/09/2022 | 85 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia M. Otazo-Reyes: Motion Hearing held via ZOOM on 2/9/2022 re 29 Defendant's MOTION for Summary Judgment filed by Department of Homeland Security, Department of State, 62 Cross MOTION for Summary Judgment filed by Jose Munoz, Guillermo Sencion, Ivan Jimenez, Miguel Vasquez, Juan Machado. Report |

| | | |
|---|---|---|
| | | and Recommendation to follow. Total time in court: 2 hour(s) : 50 minutes. Attorney Appearance(s): Kelly McClanahan for the Plaintiffs; Carlos Javier Raurell for the Defendants. Zoom recording AOR_01_2/9/22. (wc) (Entered: 02/09/2022) |
| 02/24/2022 | 86 | REPORT AND RECOMMENDATION re 29 Defendants' MOTION for Summary Judgment; 62 Cross-MOTION for Summary Judgment filed by Jose Munoz, Guillermo Sencion, Ivan Jimenez, Miguel Vasquez, Juan Machado. Objections to R&R due by 3/10/2022. Signed by Magistrate Judge Alicia M. Otazo-Reyes on 2/24/2022. *See attached document for full details.* (kvz) (Entered: 02/24/2022) |
| 02/24/2022 | 87 | Plaintiff's MOTION for Extension of Time to file their objections re 86 REPORT AND RECOMMENDATIONS re 29 Defendant's MOTION for Summary Judgment filed by Department of Homeland Security, Department of State, 62 Cross MOTION for Summary Judgment filed by Jose Munoz, Guillermo Sencion, Iva by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Responses due by 3/10/2022 (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 02/24/2022) |
| 02/25/2022 | 88 | PAPERLESS ORDER denying without prejudice 87 Plaintiffs' Motion for Enlargement of Time Within Which to File Their Objections to the Report and Recommendation for failure to fully comply with S.D. Fla. L.R. 7.1(a)(3). Plaintiffs fail to identify with specificity their reasonable effort(s) to confer (including the date, time, and manner of each effort) and thus fail to fully comply with S.D. Fla. L.R. 7.1(a)(3). Therefore, the Motion must be denied without prejudice. Signed by Judge Darrin P. Gayles on 2/25/2022. (jsi) (Entered: 02/25/2022) |
| 03/02/2022 | 89 | MOTION for Extension of Time to File Response/Reply/Answer as to 86 REPORT AND RECOMMENDATIONS re 29 Defendant's MOTION for Summary Judgment filed by Department of Homeland Security, Department of State, 62 Cross MOTION for Summary Judgment filed by Jose Munoz, Guillermo Sencion, Iva by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 03/02/2022) |
| 03/03/2022 | 90 | PAPERLESS ORDER granting 89 Plaintiffs' Motion for Enlargement of Time Within Which to File Their Objections to the Report and Recommendation. Plaintiffs shall file any objections to Magistrate Judge Alicia M. Otazo-Reyes's 86 Report and Recommendation on or before **April 8, 2022**. This matter is **STAYED** and **CLOSED** for administrative purposes pending the filing of the objections. Signed by Judge Darrin P. Gayles on 3/3/2022. (jsi) (Entered: 03/03/2022) |
| 03/16/2022 | 91 | TRANSCRIPT of Motion Hearing (Via Videoconference) held on 2/9/22 before Magistrate Judge Alicia M. Otazo-Reyes, 1-107 pages, Court Reporter: Bonnie J. Lewis, 305-523-5635. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/6/2022. Redacted Transcript Deadline set for 4/18/2022. Release of Transcript Restriction set for 6/14/2022. (hh) (Entered: 03/17/2022) |
| 04/06/2022 | 92 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 86 REPORT AND RECOMMENDATIONS re 29 Defendant's MOTION for Summary Judgment filed by Department of Homeland Security, Department of State, 62 Cross MOTION for Summary Judgment filed by Jose Munoz, Guillermo |

| | | |
|---|---|---|
| | | Sencion, Iva by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/06/2022) |
| 04/12/2022 | 93 | PAPERLESS ORDER granting 92 Plaintiffs' Unopposed Motion for Enlargement of Time Within Which to File Their Objections to the Report and Recommendation. Plaintiffs shall file their Objections to Judge Alicia M. Otazo-Reyes's 86 Report and Recommendation on Cross-Motions for Summary Judgment on or before **April 13, 2022**. Signed by Judge Darrin P. Gayles on 4/12/2022. (jsi) (Entered: 04/12/2022) |
| 04/13/2022 | 94 | MOTION for Leave to File Excess Pages by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/13/2022) |
| 04/13/2022 | 95 | RESPONSE in Opposition re 94 MOTION for Leave to File Excess Pages filed by Department of Homeland Security, Department of State. Replies due by 4/20/2022. (Raurell, Carlos) (Entered: 04/13/2022) |
| 04/13/2022 | 96 | PAPERLESS ORDER granting in part and denying in part 94 Plaintiffs' Motion for Leave to Exceed Page Limit. Plaintiffs' Objections shall not exceed twenty-five (25) pages. The Government's Response to the Objections shall not exceed twenty-five (25) pages. Signed by Judge Darrin P. Gayles on 4/13/2022. (jsi) (Entered: 04/13/2022) |
| 04/13/2022 | 97 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 86 REPORT AND RECOMMENDATIONS re 29 Defendant's MOTION for Summary Judgment filed by Department of Homeland Security, Department of State, 62 Cross MOTION for Summary Judgment filed by Jose Munoz, Guillermo Sencion, Iva by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/13/2022) |
| 04/14/2022 | 98 | PAPERLESS ORDER granting 97 Plaintiffs' Unopposed Motion for Enlargement of Time Within Which to File Their Objections to the Report and Recommendation. Plaintiffs shall file their Objections to Magistrate Judge Alicia M. Otazo-Reyes's 86 Report and Recommendation on Cross-Motions for Summary Judgment on or before **April 14, 2022**. Signed by Judge Darrin P. Gayles on 4/14/2022. (jsi) (Entered: 04/14/2022) |
| 04/15/2022 | 99 | OBJECTIONS to 86 Report and Recommendations by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Knopf, Andrew) (Entered: 04/15/2022) |
| 04/15/2022 | 100 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 86 REPORT AND RECOMMENDATIONS re 29 Defendant's MOTION for Summary Judgment filed by Department of Homeland Security, Department of State, 62 Cross MOTION for Summary Judgment filed by Jose Munoz, Guillermo Sencion, Iva by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. (Attachments: # 1 Text of Proposed Order)(Knopf, Andrew) (Entered: 04/15/2022) |
| 04/15/2022 | 101 | PAPERLESS ORDER granting 100 Plaintiffs' Unopposed *Nunc Pro Tunc* Motion for Enlargement of Time Within Which to File Their Objections to the Report and Recommendation. Plaintiffs' 99 Objections to Magistrate Judge Alicia M. Otazo- |

| | | |
|---|---|---|
| | | Reyes's 86 Report and Recommendation on Cross-Motions for Summary Judgment shall be considered timely filed as of **April 15, 2022**. Signed by Judge Darrin P. Gayles on 4/15/2022. (jsi) (Entered: 04/15/2022) |
| 04/29/2022 | 102 | RESPONSE TO OBJECTION to 86 Report and Recommendations by Department of Homeland Security, Department of State. (Raurell, Carlos) (Entered: 04/29/2022) |
| 11/03/2022 | 103 R | ORDER: Report and Recommendation DE 86 is AFFIRMED AND ADOPTED. Defendants' Motion for Summary Judgment, DE 29 , is GRANTED. Plaintiffs' Cross-Motion for Summary Judgment, DE 62 , is DENIED. Signed by Judge Darrin P. Gayles on 11/3/2022. *See attached document for full details.* (mab) (Entered: 11/03/2022) |
| 01/02/2023 | 104 | Notice of Appeal *to Court of Appeals* as to 103 R Order Adopting Report and Recommendations,, Order on Motion for Summary Judgment,, Order on Report and Recommendations,,, by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez. Filing fee $ 505.00 receipt number AFLSDC-16208180. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Knopf, Andrew) (Entered: 01/02/2023) |
| 01/09/2023 | | Transmission of Notice of Appeal, Order and Docket Sheet to US Court of Appeals re 104 Notice of Appeal, Notice has been electronically mailed. (kpe) (Entered: 01/09/2023) |
| 01/12/2023 | 105 | Acknowledgment of Receipt of NOA from USCA re 104 Notice of Appeal, filed by Jose Munoz, Guillermo Sencion, Ivan Jimenez, Miguel Vasquez, Juan Machado. Date received by USCA: 01/09/2023. USCA Case Number: 23-10073-C. (jes) (Entered: 01/12/2023) |
| 01/30/2023 | 106 | TRANSCRIPT INFORMATION FORM by Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion, Miguel Vasquez re 104 Notice of Appeal. All necessary transcript(s) already on file. No Transcript Requested. (Knopf, Andrew) Modified text on 1/31/2023 (apz). (Entered: 01/30/2023) |
| 09/12/2023 | 107 | ORDER of DISMISSAL from USCA (APPEAL REINSTATED ON 9/20/2023 PER DE 108 USCA ORDER). This appeal is hereby DISMISSED for want of prosecution because the appellant Ivan Jimenez, Juan Machado, Jose Munoz, Guillermo Sencion and Miguel Vasquez has failed to file an appellant's brief within the time fixed by the rules, effective September 12, 2023 re 104 Notice of Appeal, filed by Jose Munoz, Guillermo Sencion, Ivan Jimenez, Miguel Vasquez, Juan Machado. USCA #23-10073-CC (jgo) Modified text on 9/22/2023 (apz). (Entered: 09/12/2023) |
| 09/20/2023 | 108 | Appeal Reinstated USCA Case Number: 23-10073-CC for 104 Notice of Appeal, filed by Jose Munoz, Guillermo Sencion, Ivan Jimenez, Miguel Vasquez, Juan Machado. (apz) (Entered: 09/22/2023) |

**PACER Service Center**

DE 1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

IVAN JIMENEZ                                    *
11250 NW 50th Terrace                           *
Miami, FL  33178,                               *
                                                *
        and                                     *
                                                *
JUAN MACHADO                                     *
Calle José Joaquin Puello 14                     *
Villa Consuelo                                   *
Santo Domingo, Dominican Republic,              *
                                                *
        and                                     *
                                                *
JOSE MUNOZ                                       *
Avenida Imbert No. 72                            *
La Vega, Dominican Republic,                    *      Civil Action No.
                                                *
        and                                     *
                                                *
GUILLERMO SENCION                                *
Ave. 27 de Feb. No. 495                          *      **COMPLAINT**
Torre Forum, Piso 15                             *
Santo Domingo, Dominican Republic,              *
                                                *
        and                                     *
                                                *
MIGUEL VASQUEZ                                   *
Calle Sanabacoa 2                                *
Santo Domingo, Dominican Republic,              *
                                                *
        Plaintiffs,                              *
                                                *
        v.                                       *
                                                *
DEPARTMENT OF HOMELAND                           *
SECURITY                                         *
Washington, DC  20528,                           *
                                                *
        and                                     *
                                                *

DEPARTMENT OF STATE      *
2201 C Street, NW      *
Washington, DC  20520,      *
     *
  Defendants.      *
     *
*   *   *   *   *   *   *   *   *   *   *   *   *

Plaintiffs Iván Jiménez, Juan Machado, José Muñoz, Guillermo Sención, and Miguel Vásquez bring this action against Defendants Department of Homeland Security and Department of State pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"), the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## JURISDICTION

1.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2.      Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Iván Jiménez ("Jiménez") is a legal resident of the State of Florida.

4.      Plaintiff Juan Machado, a/k/a Juan Machado Amadis ("Machado")[1] is a citizen of the Dominican Republic and is a resident of Santo Domingo, DR.

---

[1] In Spanish-speaking cultures, a person generally has two surnames—the first being the father's surname and the second being the mother's last name before marriage (generally referred to in the United States as a "maiden name")—while the United States does not generally practice this custom. *See* Gerald Erichsen, *Spanish Surnames*, ThoughtCo.com (Feb. 24, 2018), *at* https://www.thoughtco.com/spanish-surnames-mother-and-father-3078099 (last accessed Apr. 20, 2019) (comparing naming customs).  Accordingly, this Complaint will follow the U.S. naming custom for Plaintiffs who reside outside the United States, and the Spanish alternative

5.      Plaintiff José Muñoz, a/k/a José Muñoz Moncion ("Muñoz") is a citizen of the Dominican Republic and is a resident of La Vega, DR.

6.      Plaintiff Guillermo Sención, a/k/a Guillermo Sención Suarez ("Sención") is a citizen of the Dominican Republic and is a resident of Santo Domingo, DR.

7.      Plaintiff Miguel Vásquez, a/k/a Miguel Vásquez Escoto ("Vásquez") is a citizen of the Dominican Republic and is a resident of Santo Domingo, DR.

8.      Defendant Department of Homeland Security ("DHS") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records requested by Plaintiffs which are the subject of this action.

9.      The Office of Biometric Identity Management ("OBIM") and United States Citizenship and Immigration Services ("USCIS") are DHS components.

10.     Defendant Department of State ("State") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records requested by Plaintiffs which are the subject of this action.

## _PART I: OBIM RECORDS_

## FIRST CAUSE OF ACTION

## (JIMENEZ/MACHADO – OBIM – CONSTRUCTIVE RECORDS DENIAL – 2019-OBFO-05965)

11.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

---

names are listed solely out of recognition that some of the administrative correspondence followed the Spanish custom.

12.     On 14 November 2018, Jiménez and Machado, through undersigned counsel, submitted to OBIM by email a FOIA request for "all information located in the Automated Biometric Identification System ("IDENT"), Arrival Departure Information System ("ADIS"), and other OBIM systems about Mr. Machado."

13.     On 20 November 2018, OBIM acknowledged receipt of this request and assigned it Request No. 2019-OBFO-05965.  OBIM directed the requesters to submit an original fingerprint card for Machado, which they did the same day, and which was received by OBIM on 23 November 2018.

14.     Plaintiffs have not received any substantive response from OBIM to this request as of this writing.

15.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by OBIM of said right.

### SECOND CAUSE OF ACTION

### (JIMENEZ/MUNOZ – OBIM – RECORDS DENIAL – 2019-OBFO-05969)

16.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

17.     On 17 May 2013, Muñoz, through counsel, submitted to OBIM a FOIA request for information about himself ("1st Muñoz request").

18.     On 30 July 2013, OBIM acknowledged receipt of this request and assigned it Request No. DHS/USV 13-9620.  OBIM stated that it had searched the IDENT and ADIS systems, and it released several records in part to Muñoz.

4

19.      On 14 November 2018, Jiménez and Muñoz, through undersigned counsel, submitted to OBIM by email a FOIA request for "all information located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz."

20.      The request further stated that all information which was responsive to the 1st Muñoz request is also responsive to this request, but specified that this request has a broader scope: "First, this request covers *all* information about Mr. Muñoz, not just the information contained in the IDENT and ADIS systems.  Second, this request covers all information created since the processing of his earlier request as well as the information already processed."

21.      The request also stated that OBIM may exclude any records previously released in full to Muñoz.

22.      On 20 November 2018, an OBIM representative emailed Plaintiffs' undersigned counsel and stated, "I was able to locate the original documents sent to your client in 2013; therefore, there is no need to re-submit finger prints."  The representative also alleged, "I would like to point out is that OBIM no longer 'owns' ADIS, so you'll need to submit a separate request to Customs and Border Protection for those records.  Additionally, OBIM wouldn't possess any records other than those found in IDENT."

23.      On 20 November 2018, OBIM acknowledged receipt of this request and assigned it Request No. 2019-OBFO-05969.

24.      On 21 March 2019, OBIM released several records in part.

25.      On 21 March 2019, Plaintiffs appealed the adequacy of OBIM's search for responsive records and all withholdings to DHS.  DHS acknowledged this appeal on 1 April 2019 and assigned it Appeal No. 2019-HQAP-00187.

26.     Plaintiffs have not received any substantive response from DHS to this appeal as of this writing.

27.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by OBIM of said right.

### THIRD CAUSE OF ACTION

### (JIMENEZ/SENCION – OBIM – RECORDS DENIAL – 2018-OBFO-17760)

28.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

29.     On 3 March 2018, Sención, through counsel, submitted to OBIM a FOIA request for "[a] complete copy of all the files, records, notes, correspondence, etc. that you have on [him] from January 2000 until present day, including emails and letters."

30.     On or around 28 March 2018, OBIM acknowledged receipt of this request and assigned it Request No. 2018-OBFO-17760.

31.     On 5 June 2018, OBIM informed Sención that it had searched the IDENT system and located no responsive records.

32.     On 12 September 2018, Sención appealed the adequacy of OBIM's search for responsive records to DHS.

33.     On 17 October 2018, Plaintiffs' undersigned counsel informed DHS by email that Jiménez had joined the request as a co-requester.

34.     DHS acknowledged this appeal on 18 October 2018 and assigned it Appeal No. 2019-HQAP-00026.

35.     On 25 October 2018, DHS affirmed OBIM's response.

36. Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by OBIM of said right.

## *PART II: USCIS RECORDS*

## **FOURTH CAUSE OF ACTION**

## **(JIMENEZ/MACHADO – USCIS – CONSTRUCTIVE RECORDS DENIAL – NRC2018089200)**

37. Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

38. On 3 June 2018, Jiménez and Machado, through undersigned counsel, submitted to USCIS by email a FOIA request for "an electronic copy of Mr. Machado Amadis' alien file."

39. On 11 June 2018, USCIS acknowledged receipt of this request and assigned it Request No. NRC2018089200.

40. Plaintiffs have not received any substantive response from USCIS to this request as of this writing.

41. Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by USCIS of said right.

## **FIFTH CAUSE OF ACTION**

## **(JIMENEZ/MUNOZ – USCIS – RECORDS DENIAL – NRC2018188049)**

42. Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

43. On 16 November 2018, Jiménez and Muñoz, through undersigned counsel, submitted to USCIS by email a FOIA request for "an electronic copy of Mr. Muñoz' alien file."

44.     On 26 December 2018, USCIS acknowledged receipt of this request and assigned it Request No. NRC2018188049.  USCIS informed Plaintiffs that it had searched the Central Index System and Person Centric Query System and located no responsive records.

45.     On 10 March 2019, Plaintiffs appealed the adequacy of USCIS's search for responsive records.  USCIS acknowledged this appeal on 13 March 2019 and assigned it Appeal No. APP2019000357.  USCIS affirmed its original response.

46.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by USCIS of said right.

## SIXTH CAUSE OF ACTION

### (JIMENEZ/SENCION – USCIS – RECORDS DENIAL – NRC2018089201)

47.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

48.     On 3 June 2018, Jiménez and Sención, through undersigned counsel, submitted to USCIS by email a FOIA request for "an electronic copy of Mr. Sencion Suarez' alien file."

49.     On 11 June 2018, USCIS acknowledged receipt of this request and assigned it Request No. NRC2018089201.  USCIS informed Plaintiffs that it had searched the Central Index System and Computer Linked Applications Information Management System and located no responsive records.

50.     On 12 September 2018, Plaintiffs appealed the adequacy of USCIS's search for responsive records.  USCIS acknowledged this appeal on 30 October 2018 and assigned it Appeal No. APP2018001414.  USCIS affirmed its original response.

51.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by USCIS of said right.

8

### *PART III: STATE RECORDS*

### **SEVENTH CAUSE OF ACTION**

### **(JIMENEZ/MACHADO – STATE – CONSTRUCTIVE RECORDS DENIAL – F-2018-04237)**

52.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

53.     On 3 June 2018, Jiménez and Machado, through undersigned counsel, submitted to State by fax a FOIA request for four categories of records pertaining to Machado.

54.     The request further stated that State may exclude any records previously released in full to Machado, any records about the processing of his previous FOIA requests, and any records about the conduct of the previous FOIA case *Machado Amadis v. DOJ*, No. 16-2230 (D.D.C.).

55.     The request also specifically directed State to process any records which were withheld in full or in part in response to a previous FOIA request and to "perform new searches for records responsive to each of the items in this request, since they are broader than his previous requests."

56.     On 9 July 2018, State acknowledged receipt of this request and assigned it Request No. F-2018-04237.  State claimed that it had not received the complete request, and Plaintiffs resubmitted the request the same day.

57.     Plaintiffs have not received any substantive response from State to this request as of this writing.

58.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by State of said right.

**EIGHTH CAUSE OF ACTION**

**(JIMENEZ/MUNOZ – STATE – RECORDS DENIAL – F-2014-09926)**

59.　　Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

60.　　On or around 9 June 2014, Muñoz, through counsel, submitted to State a FOIA request for information about himself.

61.　　State acknowledged receipt of this request and assigned it Request No. F-2014-09926.

62.　　On 1 March 2016 and 18 October 2018, State released several records in part to Muñoz.

63.　　On 9 November 2018, Plaintiffs' undersigned counsel informed State by fax that Jiménez had joined the request as a co-requester and appealed the adequacy of State's search for responsive records and all withholdings.  State acknowledged this appeal on 20 December 2018.

64.　　Plaintiffs have not received any substantive response from State to this appeal as of this writing.

65.　　Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by State of said right.

**NINTH CAUSE OF ACTION**

**(JIMENEZ/SENCION – STATE – RECORDS DENIAL – F-2018-06912)**

66.　　Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

67.　　On 21 February 2018, Sención, through counsel, submitted to State a FOIA request for information about himself ("1st Sención request").

10

68.     On or around 3 May 2018, State acknowledged receipt of this request and assigned it Request No. F-2018-01563.  State released several records in part to Sención.

69.     On 11 September 2018, Jiménez and Sención, through undersigned counsel, submitted to State by fax a FOIA request for all records responsive to the 1st Sención request.

70.     The request further stated that State may exclude any records previously released in full to Sención.

71.     On 5 November 2018, State acknowledged receipt of this request and assigned it Request No. F-2018-06912.

72.     On 15 February 2019, State released several records in part.

73.     On 11 March 2019, Plaintiffs appealed the adequacy of State's search for responsive records and all withholdings.  State acknowledged this appeal on 12 March 2019.

74.     Plaintiffs have not received any substantive response from State to this appeal as of this writing.

75.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by State of said right.

## **TENTH CAUSE OF ACTION**

## **(JIMENEZ/VASQUEZ – STATE – CONSTRUCTIVE RECORDS DENIAL – F-2017-17779, F-2018-00322)**

76.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

77.     In 2015, Vásquez, through counsel, submitted to State a FOIA request for information about himself.

78.     State acknowledged receipt of this request and assigned it Request No. F-2015-16891.

79.     On 4 October 2016, State released several records in part to Vásquez.

80.     On 18 December 2017, Jiménez and Vásquez, through undersigned counsel, submitted to State by fax a FOIA request for "all records, including emails, pertaining to the revocation of the visa previously held by Mr. Vasquez."

81.     On 27 December 2017, State acknowledged receipt of this request and assigned it Request No. F-2017-17779.  State claimed that it could not process the request and asked Plaintiffs to "specify or narrow the time frame of [their] request" and "narrow the scope of [their] request."

82.     On 30 December 2017, Plaintiffs' undersigned counsel emailed State, "[P]lease note that this is the same individual who was the subject of the records released in response to Req. F-2015-16891.  Therefore, however you identified him when processing that request, please use the same methodology to identify him and process this request."

83.     On 12 January 2018, State replied, "Would you please provide the information requested in the Department's December 27, 2017 acknowledgment letter.  Your December 18, 2017 FOIA request did not reference the below 2015 case nor did it provide a time frame or any information pertaining to Mr. Vasquez's visa revocation."

84.     The same day, Plaintiffs' undersigned counsel replied, "This request did include all the same information, so the discrepancy is clearly in the processing.  Please determine internally how you interpreted the 2015 request to determine what files we were seeking and then apply that same interpretation to this request.  We did not include a time frame because we are not limiting the request to a particular time frame."

85.     On 19 January 2018, State replied, reassigning the request the Request No. F-2018-00322.

86.     Plaintiffs have not received any substantive response from State to this request as of this writing.

87.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by State of said right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Iván Jiménez, Juan Machado, José Muñoz, Guillermo Sención, and Miguel Vásquez pray that this Court:

(1)     Order the Department of Homeland Security and Department of State to release all requested records to them;

(2)     Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(3)     Award reasonable costs and attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412(d), or any other applicable law;

(4)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(5)     Grant such other relief as the Court may deem just and proper.

Date:   April 23, 2019

Respectfully submitted,

/s/ Andrew F. Knopf
Andrew F. Knopf, Esq.
FL Bar #658871
Paul Knopf Bigger
840 South Denning Drive
Suite 200
Winter Park, FL  32789
407-622-2111
Andrew@PKBLawFirm.com

*Counsel for Plaintiffs*

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
(*Pro hac vice* admission pending)
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

DE 11

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|                                       |     |                                       |
|---------------------------------------|-----|---------------------------------------|
| IVAN JIMENEZ, *et al.*,               | *   |                                       |
|                                       | *   |                                       |
| Plaintiffs,                           | *   |                                       |
|                                       | *   |                                       |
| v.                                    | *   | Civil Action No. 1:19-cv-21546 (DPG)  |
|                                       | *   |                                       |
| DEPARTMENT OF HOMELAND                | *   |                                       |
| SECURITY, *et al.*,                   | *   |                                       |
|                                       | *   |                                       |
| Defendants.                           | *   |                                       |
|                                       | *   |                                       |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PROOF OF SERVICE

Plaintiffs attach Proof of Service for Plaintiffs' Complaint.  According to the USPS tracking system, these packages were delivered to Defendants Department of Homeland Security and Department of State, as well as the U.S. Attorney for the Southern District of Columbia and the U.S. Attorney General, by 3 May 2019.

Plaintiffs provide the following legend connecting the tracking numbers in the attached document to the respective addressees for the Court's convenience:

Tracking No. 9507106659919119020994 – U.S. Attorney, Southern District of Florida

Tracking No. 9507106659919119021014 – Department of State

Tracking No. 9507106659919119021038 – U.S. Attorney General

Tracking No. 9507106659919119021052 – Department of Homeland Security

Date:   May 9, 2019

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
*Pro hac vice*
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

/s/ Andrew F. Knopf
Andrew F. Knopf, Esq.
FL Bar #658871
Paul Knopf Bigger
840 South Denning Drive
Suite 200
Winter Park, FL  32789
407-622-2111
Andrew@PKBLawFirm.com

*Counsel for Plaintiffs*

2

USPS.com® - USPS Tracking® Results     https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=5&t...

Case 1:19-cv-21546-DPG   Document 11   Entered on FLSD Docket 05/09/2019   Page 3 of 5
USCA11 Case: 23-10073    Document: 41-1    Date Filed: 09/25/2023    Page: 40 of 247

# USPS Tracking®

## Track Another Package +

**Tracking Number:** 9507106659919119020994

Remove ✕

**Expected Delivery by**

# THURSDAY

# 2 MAY 2019 ⓘ

by
**8:00pm** ⓘ

## ✔ Delivered

May 2, 2019 at 10:10 am
Delivered, Left with Individual
MIAMI, FL 33132

**Get Updates** ⌄

| Text & Email Updates | ⌄ |
|---|---|
| Tracking History | ⌄ |
| Product Information | ⌄ |

See Less ⌃

Remove ✕

Feedback

USPS.com® - USPS Tracking® Results                    https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=5&t...

Case 1:19-cv-21546-DPG   Document 11   Entered on FLSD Docket 05/09/2019   Page 4 of 5
USCA11 Case: 23-10073    Document: 41-1    Date Filed: 09/25/2023    Page: 41 of 247

**Tracking Number:** 9507106659919119021014

**Expected Delivery on**

## THURSDAY
# 2 MAY 2019 ⓘ

by
## 8:00pm ⓘ



## ✅ Delivered

**May 2, 2019 at 6:11 am**
Delivered
WASHINGTON, DC 20521

**Get Updates** ⌄

**See More** ⌄

Feedback

---

**Tracking Number:** 9507106659919119021038

Remove ✕

Your item was delivered at 5:57 am on May 3, 2019 in WASHINGTON, DC 20530.

## ✅ Delivered

**May 3, 2019 at 5:57 am**
Delivered
WASHINGTON, DC 20530

**Get Updates** ⌄

**See More** ⌄

Remove ✕

USPS.com® - USPS Tracking® Results          https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=5&t...

Case 1:19-cv-21546-DPG   Document 11   Entered on FLSD Docket 05/09/2019   Page 5 of 5
USCA11 Case: 23-10073     Document: 41-1     Date Filed: 09/25/2023     Page: 42 of 247

**Tracking Number:** 950710665991911902 1052

**Expected Delivery on**

# THURSDAY
# 2 MAY 2019 ⓘ

by
## 8:00pm ⓘ

## ⊘ Delivered

May 2, 2019 at 10:54 am
Delivered, Front Desk/Reception/Mail Room
WASHINGTON, DC 20529

**Get Updates** ⌄

**See More** ⌄

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

DE 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-21546-CIV-GAYLES

IVAN JIMENEZ, JUAN MACHADO,
JOSE MUÑOZ, GUILLERMO SENCION, and
MIGUEL VASQUEZ,

       Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED STATES
DEPARTMENT OF STATE,

       Defendants.

_____/

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

       Defendants, U.S. Department of Homeland Security ("DHS") and U.S. Department of State ("State" or "State Department"), pursuant to Rule 56, Federal Rules of Civil Procedure, file this Motion for Summary Judgment.


## **INTRODUCTION**

       Plaintiffs Juan Machado, Jose Muñoz, Guillermo Sencion and Miguel Vasquez ("Plaintiffs") brought this action against DHS and the State Department based on distinct Freedom of Information Act ("FOIA") requests directed to two of DHS's components, U.S. Citizenship and Immigration Services ("USCIS") and the Office of Biometric Information Management ("OBIM"), and the State Department. These requests all sought records related to Plaintiffs' visa adjudications.

       As demonstrated in this motion and as set forth in the accompanying Declarations of James V.M.L. Holzer, Jill Eggleston, and Eric Stein, Defendants conducted adequate searches for records responsive to Plaintiffs' requests and properly withheld certain information pursuant to well-established FOIA exemptions. Defendants are therefore entitled to summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs submitted multiple separate FOIA requests to each Defendant agency.

Plaintiffs submitted three FOIA requests to OBIM, including:

(1) a request dated November 14, 2018 (2019-OBFO-05965), which sought "all information located in the Automated Biometric Identification System ("IDENT"), Arrival Departure Information System ("ADIS"), and other OBIM systems about Mr. Machado";

(2) a request dated November 14, 2018 (2019-OBFO-05969), which sought "all information located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz"; and

a request dated March 3, 2018 (2018-OBFO-17760), which sought "[a] complete copy of all the files, records, notes, correspondence, etc. that you have on Guillermo Sencion from January 2000 until present day, including emails and letters."

Plaintiffs likewise submitted three distinct FOIA requests to USCIS, including:

(1) a request dated June 3, 2018, (NRC2018089200), which sought "an electronic copy of Mr. Machado Amadis' alien file";

(2) a request dated November 16, 2018 (NRC2018188049), which sought "an electronic copy of Mr. Muñoz' alien file"; and

(3) a request dated June 3, 2018 (NRC2018089201), which sought "an electronic copy of Mr. Sencion Suarez' alien file."

Plaintiffs further submitted six distinct FOIA requests to State, including:

(1) a request dated June 4, 2014 (F-2014-09926), by Plaintiff Jose Muñoz, seeking "all records that the Department of State has regarding Jose Roberto Muñoz Moncion that prove that Mr. Muñoz is a money launderer/drug trafficker or any information that proves that he is involved in any illegal/criminal/activities";

(2) a request dated February 21, 2018 (F-2018-01563), by Plaintiff Sencion for "[a]ny/all records, entries, notes, emails in your possession and in your system of records inside the continental United States of America and in your Consular Posts Abroad ([e]specially in the US Consulate in Santo Domingo) regarding any record, information or allegations of any illegal/unlawful activity that could have led to subject of record's visa cancellation/revocation by the United States Consulate in Santo Domingo, on or about October 24, 2014 (Mr. Sencion was summoned to the Consulate and had his visa revoked in front of him.  Please include a detailed index of such records wi[th] all reasonably segregable information";

(3) a request dated June 3, 2018 (F-2018-04237), by Plaintiff Machado Amadis, which sought four categories of records pertaining to him, including "any records which were withheld in full or in part in response to a previous FOIA request." Plaintiff specifically requested that State "perform new searches for records responsive to each of the items in this request, since they are broader than his previous requests";

(4) a request dated September 11, 2018 (F-2018-06912), by Jimenez and Sencion for records responsive to request F-2018-01563, excluding records previously released in full to Sencion;

(5) a request dated November 6, 2015 (F-2015-16891), by Vasquez for "[r]ecords regarding alleged criminal activities that have led to his visa revocation that took place in Santo Domingo, Dominican Republic in the year 2002"; and

(6) a request dated December 18, 2017 (F-2017-17779), by Jimenez and Vasquez for "all records, including emails, pertaining to the revocation of the visa previously held by Mr. Vasquez," which was subsequently reassigned case number F-2018-00322.

Plaintiffs filed their Complaint in this action on April 23, 2019, and served a copy of the Complaint and Summons upon the U.S. Attorney's Office for the Southern District of Florida by mail on May 3, 2019. Pursuant to FOIA, a response to the Complaint was due on June 3, 2019. Defendants, however, moved for an extension of time to respond to the Complaint, so that the Defendant agencies could complete the processing of Plaintiffs' underlying FOIA requests. On May 24, 2019, the Court granted Defendants' motion, administratively closed the case, and required the parties to file periodic status reports advising the Court as to Defendants' progress in providing Plaintiffs with the requested documents. *See* ECF No. 14.

The Defendant agencies have now completed their responses to Plaintiffs' underlying FOIA requests and this matter is ripe for resolution on summary judgment.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party

has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*.

FOIA cases are generally decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993); *St. Andrews Park, Inc. v. U.S. Dep't of Army Corps of Engineers*, 299 F. Supp. 2d 1264, 1267 (S.D. Fla. 2003). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). An agency may rely on a declaration to meet its burden in a FOIA action so long as the declaration provides an adequate factual basis for the Court's decision. *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1258 (11th Cir. 2008); *Del Rio v. Miami Field Office of the FBI*, No. 08-21103, 2009 WL 2762698, at *6 (S.D. Fla. Aug. 27, 2009). The affidavits submitted by an agency are accorded a presumption of good faith. *Del Rio*, 2009 WL 2762698, at *6; *Chamberlain v. U.S. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997).

Summary judgment for the federal agency is proper "[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Florida Immigrant Advocacy Ctr. v. Nat'l Sec. Agency*, 380 F. Supp. 2d 1332, 1338 (S.D. Fla. 2005), quoting *Hayden v. N.S.A.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *see also Inter Ocean Free Zone, Inc. v. U.S. Customs Serv.*, 982 F. Supp. 867, 871 (S.D. Fla. 1997); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Halperin v. C.I.A.*, 629 F.2d 144, 148 (D.C. Cir. 1980). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374–75.

## **ARGUMENT**

The FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). Once the court determines that an agency has released all non-exempt material, it has no

further judicial function to perform under FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

As demonstrated below and in the attached Declarations, the Defendant agencies have met their obligations under FOIA by conducting adequate searches for responsive records and providing to Plaintiffs all non-exempt, responsive material located.

## I.      EACH OF THE DEFENDANT AGENCIES CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFFS' REQUESTS

An agency responding to a FOIA request is required to conduct a reasonable search for responsive records. *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds sub nom. U.S. Dep't of State v. Ray*, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). In cases where the adequacy of an agency's search for records is at issue, the agency bears the burden of showing "'beyond a material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Miccosukee Tribe*, 516 F.3d at 1248 (quoting *Ray*, 908 F.2d at 1558). Importantly, the agency "need not show that its search was exhaustive" but only that it was "reasonable." *Ray*, 908 F.2d at 1558.

In an action under FOIA, an agency may establish that it conducted a reasonable search through affidavits of responsible agency officials "so long as the affidavits are relatively detailed, nonconclusory and submitted in good faith." *Id.*; *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985); *Perry*, 684 F.2d at 127.[1]

Whether a search was reasonable depends upon the circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993). The agency need not show that it has conducted an exhaustive search but

---

[1] Generally, declarations accounting for searches of documents that contain hearsay are acceptable." *Kay v. F.C.C.*, 976 F. Supp. 23, 33 n.29 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). It is not necessary that the agency employee who actually performed the search supply an affidavit describing the search. *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993). Affidavits of officials responsible for supervising or coordinating search efforts have been found to be sufficient to fulfill the personal knowledge requirement of FED. R. CIV. P. 56(e). *Id.*; *see also Patterson v. I.R.S.*, 56 F.3d 832, 840–41 (7th Cir. 1995) (declarant's reliance on a standard search form completed by his predecessor was appropriate).

must show that it made a good faith effort, using methods which could reasonably be expected to uncover the requested information or documents. *See Ray*, 908 F.2d at 1558; *Oglesby*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Miller*, 779 F.2d at 1383 ("[T]he search need only be reasonable; it does not have to be exhaustive"). The agency is not required to prove that every responsive document has been located. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); *Miller*, 779 F.2d at 1385. Moreover, a search is not presumed unreasonable if it fails to produce all relevant documents. *Id.*

### OBIM

Plaintiffs challenge the lawfulness of the agency's response to each of the three separate FOIA requests it submitted to OBIM.

As explained in the Declaration of James V.M.L. Holzer ("Holzer Declaration"), Ex. A, IDENT is the only system of records maintained by OBIM where records regarding the subjects of the FOIA requests would be found. Holzer Decl. ¶ 19. IDENT is the central DHS-wide system for storage and processing of biometric and associated biographic information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions and certain positions of public trust; and associated testing, training, management reporting, planning and analysis, or other administrative uses. *Id.* ¶ 8. ADIS, the other database identified in Plaintiffs' requests, is not owned or maintained by OBIM. *Id.* ¶ 9. Instead, ADIS is a system of records maintained by U.S. Customs and Border Protection ("CBP"). *Id.*[2] OBIM does not own or maintain the ADIS system of records, and could not search the same for records responsive to Plaintiffs' request. *Id.* [3]

Mr. Holzer explains that, because the primary mission of OBIM is to provide biometric match, store, share, and analyze services to other DHS components and mission partners, it does

---

[2] CBP's ADIS system consolidates data from a variety of systems to create a unique person-centric record with complete travel history. Holzer Decl. ¶ 9.

[3] "[A]gencies are not required to perform searches which are not compatible with their own document retrieval systems." *Judicial Watch, Inc. v. Export–Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (citation omitted). In addition, an agency is obligated to produce only those records that are in its custody and control at the time of the FOIA request. *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). An agency is not required to respond to a FOIA request that should be directed to another agency. *See, e.g., Moore v. Aspin*, 916 F. Supp. 32, 36 (D.D.C. 1996); *Epps v. U.S. Dep't of Justice*, 801 F. Supp. 787, 790 (D.D.C. 1992), *aff'd in relevant part*, 995 F.2d 305, 1993 WL 179225 (D.C. Cir. 1993).

not have any independent need to collect information regarding individuals or conduct inquiries into individuals other than within the IDENT system. *Id.* ¶ 18. Accordingly, OBIM searched IDENT, the only database it owns and maintains, based on the agency's reasonable belief that any responsive records in the agency's possession would be located there. *Id.* ¶¶ 10, 19.

Plaintiffs included fingerprint cards with their FOIA requests. *Id.* ¶ 11. OBIM routinely receives fingerprint cards as part of FOIA requests. *Id.* In order to properly respond to such requests, OBIM must match the fingerprints on the cards with the individuals' fingerprint identification numbers ("FINs"). *Id.* OBIM does not, however, have an independent query capability for its IDENT system using fingerprint cards. *Id.* Instead, OBIM runs queries in the Arrest Graphical User Interface for Law Enforcement ("EAGLE") system. *Id.* EAGLE is a part of a DHS shared common database repository. *Id.* Specifically, OBIM scans copies of the fingerprint cards, uploads them into EAGLE, and then uses EAGLE to query IDENT to find the subjects' FINs, if they exist. *Id.* It is the practice of OBIM to search for records in IDENT using fingerprint cards where available. *Id.* A search conducted using fingerprint cards will result in the location of any records relating to a subject in IDENT. *Id.*

Despite OBIM's searches within IDENT for records regarding the three subject individuals using the fingerprints they submitted, it found records responsive only to the request for records about Plaintiff Muñoz. *Id.* ¶¶ 12, 13, 17.[4] The agency produced the responsive material it located regarding Plaintiff Muñoz, redacting information exempt from disclosure under FOIA. After Plaintiffs filed this lawsuit, OBIM repeated its searches on July 1, 2019, to ensure that its initial response was accurate. *Id.* ¶ 18. The results for all three searches were the same as those initially communicated to Plaintiffs. *Id.* No additional records were located. *Id.*

OBIM, as set forth in the Holzer Declaration, has demonstrated beyond a material doubt that its searches for records responsive to Plaintiffs' FOIA requests were reasonably expected to locate the requested records. OBIM is therefore entitled to summary judgment as to the adequacy of its search.

---

[4] OBIM's search for records relating to Plaintiff Muñoz resulted in the location of eight pages from a United States Visitor and Immigrant Status Indicator Technology ("US-VISIT") Secondary Inspection Tool Report relating to him maintained by OBIM. Holzer Decl. ¶ 13.

## USCIS

Plaintiffs further challenge the lawfulness of the agency's response to each of the three separate FOIA requests submitted to USCIS.

As explained in the attached Declaration of Jill Eggleston ("Eggleston Declaration"), Ex. B, in response to the first request (NRC2018089200), the agency searched for and located Plaintiff Machado Amadis's alien file ("A-File").[5] Eggleston Decl. ¶ 12. The agency also searched for records responsive to the second and third requests (NRC2018188049 and NRC2018089201, respectively) for A-Files pertaining to Plaintiffs Muñoz and Sencion but did not locate any responsive records. As explained below, although the searches for A-Files corresponding to Plaintiffs Muñoz and Sencion yielded no results, the agency's searches were reasonable and satisfied the requirements of FOIA.

An A-File is the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process. *Id.* ¶ 10. USCIS records and tracks the location of A-Files in its National File Tracking System ("NFTS"). *Id.* ¶ 11, n.2. Accordingly, personnel of USCIS's National Records Center ("NRC") determined that any records in USCIS's control that were responsive to Plaintiffs' FOIA requests would be found by searching NFTS. *Id.* NRC staff determined that no other records system was likely to produce responsive documents. *Id.*

NRC staff ran computerized database searches in the NFTS database using the information supplied by Plaintiffs with their FOIA request. *Id.* ¶ 11. NRC staff searched the NFTS for a record of each subject's A-File using the subject's name, date of birth, and A-Number. *Id.* As indicated above, NRC staff located an A-File pertaining to Plaintiff Machado Amadis using these search methods. *Id.*[6] The agency produced a copy of Plaintiff Machado Amadis's A-File, redacting information exempt from disclosure under FOIA. *Id.* ¶ 12. NRC's searches for A-Files pertaining to Plaintiffs Muñoz and Sencion, however, did not locate any responsive records. *Id.* ¶¶ 13–14.

---

[5] The agency did not locate an A-File associated with another Alien Registration Number ("A-Number") (019-443-729) identified in the FOIA request.

[6] NRC staff retrieved the A-File pertaining to Plaintiff Machado Amadis and scanned it into the NRC's FOIA Immigration Records System ("FIRST"). FIRST is a computerized FOIA processing system that allows NRC staff to review records and process FOIA requests electronically.

USCIS, as set forth in the Eggleston Declaration, has demonstrated beyond a material doubt that its searches for records responsive to Plaintiffs' FOIA requests were reasonably expected to locate the requested records. USCIS is therefore entitled to summary judgment as to the adequacy of its search.

## DEPARTMENT OF STATE

Plaintiffs also challenge the lawfulness of the State Department's responses to each of the six separate FOIA requests to State.[7] State's search for, and processing of, records responsive to Plaintiffs' FOIA requests is described in the attached Declaration of Eric Stein, Director of the Office of Information Programs and Services ("IPS") for the Department of State ("Stein Declaration"), Ex. C.

Mr. Stein explains that, "[w]hen the Department receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested." Stein Decl. ¶ 35. This determination is based on the description of the records requested and IPS's familiarity with the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions. *Id*.

Based on its knowledge of the responsibilities of the various Department components, together with an evaluation of the subject matter of Plaintiffs' requests, IPS tasked the Directorate of Visa Services ("VO") in the Bureau of Consular Affairs ("CA") with conducting searches for documents responsive to Plaintiffs' FOIA requests. *Id.* ¶ 38. VO manages all aspects of visa services for foreign nationals who wish to enter the United States. *Id.* ¶ 39. VO interprets and applies immigration laws and regulations and acts as a point of contact for the public. *Id*. VO also serves as a liaison between the Department of State and its embassies and consulates abroad on visa matters. *Id*. VO's primary responsibility is the enforcement of U.S. immigration laws and regulations. *Id*. VO generally maintains records relating to visa applications, among other matters, in a central electronic database called the Consular Consolidated Database ("CCD").[8] *Id*.

---

[7] Although there were a total of six requests, the requests sought records regarding four of the five Plaintiffs (Jose Muñoz, Guillermo Sencion, Juan Machado Amadis, and Miguel Vasquez).
[8] Mr. Stein explains that:

VO also maintains the Consular Lookout and Support System ("CLASS") and the Non-Immigrant Visa ("NIV") system.[9]

In addition to VO, IPS tasked the U.S. Embassy in Santo Domingo, Dominican Republic, and the Department of State's Bureau of Diplomatic Security ("DS") with searching for records responsive to Plaintiff Machado Amadis's request, given the scope of that request. *Id.* ¶ 38. IPS relied on the knowledge and expertise of the employees in each of these Department components to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized. *Id.* ¶ 37. Likewise, those employees are in the best position to determine which search terms would yield potentially responsive records, because they are most knowledgeable about the organization of the records systems in use. *Id.*

VO employees searched the CCD—which, in relevant part, "contains a record of every U.S. visa application made since 1997 with the accompanying adjudication decision concerning

---

> [t]he CCD is a system of non-public consolidated databases that holds all of the current and archived data entered by consular officers from U.S. embassies and consulates around the world, including the U.S. Embassy in Santo Domingo, Dominican Republic.  This includes, among other information, data regarding the diversity visa program, immigrant visas, non-immigrant visas, the visa revocation system, the admissibility review and information service, and identity verification applications, as well as an interface to the consular lookout and support system. The CCD contains a record of every U.S. visa application made since 1997 with the accompanying adjudication decision concerning an applicant's eligibility for a visa, including any decision to issue, refuse, or revoke a visa.  Access to the CCD and its combined applications and databases is password-protected and provides authorized users with real-time access to case-related information.  The database is a crucial law enforcement tool, used to administer and enforce U.S. immigration law; to assess an alien's visa eligibility under the Immigration and Nationality Act and other applicable laws; and to prevent and track fraud.

Stein Decl. ¶ 39 n.2.

[9] Mr. Stein explains that:

> The NIV system automates and streamlines posts' capabilities for processing and adjudicating applications for standard non-immigrant visas.  The system processes applicant, vessel, petition, diplomatic note, and referral data; enables the user to view the results from namechecks; records the decision of the adjudicating officer; and prints the Machine Readable Visa ("MRV").

Stein Decl. ¶ 39 n.3.

an applicant's eligibility for a visa, including any decision to issue, refuse, or revoke a visa"—for each Plaintiff's name, and appropriate permutations thereof, and date of birth, using a search function designed to return near matches of the search terms in addition to exact matches. These searches were not limited by date. *Id.* ¶¶ 39 n.2, 42–45. These searches located more than 18 responsive records for Plaintiff Muñoz, more than 95 responsive records for Plaintiff Vasquez, more than 19 responsive records for Plaintiff Sencion, and more than 32 responsive records for Plaintiff Machado Amadis.

The U.S. Embassy in Santo Domingo determined that the only section reasonably likely to maintain responsive records was the Consular Section. *Id.* ¶ 46. A Non-Immigrant Visa Chief in the Consular Section, who was knowledgeable of the FOIA request at issue and the Embassy's records system, conducted a search of the Consular Section's email records and shared drive using the search terms "Juan Luciano Machado Amadis," "Juan Machado," and "Juan Amadis." *Id*. The date range of the search was January 1, 2000, through September 2, 2020. *Id*. The search located five documents responsive to the request. *Id*.

A FOIA Division Chief in DS, who was knowledgeable of the FOIA request at issue and DS's records systems, conducted a search of the Investigative Management System ("IMS")[10] and DS's current and retired records using the search terms "Juan Luciano Machado Amadis," "Machado Amadis," "Juan Amadis," "Amadis," "Romaca Industrial SA," "Romaca SRL," and "Romaca." *Id.* ¶ 47. The search was not limited by date. *Id*. These searches located no responsive records. *Id*.

The Department of State, as set forth in the Stein Declaration, has demonstrated beyond a material doubt that its searches for records responsive to Plaintiffs' FOIA requests were reasonably expected to locate the requested records. The Department is therefore entitled to summary judgment as to the adequacy of its search.

---

[10] IMS is the primary criminal and law enforcement database used by DS. It is an electronic tracking system used by DS to control and document criminal investigations and was launched in January 2007. The information stored in the system covers case background, case allegations, case documented interviews, evidence, surveillance videos/audio tapes, pictures, post records and foreign government records, and related investigative information. There are a number of query fields, with name being the most common.

## II.    EACH OF THE DEFENDANT AGENCIES PROPERLY APPLIED THE FOIA EXEMPTIONS IT ASSERTED TO WITHHOLD RESPONSIVE INFORMATION

Each of the Defendant agencies withheld information responsive to Plaintiffs' requests pursuant to exemptions provided under FOIA. As explained below and further in the attached Declarations, the exemptions were lawfully invoked.

### OBIM

As explained above, OBIM's search for records responsive to Plaintiff Muñoz's FOIA request yielded eight pages from a US-VISIT[11] Secondary Inspection[12] Tool Report. OBIM properly withheld portions of these pages pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E). Holzer Decl. ¶ 13.

### a.  Exemption 3

Exemption 3 allows the withholding of information prohibited from disclosure by another statute if that statute exempts from disclosure information that:

(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Once an agency establishes that a statute is a nondisclosure statute that meets at least one of the requirements of Exemption 3, it must also establish that the records in question fall within the withholding provision of the nondisclosure statute. *Fund for*

---

[11] DHS established the United States Visitor and Immigrant Status Indicator Technology Program in 2003 to verify the identities and travel documents of aliens. Aliens subject to US-VISIT may be required to provide fingerscans, photographs, or other biometric identifiers upon arrival at the United States. Currently, aliens arriving at a United States port of entry with a nonimmigrant visa, or those traveling without a visa as part of the Visa Waiver Program, are subject to US-VISIT requirements with certain limited exceptions. *See* United States Visitor and Immigrant Status Indicator Technology Program (''US–VISIT''), 73 Fed. Reg. 77,473 (Dec. 19, 2008).

[12] Secondary Inspection occurs in instances where a CBP officer at the port of entry has concerns about an arriving person's travel or the traveler's documents or has other concerns. In Secondary Inspection, a traveler may be interviewed further to determine whether he or she is admissible to the United States. *See* Welcome to the United States: A Guide for International Visitors, https://www.cbp.gov/sites/default/files/documents/WelcomeToTheUS.pdf.

*Constitutional Gov't. v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 866–69 (D.C. Cir. 1981); *see also Wash. Post Co. v. Dep't. of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988).

In *Medina-Hincapie v. Department of State*, the D.C. Circuit held that the Immigration and Nationality Act ("INA") § 222(f), codified as 8 U.S.C. § 1202(f), qualifies as a nondisclosure statute under Exemption 3. 700 F.2d 737, 740–43 (D.C. Cir. 1983). This subsection states, in relevant part:

> Confidential Nature of Records. The records of the Department of State and of diplomatic and consular offices of the United States <u>pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential</u> and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States except [in limited circumstances not relevant here].

INA § 222(f) (codified at 8 U.S.C. § 1202(f)) (emphasis added). The court concluded that the provision satisfies clause (i) of Exemption 3 because it leaves the Secretary "no authority to disclose material to the public" (even though the Secretary may in his discretion disclose those records to a court pursuant to valid order.) *Medina-Hincapie*, 700 F.2d at 741. The court further held that the provision also qualifies as a withholding statute under clause (ii) because it specifically refers to particular types of matters to be withheld, specifically: "records . . . pertaining to the issuance or refusal of visas or permits to enter the United States." *Id.* at 742. "In that sense the confidentiality mandate is absolute; *all* matters covered by the statute 'shall be considered confidential.'" *Id*. Section 222(f) applies not only to the information supplied by the applicant seeking to enter the United States, but also applies to any "information revealing the thought-processes of those who rule on the application." *Id.* at 744. Thus, as a matter of established law, Exemption 3 and INA § 222(f) work together to exempt from disclosure under FOIA records about the issuance or refusal of a visa. *Id.* at 741–42; *see also Schoenman v. FBI*, 573 F. Supp. 2d 119, 144 (D.D.C. 2008) (upholding State's use of Section 222(f) under Exemption 3 and citing *Medina-Hincapie*).

"The plain language of the [INA], which encompasses records 'pertaining' to the issuance or refusal of visas, discourages [an overly] strict interpretation of Section 222(f)." *Airaj v. United States*, Civ. A. No. 15-983 (ESH), 2016 WL 1698260, at *8 (D.D.C. Apr. 27, 2016), *aff'd* No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017). Plaintiffs will argue that records that pertain to the "revocation" of a visa, as opposed to the "issuance or refusal" of a

visa, are not subject to the confidentiality provision in INA § 222(f). There is a split of opinion on this question that has yet to be resolved by any Circuit Court of Appeals. *Compare Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 178 (D.D.C. 2011), *Soto v. Dep't of State*, No. 14-604, 2016 WL 3390667, at *4 (D.D.C. June 17, 2016), and *Vizcarra Calderon v. U.S. Dep't of Homeland Sec.*, Case No. 18-CV-764-CV, 2020 WL 805212 (D.D.C. Feb. 18, 2020) (holding that INA § 222(f) shields records pertaining to visa revocations) *with El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285 (D. Conn. 2008) and *Mantilla v. U.S. Dep't of State*, 2012 WL 4372239 (S.D. Fla. Sept. 24, 2012) (holding that INA § 222(f) does not shield records pertaining to visa revocations).

The recent trend in cases to consider whether records related to visa revocation are confidential pursuant to INA § 222(f) has been toward the more inclusive interpretation of that statute, and the greater number of courts to consider the issue have concluded that records related to a visa revocation *do* pertain to the issuance or refusal of a visa and are therefore covered by INA § 222(f). For example, the District Court of the District of Columbia in *Soto* rejected the *expressio unius* approach to interpreting INA § 222(f) espoused in *El Badrawi*, concluding that "[it] is not difficult to see how records that document the revocation of a visa—or that were relied upon in the course of revoking a visa—could 'pertain[ ] to the issuance or refusal of [a] visa[ ].'" *Soto*, 2016 WL 3390667, at *4 (quoting INA § 222(f)). The court elaborated:

> The "revocation" of a visa, for example, might reasonably be understood to constitute a "refusal"—that is, the United States has decided to refuse the noncitizen the further right to enter the [c]ountry. Similarly, the "revocation" of a visa might reasonabl[y] be understood to "pertain" to its "issuance"—that is, the Department has decided to revisit its decision to issue the visa and determined that its decision was either mistaken or should be reconsidered.

*Id*. (citation omitted).

Just this year, the latest court to consider the issue expressly adopted the reasoning in *Soto* and rejected the narrow interpretation in *El Badrawi*. *Vizcarra Calderon* confirmed that "the issuance and revocation of visas represent two sides of the same coin." 2020 WL 805212 at *3 (quoting *Soto*, 2016 WL 3390667, at *4). *Vizcarra Calderon* concluded that "[t]he text of section 222(f) is sufficiently broad to encompass revocations, even though 'issuance of a visa is undoubtedly a distinct act from the revocation of that same visa,' because 'the relevant question is not one of equivalence but of pertinence.'" *Id*. (citation omitted). *Vizcarra Calderon* further

agreed with *Soto* that, "as a textual matter, a decision to revoke a visa relates to, has a bearing on, or concerns the issuance of the visa—it nullifies that action." *Id.* (citation omitted).

OBIM withheld portions of the US-VISIT Report pursuant to FOIA Exemption 3 and Section 222(f). Holzer Decl. ¶ 14. Mr. Holzer explains that OBIM withheld a portion of the US-VISIT report that originated with the Department of State "indicating the denial of Plaintiff Muñoz's visa petition" under Exemption 3. Holzer Decl. ¶ 14. Such information falls squarely within the confidentiality provision of Section 222(f), as it is a "record[] of the Department of State . . . pertaining to the issuance or refusal of visas or permits to enter the United States." Therefore, OBIM properly withheld the portion of the US-VISIT report regarding Plaintiff Muñoz's visa. *See Medina-Hincapie*, 700 F.2d at 740–43 (holding that State Department records pertaining to the denial of a visa are confidential pursuant to INA § 222(f) and subject to withholding pursuant to FOIA Exemption 3).

**b. Exemption 6**

Exemption 6 exempts from disclosure matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has given the term "similar files" a broad meaning; all information which "applies to a particular individual" may fall within Exemption 6. *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599–603 (1982). In *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989), the Court likewise rejected a "cramped notion of personal privacy" under FOIA's exemptions and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." More specifically, the Court noted that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others." *Id.* at 764 n.16 (citation omitted); *see also Office of the Capital Collateral Counsel, Northern Region of Florida ex rel. Mordenti*, 331 F.3d 799, 802 (11th Cir. 2003) ("The privacy interest protected by Exemption 6 includes an individual's interest in avoiding disclosure of personal matters."); *L & C Marine Transport, Ltd. v. United States*, 740 F.2d 919, 923 (11th Cir. 1984). Privacy is of particular importance in the FOIA context because a disclosure required by FOIA is a disclosure to the public at large. *See Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all,

regardless of the uses to which it might be put").

Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure of the information threatens a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal citation omitted). Plaintiff bears the burden of demonstrating that the release of the withheld documents would serve this interest. *See Carter v. Dep't of Commerce*, 830 F.2d 388, 390–92 nn.8 & 13 (D.C. Cir. 1987).

Pursuant to Exemption 6, OBIM redacted from the US-VISIT Report "terminal ID numbers" associated with DHS personnel involved in various encounters with Plaintiff Muñoz. Holzer Decl. ¶ 15. Mr. Holzer explains that the employees associated with the identification numbers redacted from the responsive records are or were staff level employees. *Id.* ¶ 15. OBIM found that Plaintiffs had demonstrated no public interest in the disclosure of the DHS employees' identification numbers. *Id*. Moreover, given DHS's missions, which often attract negative attention among some segments of the public, OBIM determined that these employees have privacy interests in not having information that could lead to their identification released to the public because, in the event their identities did become public, they could be subject to unwanted attention and harassment. *Id*.

### c.  Exemption 7(E)

Federal agencies must meet the threshold requirement of Exemption 7 before they may withhold requested documents on the basis of any of its subparts. *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). That threshold requires the records or information to be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Banks v. U.S. Dep't of Justice*, 538 F. Supp. 2d 228, 239 (D.D.C. 2008) (citing *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172–77 (D.C. Cir.

2002)). The law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law. *Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (holding that an administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement).

Exemption 7(E) protects from disclosure information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Under Exemption 7(E), an agency can withhold internal agency materials that relate to "guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions." *Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir.2007) (quotation marks omitted). The exemption protects "investigatory techniques and procedures not generally known to the public." *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 n.4 (2d Cir. 1985). *See also Hidalgo v. FBI*, 541 F. Supp. 2d 250, 254 (D.D.C. 2008) ("Exemptions . . . 7(E) allow[s] information about law enforcement techniques to be withheld when publication would allow perpetrators to avoid them.").

OBIM withheld certain internal law enforcement codes and encounter information pursuant to FOIA Exemption 7(E). Holzer Decl. ¶ 16. Mr. Holzer explains that disclosure of the internal law enforcement codes and encounter information would reveal law enforcement techniques employed during the course of the enforcement of immigration laws of the United States. *Id.* Mr. Holzer further declares that the disclosure of this information could undermine DHS's efforts in this regard and could enable members of the public to evade such enforcement. *Id*. OBIM, therefore, properly invoked Exemption 7(E) to withhold this information.

The Holzer Declaration provides the Court a sufficient factual basis to place the information withheld by OBIM within the exemption categories claimed. OBIM is entitled to summary judgment because its withholding of material pursuant to Exemptions 3, 6, and 7(E) is appropriate and lawful.

**USCIS**

As explained above, in response to Plaintiff Machado Amadis's FOIA request (NRC2018089200), USCIS located and provided his A-File. USCIS withheld certain information pursuant to Exemptions 3, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(E).

**a.  Exemption 3**

USCIS withheld material from the responsive material from Plaintiff Machado Amadis's A-File pursuant to Exemption 3 and Section 222(f). Ms. Eggleston explains that USCIS withheld information in two pages originating from the State Department described as "State Department record of an Advisory Opinion INA 212 (a) (23) for Juan Machado Amadiz." Eggleston Decl., Ex. AA. Ms. Eggleston declares that the information withheld "concerns the issuance or refusal of a permit to enter the United States by the U.S. Department of State." *Id*. As explained above, such records are confidential under Section 222(f) and, therefore, exempt from disclosure pursuant to Exemption 3.

**b.  Exemptions 6 and 7(C)**

As explained above, Exemption 6 protects information the disclosure of which would constitute a clearly unwarranted invasion of the personal privacy of third parties. 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C) exempts from disclosure records or information compiled for law enforcement purposes "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  While Exemption 7(C) is similar to Exemption 6, it is broader in scope; unlike Exemption 6, Exemption 7(C) does not feature the word "clearly," thereby easing the burden on the agency. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165–66 (2003); *Office of the Capital Collateral Counsel*, 331 F.3d at 803 n.6; *Cong. News Syndicate v. DOJ*, 438 F. Supp. 538, 541 (D.D.C. 1977). Like Exemption 6, however, the applicability of Exemption 7(C) is determined by balancing the privacy interest of individuals mentioned in the records against the public interest, if any, in disclosure of the information requested. *See, e.g.*, *Bibles v. Oregon Natural Desert Ass'n*, 519 U.S. 355 (1997); *Reporters Comm.*, 489 U.S. at 776–80*; Fed. Labor Relations Auth.*, 510 U.S.; *Office of the Capital Collateral Counsel*, 331 F.3d at 802, 803 n.5 (citing *Fed. Labor Relations Auth.*, 510 U.S. at 496 n.6); *L & C Marine Transport, Ltd.*, 740 F.2d at 922–23 (11th Cir. 1984).

The Supreme Court has recognized that FOIA's privacy exemptions were intended to

afford broad protection against the government's release of information about individual citizens, and the Court has broadly defined the privacy interest protected by these exemptions. *See Reporters Comm.*, 489 U.S. at 763–64. The privacy interest under FOIA extends beyond the common law and the Constitution. *Favish*, 541 U.S. at 170. Particularly, courts have recognized that there is a substantial privacy interest in information regarding individuals contained in law enforcement investigative records, including information not just about the subjects of investigation but also agents and employees, victims, third parties and confidential sources, the disclosure of which might subject these individuals or their families to embarrassment, harassment, or reprisal. *See L & C Marine Transport Ltd.*, 740 F.2d at 923; *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 767 (D.C. Cir. 1990); *Cleary v. F.B.I.*, 811 F.2d 421, 424 (8th Cir. 1987); *Cappabianca v. Commissioner*, *U.S. Customs Serv.*, 847 F. Supp. 1558, 1564–66 (M.D. Fla. 1994).

While the privacy interest protected under FOIA has been broadly defined, the public interest is strictly limited to the public's interest in being informed about "what their government is up to." *Reporters Comm.*, 489 U.S. at 772–75. Disclosure is in the public interest only to the extent that it would "contribute significantly to public understanding of the operations or activities of the government." *Id.* at 775 (emphasis added); *see also Office of the Capital Collateral Counsel*, 331 F.3d at 803. The public interest is not furthered by "disclosure of information about private citizens . . . that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773.

Whether or not the public interest will be furthered by disclosure of requested information is not determined by asking whether there is "general public interest in the subject matter of the FOIA request" but, rather, by examining "the incremental value of the specific information being withheld" for shedding light on agency action. *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). It is the requester's burden to show both that the public interest which he is seeking to advance is "significant" and "more specific than having the information for its own sake" and that the information he is requesting "is likely to advance that interest." *Favish*, 541 U.S. at 172.

USCIS withheld information in Plaintiff Machado Amadis's A-File pursuant to Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C). USCIS invoked Exemption 6 to withhold the names and other personal identifying information of third parties contained within

an application submitted by Plaintiff Machado Amadis. Eggleston Decl. ¶ 20, Ex. AA. USCIS determined that any public interest did not outweigh the privacy rights of the third parties identified and that disclosure of the information was therefore clearly unwarranted. *Id*.

USCIS further applied Exemption 7(C) to protect the privacy of individuals identified in records compiled for law enforcement purposes. *Id.*  ¶¶ 23, 24. USCIS applied Exemption 7(C) to withhold the personal identifying information of law enforcement personnel contained within immigration enforcement information in DHS systems. *Id.* ¶ 20, Ex. AA. The withheld information consists of biographical information pertaining to third party individuals, including names, addresses, dates of birth, and phone numbers. *Id*. USCIS found that the individuals whose information is at issue have a strong privacy interest in the information and determined that there was no countervailing public interest in the information, as its disclosure would shed no light on how USCIS is performing its duties. *Id*. USCIS thus determined that disclosure would constitute an unwarranted invasion of privacy and redaction under Exemption 7(C) was appropriate. *Id*.

c. **Exemption 7(E)**

USCIS also withheld certain information from Plaintiff Machado Amadis's A-File pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E). USCIS invoked this exemption to protect from disclosure certain law enforcement systems checks and law enforcement database codes. Eggleston Decl. ¶ 27. More specifically, the *Vaughn* index attached to Ms. Eggleston's Declaration explains that USCIS invoked Exemption 7(E) to protect the name of a law enforcement agency consulted by USCIS in the course of performing its immigration and national security law enforcement functions. *Id.* ¶ 27, Ex. AA. USCIS concluded that "disclosure of this information would reveal procedures for the enforcement of immigration and national security laws and could reasonably be expected to risk the circumvention of law." *Id*.

Ms. Eggleston's Declaration provides the Court a sufficient factual basis to place the information withheld by USCIS within the exemption categories claimed. USCIS is entitled to summary judgment because its withholding of material pursuant to Exemptions 3, 6, 7(C), and 7(E) was appropriate and lawful.

**DEPARTMENT OF STATE**

The Department of State withheld certain records in full pursuant to Exemption 3 and Section 222(f) and withheld additional information in those records pursuant to Exemptions 5, 6, 7(C), and 7(E).  The Department further invoked Exemptions 3, 6, 7(C), and 7(E) to withhold

information in the responsive records released to Plaintiffs.

### a. Exemption 3

All of the records State withheld in this case are "visa-related records" and fall within one of the categories of visa records that the State Department generally maintains, outlined in more detail in the Stein Declaration. Stein Decl. ¶¶ 48–49. State withheld information in a number of documents pertaining to the issuance or refusal of visas pursuant to Exemption 3 and Section 222(f). *Id.* ¶ 49. Given the descriptions of these categories, there can be no dispute that these types of records "pertain[] to the issuance or refusal of visas or permits to enter the United States," and that State therefore properly withheld information under Section 222(f) and Exemption 3.

State further properly withheld information in other documents pertaining to the revocation of visas. *Id.* The information State withheld is properly characterized as falling within the nondisclosure provisions of Section 222(f) because the information directly relates to (i) the compilation of investigative information and application of that information to criteria for eligibility for a visa; and (ii) the ultimate decision on whether a future visa application should be refused, or whether a previously issued visa should be revoked. Indeed, Mr. Stein's Declaration explains that:

> The revocation adjudication pertains directly to the issuance and refusal of a visa because a revocation is a decision that the current visa should not have been issued or that a future visa may need to be refused. In revoking a visa, the Department is, at a later time, revisiting a decision to issue a visa or considering grounds of ineligibility for a visa under the U.S. immigration laws that may require that the visa be refused. The visa revocation becomes part of the general visa record in the Consolidated Consular Database and will be reviewed in the case of a subsequent visa application as a record relating to the eligibility for issuance or refusal of the subsequent visa. Further, disclosure of revocation records necessarily discloses records and information considered in the initial instance.

*Id.* ¶ 49.

Mr. Stein's Declaration further explains that the Department cannot provide information about the number or content of withheld responsive records, as doing so would reveal information the disclosure of which is prohibited by INA § 222(f). *Id.* ¶ 52 (citing 5 U.S.C. § 552(a)(6)(F) ("In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is

denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.")).[13]

Mr. Stein provides several examples of how disclosure of the number or content of withheld responsive records would reveal information that must be kept confidential under INA § 222(f), including information about the Department's decision-making process in any given visa adjudication. *Id.* ¶¶ 53–60. First, disclosing the number of responsive visa records could be viewed as revealing whether the Department's decision was routine or atypical: A small number of records may be viewed as suggesting that a decision was routine and made by the consular officer alone, while a large number of records may be viewed as suggesting that a decision was more complex and may have involved consultation with other Department officials or other Executive Branch components. *Id.* ¶ 55. Second, describing visa records in a *Vaughn* index could reveal details regarding whether a decision to grant or deny an application was made solely by a consular officer or included other individuals within the Department, whether interagency consultation was required, how long any such consultations took to complete, and what kinds of documents were considered in determining an applicant's eligibility for a visa. *Id.* ¶ 56. Third, describing visa records in a *Vaughn* index could also reveal details about which specific Executive Branch components were involved in collecting or providing information that was used in the visa adjudication process, what types of information those components provided, when that information was collected, and what types of information consular officials deem relevant when making visa eligibility determinations. *Id.* ¶ 57. Fourth, describing visa records in a *Vaughn* index could reveal details about the law enforcement techniques that were used to

---

[13] Mr. Stein acknowledges that the Department's prior practice was to provide the requester with the number of responsive documents in cases dealing with records withheld under Section 222(f). Stein Decl. ¶ 53 n.6. However, the Department's experience has shown that this prior practice caused the disclosure of confidential aspects of the visa adjudication process. *Id.* As a result, it has prudently modified its practice to ensure the statutorily mandated confidentiality pursuant to Section 222(f). *Id.* Therefore, although certain of the Department's releases in response to the FOIA requests at issue did include a figure for the documents withheld, the Department has determined that its modified interpretation of Section 222(f) is more faithful to the text and statutory purpose and, therefore, that information about the number or content of withheld responsive records is confidential. *Id.* In lieu of a *Vaughn* index, Mr. Stein's declaration provides a description of types of visa records that are generally kept and confirms that all of the records withheld here correspond to one of the types of visa records listed. *See id.* ¶¶ 48–49.

collect information relevant to a particular visa adjudication. *Id.* ¶ 58. Fifth, describing visa

records in a *Vaughn* index could reveal information about the factual predicates for particular

visa denials, including the relevance of an applicant's activities or the applicant's sponsor's

activities. *Id.* ¶ 59.  For example, describing visa records in a *Vaughn* index could reveal the

existence of an ongoing or past fraud or drug trafficking investigation of the applicant or his/her

sponsor that rendered an individual ineligible for a visa. *Id*. Disclosure of this information, or the

other types of information listed above, could tend to reveal the thought processes of consular

officers and other officials, which are protected under Section 222(f). *Id*.  Accordingly, such

information is exempt from disclosure pursuant to Exemption 3.

### b.  Exemption 5

State also withheld information pursuant to Exemption 5, 5 U.S.C. § 552(b)(5).

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that

would not be available by law to a party other than an agency in litigation with the agency."

Among other privileges, this includes material subject to the attorney-client privilege and the

work-product doctrine. *See, e.g., Miccosukee Tribe*, 516 F.3d at 1262 (affirming district court's

conclusion that Exemption 5 protected attorney client communications and work product within

EPA records responsive to a FOIA request).

State invoked Exemption 5 to withhold certain information under the attorney-client

privilege and attorney work product doctrine. Mr. Stein explains that the information withheld

reflects confidential communications and advice between Department officials and Department

attorneys regarding visa applications. Stein Decl. ¶ 63.

### c.  Exemptions 6 and 7(C)

State also withheld information implicating personal privacy under Exemptions 6 and

7(C). Specifically, the Department withheld identifying information of law enforcement and

consular officers under these exemptions. *Id.* ¶¶ 65, 71. In all instances where such information

appeared in the responsive material, State determined whether there existed any public interest in

disclosure and, if a public interest was implicated, weighed any such interest against the privacy

interest to determine whether disclosure would constitute an invasion of the third individual's

personal privacy. *Id.* ¶¶ 66, 72. As explained above, individuals have broad privacy interests,

while the public's interest in disclosure is the incremental value of the specific information

shedding light on agency action. *Schrecker*, 349 F.3d at 661. In each instance where it withheld

information pursuant to Exemptions 6 and 7(C), State determined that the individual privacy interests outweighed the public interest in disclosure. *Id.*

### d. Exemption 7(E)

Finally, pursuant to FOIA Exemption 7(E), State withheld information regarding or resulting from searches of non-public law enforcement databases used by State and other authorized law enforcement personnel. *Id.* ¶ 73. These non-public law enforcement databases serve as repositories for collected national security and criminal investigative information. *Id.* Access to these databases is restricted; VO officials have access to them in accordance with datashare agreements that restrict further disclosure of the records. *Id.*

Mr. Stein explains that disclosure of the printouts or information compiled from searches of these databases could enable criminals and terrorists to employ countermeasures to avoid detection, thus jeopardizing VO's role in enforcing immigration laws. *Id.* In particular, the CCD contains information about the "name check" and other, similar law enforcement techniques. *Id.* "While the public may generally be aware that 'name checks' are conducted, the withheld information consists of sensitive details about such name check databases or procedures that are not publicly known." *Mobley v. CIA*, 924 F. Supp. 2d 24, 63 (D.D.C. 2013). Thus, disclosure of these techniques could reasonably be expected to risk circumvention of the law. *Id.*

Because disclosure of information from the CCD and other law enforcement databases, the name check technique, and the techniques used to adjudicate visa eligibility and apply U.S. immigration laws and regulations would impede the VO's and other law enforcement agencies' effectiveness and potentially aid in circumvention of the techniques if disclosed, State properly withheld this information pursuant to Exemption 7(E), 5 U.S.C. § 552(b)(7)(E). Stein Decl. ¶ 74.

Mr. Stein's Declaration provides the Court a sufficient factual basis to place the information withheld by the Department of State within the exemption categories claimed. The Department is entitled to summary judgment because its withholding of material pursuant Exemptions 3, 5, 6, 7(C), and 7(E) was appropriate and lawful.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in their favor as to all claims in this case.

Dated:  October 7, 2020
Miami, Florida

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   /s/ Carlos Raurell
Assistant United States Attorney
Florida Bar No. 529893
Carlos.Raurell@usdoj.gov
United States Attorney's Office
99 NE 4th Avenue, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9243
Facsimile: (305) 530-7139
Attorneys for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2020, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system.

 /s/ Carlos Raurell
CARLOS RAURELL
Assistant United States Attorney

DE 29-1

**UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF FLORIDA**

IVAN JIMENEZ, JUAN MACHADO,            )
JOSE MUNOZ, GUILLERMO SENCION, and     )
MIGUEL VASQUEZ                         )
        Plaintiffs,              )
        v.                        )    Case No. 1:19-cv-3544 (APM)
UNITED STATES DEPARTMENT OF            )
HOMELAND SECURITY and DEPARTMENT       )
OF STATE,                              )
        Defendants.              )

**DECLARATION OF JAMES V.M.L. HOLZER**

I, James V.M.L. Holzer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Department of Homeland Security ("DHS") Privacy Office ("Privacy Office").

2. In this capacity, I am the DHS official responsible for implementing FOIA policy across DHS offices and components and responding to certain requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions.   I have been employed by the DHS Privacy Office in this capacity since May 2016.   I previously served as the Director of the Office of Government Information Services within the National Archives and Records Administration, and prior to that I served as the Senior Director of FOIA Operations for DHS.

3. DHS FOIA processes are decentralized throughout the department and DHS offices and components are responsible for processing their own FOIA requests.   Although the Privacy Office has responsibility for responding to FOIA requests submitted to DHS Headquarters, it began overseeing the Office of Biometric Identity Management's

(OBIM) processing of its FOIA requests in 2016 pursuant to a Memoranda of Agreement. Through a reprogramming request submitted in Fiscal Year (FY) 2019, the OBIM FOIA staff transitioned physically to the Privacy Office in FY2020.  My office has made such arrangements with other DHS components and offices on both ad hoc and systematic bases in order to assist with backlog issues and increase efficiencies within the department.  Because of the arrangement the Privacy Office has made with OBIM, I am submitting this declaration on behalf of OBIM.  This and other arrangements the Privacy Office has made with DHS offices and components with respect to the processing of FOIA requests, however, do not affect the decentralized nature of the department's FOIA processes.

4. Through the exercise of my official duties, I have become familiar with the handling of Plaintiffs' FOIA requests, and I have also become familiar with the background of this litigation.  I have read a copy of the Complaint filed by Plaintiffs on April 23, 2019.  I make the statements herein based on my personal knowledge, as well as on information that I acquired while performing my official duties.

5. On November 14, 2018, Plaintiff Machado submitted a request to OBIM seeking information pertaining to himself in the Automated Biometric Identification System (IDENT), a records system maintained OBIM and the Arrival Departure Information System (ADIS).

6. On March 3, 2018, Plaintiff Sencion submitted a request to OBIM for information pertaining to himself in IDENT and ADIS.

7. On May 17, 2013, Plaintiff Munoz submitted a request to OBIM for information pertaining to himself from IDENT and ADIS.  He subsequently submitted an additional

request for any other information related to him maintained by OBIM.

8.  IDENT is the central DHS-wide system for storage and processing of biometric and associated biographic information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions and certain positions of public trust; and associated testing, training, management reporting, planning and analysis, or other administrative uses.

9.  ADIS is a system owned and maintained by U.S. Customs and Border Protection (CBP), which consolidates data from a variety of systems to create a unique person-centric record with complete travel history.   OBIM does not own or maintain the ADIS system of records, and could not search the same for records responsive to Plaintiffs' request.

10. In response to Plaintiffs' requests, OBIM conducted a search of IDENT.   OBIM notified the Plaintiffs that ADIS was not an OBIM system and that any requests for ADIS records needed to be sent to CBP.

11. Plaintiffs included fingerprint cards with their FOIA requests.   OBIM routinely receives fingerprint cards as part of FOIA requests.   In order to properly respond to such requests, OBIM must match the fingerprints on the cards with the individuals' fingerprint identification numbers (FINs); OBIM does not, however, have an independent query capability for its IDENT system using fingerprint cards.   Therefore, OBIM to runs queries in the Arrest Graphical User Interface for Law Enforcement ("EAGLE") system. EAGLE is a part of a Department of Homeland Security shared common database repository.   Specifically, OBIM scans copies of the fingerprint cards, uploads them into EAGLE, and then uses EAGLE to query IDENT to find the subjects' FINs, if they exist. It is the practice of OBIM to search for records in IDENT using fingerprint cards where

available.   A search conducted using fingerprint cards will result in the location of any records relating to a subject in IDENT.   OBIM is also able to locate such records using an Alien Identification Number, which would locate the same records.

12. OBIM's search for records relating to Plaintiff Machado resulted in no records being located.

13. OBIM's search for records relating to Plaintiff Munoz resulted in the location of eight pages from a United States Visitor and Immigrant Status Indicator Technology (US-VISIT) Secondary Inspection Tool Report relating to him maintained by OBIM.   As explained below, OBIM withheld portions of these pages pursuant to Title 5 U.S.C. § 552 (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E).

14. OBIM withheld Department of State records located in IDENT indicating the denial of Plaintiff's Munoz's visa petition under FOIA exemption (b)(3) pursuant to 8 U.S.C. § 1202(f), which requires that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States."   The records withheld pertained to the issuance or refusal of visas or permits to enter the United States.

15. OBIM also withheld "terminal ID numbers" associated with DHS personnel involved in various encounters with Plaintiff Munoz pursuant to FOIA exemption (b)(6).   The employees associated with these identification numbers are or were staff level employees and not senior decision-makers.   There is no public interest in the disclosure of their identification numbers.   Conversely, given sensitivity surrounding immigration

enforcement, which often attracts negative attention among some segments of the public, these employees have privacy interests in not having information that could lead to their identification released to the public because, in the event their identities did become public, they could be subject to unwanted attention and harassment.

16. Finally, DHS withheld certain internal codes and encounter information pursuant to FOIA exemption (b)(7)(E).   This information, if disclosed, would reveal law enforcement techniques employed during the course of enforcing the immigration laws of the United States.   The disclosure of this information could undermine DHS' efforts in this regard and could enable members of the public in evading such enforcement.   Any further description of these codes would reveal the technique being employed.

17. OBIM's search for records relating to Plaintiff Sencion resulted in no records being located.

18. After the filing of this action, OBIM reconducted these searches on July 1, 2019 to ensure that its initial responses were accurate.   The results for all three searches were the same as what was initially communicated to the Plaintiffs and indicated above.   No additional records were located.

19. OBIM's search of IDENT for records pertaining to the Plaintiffs was reasonable because IDENT is the only system of records owned and maintained by OBIM, where records regarding the named subjects would be found.   Moreover, since the primary mission of OBIM is to provide biometric match, store, share, and analyze services to other DHS components and mission partners, it does not have any independent need to collect information regarding individuals or conduct inquiries into individuals other than within the IDENT system.

Under penalty of perjury, pursuant to 28 U.S.C. § 1746 I declare the foregoing is true and

correct to the best of my knowledge and belief.


Dated the 6th day of October 2020.


_____
James V.M.L. Holzer
Deputy Chief FOIA Officer
U.S. Department of Homeland Security

DE 29-3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IVÁN JIMÉNEZ, JUAN MACHADO, JOSÉ
MUÑOZ, GUILLERMO SENCIÓN, and
MIGUEL VÁSQUEZ,

        Plaintiffs,

        v.

U.S. DEPARTMENT OF STATE,

        Defendant.

Civil Action No. 19-21546-CIV-GAYLES

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.    I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016. I am the State official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions. As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information. Prior to serving in my current capacity, I worked directly for State's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS. I make the following statements based upon my personal

knowledge, which in turn is based upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject request. This declaration explains the search for and review of records responsive to the FOIA requests at issue in this litigation and the FOIA exemptions applied to the withholdings, including the Department's partial no-number, no-list response.

2.      The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.      I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions. As the Director of IPS, I have original classification authority, and I am authorized to classify and declassify national security information.

## I. ADMINISTRATIVE PROCESSING OF PLAINTIFFS' REQUESTS

### a. Request F-2014-09926

4.      By letter dated June 4, 2014, Plaintiff Jose Muñoz, through counsel, submitted to the Department a FOIA request related to Plaintiff, including "all records that the Department of State has regarding Jose Roberto Munoz Moncion that prove that Mr. Munoz is a money

launderer/drug trafficker or any information that proves that he is involved in any illegal/criminal/activities." (Exhibit 1)

5.      By letter dated June 13, 2014, the Department acknowledged this request and assigned it Case Control Number F-2014-09926.  (Exhibit 2)

6.      By letter dated March 1, 2016, the Department responded to the request by producing two documents in full and two in part.  These documents were copies of documents that originated with Plaintiff Muñoz or someone acting on his behalf.  The Department's cover letter explained that the Department was withholding any other responsive records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), as specifically protected from release by Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f).  (Exhibit 3)

7.      By letter dated October 18, 2018, the Department further responded to the request by producing 14 documents in full and 4 in part, totaling 39 pages.  These documents were copies of documents that Plaintiff Muñoz previously submitted to or received from the Department in connection with nonimmigrant visa applications.  The Department's cover letter explained that the Department was withholding any other responsive records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), as specifically protected from release by Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  (Exhibit 4)

8.      By fax dated November 9, 2018, Plaintiffs' counsel administratively appealed the adequacy of the Department's search for responsive records and the Department's determination that certain material was exempt from release under the FOIA.  (Exhibit 5)

9.      By letter dated December 20, 2018, the Appeals Officer acknowledged Plaintiff Muñoz's appeal.  (Exhibit 6)

10.     On April 23, 2019, Plaintiffs filed their complaint in the present matter with this Court.

11.     By letter dated June 26, 2019, the Appeals Officer informed Plaintiffs' counsel that the November 9, 2018, administrative appeal was being closed as a result of being overtaken by the present litigation.  (Exhibit 7)

12.     By letter dated June 26, 2020, the Department informed Plaintiff Muñoz that it had conducted further review of the records withheld pursuant to Exemption 3 and determined that material within those records was further exempt from disclosure pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E).  (Exhibit 8)

### b.  Requests F-2015-16891, F-2017-017779, and F-2018-00322

13.     By letter dated November 6, 2015, Plaintiff Miguel Vásquez, through counsel, submitted a FOIA request to the Department seeking "[r]ecords regarding alleged criminal activities that have led to his visa revocation that took place in Santo Domingo, Dominican Republic in the year 2002."  (Exhibit 9)

14.     By letter dated December 21, 2015, the Department acknowledged receipt of the request and assigned it Case Control No. F-2015-16891.  (Exhibit 10)

15.     By letter dated October 4, 2016, the Department responded to the request by producing 235 documents in full and 16 in part, totaling 279 pages.  These documents were copies of documents that Plaintiff Vásquez previously submitted to or received from the Department in connection with nonimmigrant visa applications.  The Department's cover letter explained that the Department was withholding any other responsive records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), as specifically protected from release by Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  (Exhibit 11)

16.     By letter dated December 18, 2017, Plaintiffs Jiménez and Vásquez, through counsel, submitted a FOIA request to the Department seeking "all records, including emails, pertaining to the revocation of the visa previously held by Mr. Vasquez." (Exhibit 12)

17.     On December 27, 2017, the Department acknowledged receipt of this second request and assigned it Case Control No. F-2017-17779. The Department informed Plaintiff it could not process the request because it had not been reasonably described in a way that someone familiar with Department records and programs could locate them. (Exhibit 13)

18.     On January 29, 2018, the Department informed Plaintiff that the second request was pending processing and reassigned the request as Case Control No. F-2018-00322. (Exhibit 14)

19.     On April 12, 2018, the Department responded to Plaintiff Vásquez's request by producing an additional two documents in full, totaling two pages. These documents were copies of documents that Plaintiff Vásquez previously submitted to or received from the Department in connection with nonimmigrant visa applications. The Department's cover letter explained that the Department was withholding any other responsive records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), as specifically protected from release by Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). (Exhibit 15)

20.     By letter dated September 22, 2020, the Department responded to Plaintiff Vásquez's request by producing 73 documents in full and 22 in part, totaling 211 pages. These documents were copies of documents that Plaintiff Vásquez previously submitted to the Department in connection with nonimmigrant visa applications. The Department's cover letter explained that the Department was withholding, pursuant to FOIA, all information about the other responsive records: "Any information about other visa records responsive to your request,

including the quantity of such records, is confidential under Section 222(f) [of the Immigration
and Nationality Act] and therefore exempt from release under Exemption 3 of the FOIA, 5 U.S.C.
§ 552(b)(3).  Consequently, the Department is unable to disclose any further information in
response to your request."  The Department further informed Plaintiff Vásquez that it had
determined that material within those records was also exempt from disclosure pursuant to FOIA
Exemptions 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(E).  (Exhibit 16)

### c.  Requests F-2018-01563 and F-2018-06912

21.     By letter dated February 21, 2018, Plaintiff Guillermo Sención, through counsel,
submitted a FOIA request to the Department for "[a]ny/all records, entries, notes, emails in your
possession and in your system of records inside the continental United States of America and in
your Consular Posts Abroad ([e]specially in the US Consulate in Santo Domingo) regarding any
record, information or allegations of any illegal/unlawful activity that could have led to subject of
record's visa cancellation/revocation by the United States Consulate in Santo Domingo, on or
about October 24, 2014 (Mr. Sención was summoned to the Consulate and had his visa revoked in
front of him.  Please include a detailed index of such records wi[th] all reasonably segregable
information." (Exhibit 17)

22.     By letter dated April 24, 2018, the Department acknowledged this request and
assigned it Case Control No. F-2018-01563.  (Exhibit 18)

23.     By letter dated May 3, 2018, the Department responded to the request by producing
15 documents in full and 4 in part, totaling 39 pages.  These documents were copies of documents
that Plaintiff Sención previously submitted to or received from the Department in connection with
nonimmigrant visa applications.  The Department's cover letter explained that the Department was
withholding any other responsive records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), as

specifically protected from release by Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  (Exhibit 19)

24.     By fax dated September 11, 2018, Plaintiffs Jiménez and Sención, through counsel, submitted a FOIA request for all records responsive to F-2018-01563 that had not been previously released.  (Exhibit 20)

25.     On November 5, 2018, the Department acknowledged receipt of this second FOIA request and assigned it Case Control No. F-2018-06912.  (Exhibit 21)

26.     By letter dated February 15, 2019, the Department responded to the second request by producing 15 documents in full and 4 in part, totaling 39 pages.  These documents were copies of documents that Plaintiff Sención previously submitted to or received from the Department in connection with nonimmigrant visa applications.  The Department's cover letter explained that the Department was withholding any other responsive records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), as specifically protected from release by Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  (Exhibit 22)

27.     By fax dated March 11, 2019, Plaintiffs Jiménez and Sención administratively appealed the adequacy of the Department's search for responsive records and the Department's determination that certain material was exempt from release under the FOIA.  (Exhibit 23)

28.     By letter dated March 12, 2019, the Appeals Officer acknowledged Plaintiffs Jiménez and Sención's appeal.  (Exhibit 24)

29.     On April 23, 2019, Plaintiffs filed their complaint in the present matter with this Court.

30.     By letter dated June 26, 2019, the Appeals Officer informed Plaintiffs' counsel that the March 11, 2019, administrative appeal was being closed as a result of being overtaken by the present litigation.  (Exhibit 25)

31.     By letter dated June 26, 2020, the Department informed Plaintiff Sención that it had conducted further review of the records withheld in full pursuant to Exemption 3 and determined that material within those records was further exempt from disclosure pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E).   The Department likewise informed Plaintiff Sención that it had determined that material withheld under Exemption 3 in the four documents previously released in part was further exempt from disclosure pursuant to FOIA Exemptions 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(E).  (Exhibit 26)

### d.  Request F-2018-04237

32.     By fax dated June 3, 2018, Plaintiffs Iván Jiménez and Juan Machado Amadis, through counsel, submitted a FOIA request to the Department seeking:

> 1) All records, including emails, in the U.S. Embassy in Santo Domingo, including but not limited to the Regional Security Office, including any permutations of Mr. Machado Amadis' name (including permutations which lack "Amadis");
> 2) All records, including emails, in the U.S. Embassy in Santo Domingo, including but not limited to the Regional Security Office, created since 2010 pertaining to Mr. Machado Amadis' business Romaca Industrial SA, a/k/a Romaca SRL (including all records including the email address romaca.cxa@clar.net.do);
> 3) All records, including emails, pertaining to the revocation of Mr. Machado Amadis' visa (including but not limited to records describing his alleged criminal conduct), regardless of where in the State Department they are located; and

4)   All records deemed potentially responsive to FOIA Req. No. F-2016-10536 but later deemed non-responsive to that request.[1]  (Exhibit 27)

33.      The Department acknowledged receipt of the FOIA request on August 17, 2018,

and assigned it Case Control Number F-2018-04237.  (Exhibit 28)

34.      By letter dated September 22, 2020, the Department responded to Plaintiff

Machado Amadis's request by producing 21 documents in full and 16 in part, totaling 71 pages.

Although Plaintiff Machado Amadis's request was not purely limited to visa-related records, the

responsive, non-exempt documents identified were copies of documents that Plaintiff Machado

Amadis previously submitted to or received from the Department in connection with

nonimmigrant visa applications.  The Department's cover letter explained that the Department was

withholding, pursuant to FOIA, all information about the other responsive records:  "Any

information about other visa records responsive to your request, including the quantity of such

records, is confidential under Section 222(f) [of the Immigration and Nationality Act] and

therefore exempt from release under Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3).

Consequently, the Department is unable to disclose any further information in response to your

request."  The Department further informed Plaintiff Machado Amadis that it had determined that

material within those records was also exempt from disclosure pursuant to FOIA Exemptions 6,

7(C), and 7(E), 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(E).  (Exhibit 29)

---

[1] Plaintiff Machado Amadis previously submitted and litigated two FOIA requests, assigned Case Control Nos. F-2016-10536 and F-2017-12067, made to the Department for visa-related records.  F-2016-10536 sought "[r]ecords regarding alleged criminal activities that have led to his visa revocation/denial," while F-2017-12067 sought all records "memorializing or describing the processing of [Plaintiff Machado Amadis's] previous FOIA Request No. F-2016-10536."  The district court granted summary judgment in favor of Defendants, including the Department, in *Machado Amadis v. DOJ*, 388 F. Supp. 3d 1 (D.D.C. 2019), and the D.C. Circuit upheld this ruling, 971 F.3d 364 (D.C. Cir. 2020).

## II. THE SEARCH PROCESS

35.     When the Department receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested.  This determination is based on the description of the records requested and a familiarity with the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions.

36.     Each office within the Department, as well as each Foreign Service post and mission, maintains files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission.  These files consist generally of working copies of documents, information copies of documents maintained in the Central Foreign Policy Records collection, and other documents prepared by or furnished to the office in connection with the performance of its official duties, as well as electronic copies of documents and e-mail messages.

37.     When conducting a search in response to a FOIA request, the Department relies on the knowledge and expertise of the employees of each bureau, office, or post to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized.  Likewise, those employees are also in the best position to determine which search terms would yield potentially responsive records, because they are most knowledgeable about the organization of the records systems in use.

38.     Based on its knowledge of the responsibilities of the various Department components, together with an evaluation of the subject matter of Plaintiffs' requests, IPS tasked the Directorate of Visa Services in the Bureau of Consular Affairs to conduct searches for

documents responsive to Plaintiffs' FOIA requests.  IPS further tasked the Bureau of Diplomatic

Security, and the U.S. Embassy in Santo Domingo, Dominican Republic, for Plaintiff Machado

Amadis's request, given the scope of that request.

### Directorate of Visa Services, Bureau of Consular Affairs

39.     The Directorate of Visa Services ("VO") in the Bureau of Consular Affairs ("CA")

manages all aspects of visa services for foreign nationals who wish to enter the United States.  VO

interprets and applies immigration laws and regulations and acts as a point of contact for the public.

VO also serves as a liaison between the Department of State and its embassies and consulates

abroad on visa matters.  VO's primary responsibility is the enforcement of U.S. immigration laws

and regulations.  Records relating to visa applications, among other matters, are generally

maintained in a central electronic database called the Consular Consolidated Database ("CCD").[2]

VO also maintains the Consular Lookout and Support System ("CLASS") and the Non-Immigrant

Visa ("NIV") system.[3]

---

[2] The CCD is a system of non-public consolidated databases that holds all of the current and archived data entered by consular officers from U.S. embassies and consulates around the world, including the U.S. Embassy in Santo Domingo, Dominican Republic.  This includes, among other information, data regarding the diversity visa program, immigrant visas, non-immigrant visas, the visa revocation system, the admissibility review and information service, and identity verification applications, as well as an interface to the consular lookout and support system.  The CCD contains a record of every U.S. visa application made since 1997 with the accompanying adjudication decision concerning an applicant's eligibility for a visa, including any decision to issue, refuse, or revoke a visa.  Access to the CCD and its combined applications and databases is password-protected and provides authorized users with real-time access to case-related information.  The database is a crucial law enforcement tool, used to administer and enforce U.S. immigration law, to assess an alien's visa eligibility under the Immigration and Nationality Act and other applicable laws, and to prevent and track fraud.

[3] The NIV system automates and streamlines posts' capabilities for processing and adjudicating applications for standard non-immigrant visas.  The system processes applicant, vessel, petition, diplomatic note, and referral data; enables the user to view the results from

### U.S. Embassy in Santo Domingo, Dominican Republic

40.     In general, U.S. embassies conduct activities that are aimed at promoting U.S. foreign policy objectives and protecting both U.S. interests and U.S. citizens overseas.  The U.S. Embassy in Santo Domingo, the Dominican Republic (the "Embassy") promotes the interests and values of the United States by working together with Dominicans for the continued development of a democratic, equitable, and prosperous Dominican Republic.  Each embassy and consulate employs Foreign Service Officers and Specialists, as well as locally employed staff, and has unique staffing patterns and records management systems.

### Bureau of Diplomatic Security

41.     The Bureau of Diplomatic Security ("DS") is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy.  Every diplomatic mission in the world operates under a security program designated and maintained by DS.  In the United States, some of DS's responsibilities include:  investigation of passport and visa fraud; personnel security investigations; and protection of the Secretary of State and high-ranking foreign dignitaries and officials visiting the United States.  DS also trains foreign civilian law enforcement officers in disciplines designated to reduce the threat and repercussions of terrorism throughout the world.

#### a.   Request F-2014-09926

42.     A CA/VO employee, who was knowledgeable of the FOIA request at issue and CA's records systems, conducted a search of the CCD using "Munoz Moncion, Jose Roberto" and appropriate permutations thereof, and Plaintiff Muñoz's date of birth, using a search function

---

namechecks; records the decision of the adjudicating officer; and prints the Machine Readable Visa ("MRV").

designed to return near matches of the search terms in addition to exact matches. The search was not limited by date. These searches located more than 18 responsive records.

### b.   Requests F-2015-16891, F-2017-017779, and F-2018-00322

43.   A Visa Liaison Officer in CA/VO, who was knowledgeable of the FOIA request at issue and the Department's records systems, conducted a search of the CCD using "Vasquez Escoto, Miguel Angel De Jesus" and appropriate permutations thereof, and Plaintiff Vásquez's date of birth, using a search function designed to return near matches of the search terms in addition to exact matches. The search was not limited by date. These searches located more than 95 responsive records.

### c.   Requests F-2018-01563 and F-2018-06912

44.   A visa employee in CA/VO, who was knowledgeable of the FOIA request at issue and CA's records systems, conducted a search using "Guillermo Antonio Sencion Suarez" and appropriate permutations thereof, and Plaintiff Sención's date of birth, using a search function designed to return near matches of the search terms in addition to exact matches. The search was not limited by date. These searches located more than 19 responsive records.

### d.   Request F-2018-04237

45.   A Program Analyst in CA/VO, who was knowledgeable of the FOIA request at issue and CA's records systems, conducted a search of the CCD using "Juan Luciano Machado Amadis" and Plaintiff Machado Amadis's date of birth, using a search function designed to return near matches of the search terms in addition to exact matches. The search was not limited by date. These searches located more than 32 responsive records.

46.   The U.S. Embassy in Santo Domingo's review of the FOIA request determined that the only section reasonably likely to maintain responsive records was the Consular Section. A

Non-Immigrant Visa Chief in the Consular Section, who was knowledgeable of the FOIA request at issue and the Embassy's records system, conducted a search of the Consular Section's email records and shared drive using the search terms "Juan Luciano Machado Amadis," "Juan Machado," and "Juan Amadis." The date range of the search was January 1, 2000, through September 2, 2020. The search located five documents responsive to the request.

47.     A FOIA Division Chief in DS, who was knowledgeable of the FOIA request at issue and DS's records systems, conducted a search of the Investigative Management System ("IMS")[4] and DS's current and retired records using the search terms "Juan Luciano Machado Amadis," "Machado Amadis," "Juan Amadis," "Amadis," "Romaca Industrial SA," "Romaca SRL," and "Romaca." The search was not limited by date. These searches located no responsive records.

## III. TYPES OF VISA RECORDS

48.     As explained below, disclosing the number of responsive visa records, or describing those records in a *Vaughn* index, would reveal information that Section 222(f) requires the Department to keep confidential. For this reason, the Department is not able to provide a *Vaughn* index of the records withheld in response to these particular FOIA requests. However, the following is a description of types of visa records that are generally kept (as opposed to in reference to this individual case):

---

[4] IMS is the primary criminal and law enforcement database used by DS. It is an electronic tracking system used by DS to control and document criminal investigations and was launched in January 2007. The information stored in the system covers case background, case allegations, case documented interviews, evidence, surveillance videos/audio tapes, pictures, post records and foreign government records, and related investigative information. There are a number of query fields, with name being the most common.

| Common Document Type | Document Description |
|---|---|
| Fraud Assessment Detail | Provides the details of the result of a fraud case assessment in the course of adjudicating a visa application |
| Hit Text Reports | Provides fingerprint results requested in the course of processing visa applications |
| Independent Lookout Accountability | Provides the status of background checks conducted in the course of processing visa applications |
| Independent Namecheck Detail | Provides the details of the results of namechecks conducted in the course of adjudicating visa applications |
| Law Enforcement Database Request History | Provides the results of identity checks from a law enforcement database conducted in the course of processing visa applications |
| Law Enforcement Database System Report | Contains biographic information, biometric indicators, and encounter data consolidated from various interagency systems for individuals |
| NIV Applicant Case Lookup Detail | Contains details concerning the adjudication of visa applications, including consular comments, application data, and other pertinent data |
| NIV Case Accountability Report – Audit History | Provides a record of changes made to the electronic database in the course of processing visa applications and thereafter |
| NIV Case Accountability Report – BCC Detail | Provides the details of the result of a namecheck conducted in the course of adjudicating visa applications |
| NIV Case Accountability Report – Namecheck Detail | Provides the details of the results of namechecks conducted in the course of adjudicating visa applications |
| Status Lookup | Shows the status of certain types of security procedures related to an individual's visa application(s). The document provides details regarding the adjudication of visa applications |
| Visa Applicant Detail | Contains details concerning the adjudication of visa applications, including consular comments, application data, and other pertinent data |
| Visa Revocation Service | Contains details about visas that the Department issued, including the expiration date and identification number for each one, as well as information about whether a visa was revoked |

49.     The record(s) being withheld in this case are all visa-related records and correspond to one of the document types described in the above table. The Department has withheld information in a number of documents that pertains to the issuance or refusal of visas, which is exempt from disclosure under Exemption 3 pursuant to INA § 222(f). The Department has further withheld information in a number of documents that pertains to the revocation of visas as exempt from disclosure under Exemption 3 pursuant to INA § 222(f). To adjudicate a visa revocation, the

Department relies on all of the information available regarding the applicant's eligibility for a visa and employs the same thought processes as would be used for an initial issuance. The revocation adjudication pertains directly to the issuance and refusal of a visa because a revocation is a decision that the current visa should not have been issued or that a future visa may need to be refused. In revoking a visa, the Department is, at a later time, revisiting a decision to issue a visa or considering grounds of ineligibility for a visa under the U.S. immigration laws that may require that the visa be refused. The visa revocation becomes part of the general visa record in the Consolidated Consular Database and will be reviewed in the case of a subsequent visa application as a record relating to the eligibility for issuance or refusal of the subsequent visa. Further, disclosure of revocation records necessarily discloses records and information considered in the initial instance.

50.     When the Department denies a visa application, it provides "the alien with a timely written notice that (A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is inadmissible," as required by 8 U.S.C. § 1182(b)(1). The Department does not provide any further written information about the factual basis for the denial.

## IV. THE DEPARTMENT'S NO-NUMBER, NO-LIST RESPONSE

51.     The Department receives thousands of FOIA requests every year. In the typical case, as noted above, IPS evaluates an incoming request and determines which offices, overseas posts, or other records systems within the Department are reasonably likely to contain the records requested. IPS then tasks those offices and overseas posts with conducting a search for records responsive to the FOIA request. If responsive records are retrieved, IPS then reviews those records to determine whether they may be released to the requester or whether they must be withheld pursuant to applicable FOIA exemptions. If responsive records are withheld in full, the

Department typically discloses to the requester the number of such records and, if the requester desires, a description of those records.

52.     In some rare cases, however, information about the number or content of withheld responsive records would reveal information exempt from disclosure under an applicable FOIA exemption. While such matters are not frequently encountered in FOIA requests, the Department must respond to all such requests by declining to disclose either the number of withheld records or a description of the withheld records. *See* 5 U.S.C. § 552(a)(6)(F) ("In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made."); *ACLU v. CIA*, 710 F.3d 422, 433–34 (D.C. Cir. 2013); *see also ACLU. v. CIA*, 109 F. Supp. 3d 220 (D.D.C. 2015) (approving C.I.A.'s no-number, no-list response).

53.     In this case, information about the number or content of withheld responsive records would reveal information that must be kept confidential under Section 222(f) of the Immigration and Nationality Act, which reads: "The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other

laws of the United States, except that...[exceptions omitted]."[5] Accordingly, information about the number or content of withheld responsive records is exempt from disclosure under FOIA Exemption 3, 5 U.S.C. § 552(b)(3).[6]

54. Disclosing information about the number or content of withheld responsive records would reveal information that must be kept confidential under Section 222(f) of the Immigration and Nationality Act, including information about the Department's decision-making process in any given visa adjudication. The following paragraphs provide several examples of the types of visa record information that could be revealed in any given case if the Department were to disclose the number of withheld visa records or descriptions of those records.

55. First, disclosing the number of responsive visa records could be viewed as revealing the Department's decision was routine or atypical: A small number of records may be viewed as suggesting that a decision was routine and made by the consular officer alone, while a large number of records may be viewed as suggesting that a decision was more complex and may have involved consultation with other Department officials or other Executive Branch components.

---

[5] Visa records submitted to the Department by an applicant, such as an application form or other document supporting the application, are not considered confidential vis-a-vis that individual.

[6] The Department's prior practice did include providing the requester with the number of responsive documents in cases dealing with records withheld under Section 222(f). However, the Department's experience has shown that this prior practice caused the disclosure of confidential aspects of the visa adjudication process. As a result, it has prudently modified its practice to ensure the statutorily mandated confidentiality pursuant to Section 222(f). Therefore, although certain of the Department's releases in response to the FOIA requests at issue did include a figure for the documents withheld, the Department has determined that its modified interpretation of Section 222(f) is more faithful to the text and statutory purpose and, therefore, that information about the number or content of withheld responsive records is confidential.

56.     Second, describing visa records in a *Vaughn* index could reveal details regarding whether a decision to grant or deny an application was made solely by a consular officer or included other individuals within the Department, whether interagency consultation was required, how long any such consultations took to complete, and what kinds of documents were considered in determining an applicant's eligibility for a visa.

57.     Third, describing visa records in a *Vaughn* index could also reveal details about which specific Executive Branch components were involved in collecting or providing information that was used in the visa adjudication process, what types of information those components provided, when that information was collected, and what types of information consular officials deem relevant when making visa eligibility determinations.

58.     Fourth, describing visa records in a *Vaughn* index could reveal details about the law enforcement techniques that were used to collect information relevant to a particular visa adjudication.

59.     Fifth, describing visa records in a *Vaughn* index could reveal information about the factual predicates for particular visa denials, including the relevance of an applicant's activities or the applicant's sponsor's activities.  For example, describing visa records in a *Vaughn* index could reveal the existence of an ongoing or past fraud or drug trafficking investigation of the applicant or his/her sponsor that rendered an individual ineligible for a visa.  Disclosure of this information, or the other types of information listed above, could tend to reveal the thought processes of consular officers and other officials, which are protected under Section 222(f).  Accordingly, such information is exempt from FOIA disclosure.

60.     Finally, even if the Department could disclose the number of responsive records or provide descriptions of them, it still would not be able to produce those records to a requester,

because visa records are confidential under Section 222(f) and therefore exempt from production under Exemption 3 of the FOIA. In addition, other FOIA exemptions might apply to visa records, depending on the nature of the records at issue.

## V. ADDITIONAL EXEMPTIONS CLAIMED

### FOIA Exemption 5 – Privileged Information

61.     5 U.S.C. § 552(b)(5) states that the FOIA does not apply to:

> inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency…

62.     Exemption 5, 5 U.S.C. § 552(b)(5), protects from disclosure information that is normally privileged in the civil discovery context, including information that is protected by the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine.

63.     The Department withheld certain information under the attorney-client privilege and attorney work product doctrine. That information reflects confidential communications and advice between Department officials and Department attorneys regarding visa applications. This information is, accordingly, exempt from release under Exemption 5.

### FOIA Exemption 6 – Personal Privacy

64.     5 U.S.C. § 552(b)(6) states that the FOIA does not apply to:

> …personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy….

65.     The courts have interpreted the language of Exemption 6 broadly to encompass all information that applies to an individual without regard to whether it was located in a particular type of file. The Department withheld identifying information of law enforcement and consular officers under Exemption 6.

66.     When information withheld under FOIA Exemption 6 identifies a specific individual, a personal privacy interest exists in the information. I am required, therefore, to determine whether there exists any public interest in disclosure and, if a public interest is implicated, to weigh any such interest against the privacy interest to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy. In each instance where the Department withheld information, I determined that the individual privacy interests outweighed the public interest in disclosure and all non-exempt information has been reasonably segregated and released.

### FOIA Exemption 7 – Law Enforcement Information

67.     FOIA Exemption 7 protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined in the Exemption's subparts. 5 U.S.C. § 552(b)(7). Before an agency can invoke any of the harms enumerated in FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.

68.     The law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law.[7] Records pertaining to routine agency activities can qualify for FOIA Exemption 7 protection when those activities involve a law enforcement purpose. Although the records must be created for some law enforcement purpose, there is no requirement that the matter culminate in actual administrative, regulatory, civil, or criminal enforcement proceedings.

---

[7] *Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (holding that an administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement); *see also Church of Scientology Intern. v. I.R.S.*, 995 F.2d 916, 919-920 (9th Cir. 1993) (finding the D.C. Circuit's reasoning in *Weinberger* persuasive).

In this case, the harm that could reasonably be expected to result from disclosure concerns revealing sensitive law enforcement information related to enforcement of the Immigration and Nationality Act.

69.     The documents in this case that contain material withheld under Exemption 7 all originated from the Bureau of Consular Affairs, Directorate of Visa Services.  As previously described, VO manages all aspects of worldwide visa services to foreign nationals who wish to enter the United States, including by providing advisory opinions to consular officers who adjudicate visa applications overseas.  VO interprets and applies immigration laws and regulations and acts as a point of contact for the public.  VO is on the front line of enforcing the U.S. Government's immigration laws and regulations.  VO also serves as a liaison with the Department of Homeland Security and other U.S. Government agencies with a role in administration and enforcement of U.S. immigration laws, as well as a liaison between the Department of State and its embassies and consulates abroad on visa matters.  It routinely uses non-public law enforcement databases to support its core duties of enforcing the U.S. immigration laws.  Therefore, these records compiled by VO meet the threshold requirement of FOIA Exemption 7, as they serve law enforcement purposes.

### FOIA Exemption 7(C) – Personal Privacy

70.     5 U.S.C. § 552(b)(7), states in relevant part that the FOIA does not apply to:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably expected to constitute an unwarranted invasion of personal privacy.

71.     FOIA Exemption 7(C) is the law enforcement counterpart to Exemption 6 and protects the privacy interests of all persons mentioned in law enforcement records.  Exemption 7(C) provides protection for law enforcement information the disclosure of which "could

reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §

552(b)(7)(C). Exemption 7(C) protects the privacy interests of any third party mentioned in law

enforcement records, unless there is an overriding public interest in disclosure. *See Schrecker v.*

*DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003). As a general rule, "third party identifying information

contained in law enforcement records is categorically exempt from disclosure." *See Nation*

*Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995). By omitting

the word "clearly" from the language of Exemption 7(C) and lowering the risk-of-harm standard

from "would" to "could reasonably be expected to," the exemption is broader in the law

enforcement context. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489

U.S. 749, 756 (1989). The Department withheld identifying information of consular and law

enforcement officers under Exemption 7(C).

    72.    The Department is required to balance the privacy interests of the individuals whose

information appears in the records against any public interest in disclosure. As the Supreme Court

noted in *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780

(1989), "as a categorical matter . . . a third party's request for law enforcement records or

information about a private citizen can reasonably be expected to invade that citizen's

privacy." The invasion of an individual's right to privacy is balanced with the extent to which the

information in question would inform the general public about the U.S. Government's

performance of its mission to enforce federal criminal and civil statutes, as well as administrative

rules and federal regulations. In each instance where the Department withheld information, I

determined that the individual privacy interests outweighed the public interest in disclosure and

all non-exempt information has been reasonably segregated and released.

## FOIA Exemption 7(E) – Law Enforcement Techniques

73.     The Department protected records documenting and reflecting the results of searches of non-public law enforcement databases that are accessible via the CCD and which are used for official purposes by the Department and other authorized law enforcement personnel. These non-public law enforcement databases serve as repositories for collected national security and criminal investigative information. They are essentially "one-stop shops" that allow VO to query information and develop investigative leads from a variety of source data using state-of-the-art analytical tools. Access to these databases is restricted; VO officials have access to them in accordance with datashare agreements that restrict further disclosure of the records. Disclosure of the printouts or information compiled from these search results could enable criminals and terrorists to employ countermeasures to avoid detection, thus jeopardizing VO's role in enforcing immigration laws. In particular, the CCD contains information about the "name check" and other, similar law enforcement techniques. "While the public may generally be aware that 'name checks' are conducted, the withheld information consists of sensitive details about such name check databases or procedures that are not publicly known." *Mobley v. CIA*, 924 F. Supp. 2d 24, 63 (D.D.C. 2013). Disclosure of these techniques could reasonably be expected to risk circumvention of the law. *Id.*

74.     Because disclosure of information from the CCD database and other law enforcement databases, the name check technique, and the techniques used to adjudicate visa eligibility and apply U.S. immigration laws and regulations would impede the VO's and other law enforcement agencies' effectiveness and potentially aid in circumvention of the techniques if disclosed, the Department withheld this information pursuant to Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

## VI. CONCLUSION

75.     The Department has conducted a careful line-by-line review of all of the records related to these FOIA requests.  The Department ensured that any reasonably segregable, non-exempt information within these records was disclosed and determined that no further information from withheld or partially withheld responsive documents could be released without revealing information warranting protection under the law.

\* \* \*

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this _7th_ day of October 2020, Washington, D.C.

Eric F. Stein

DE 29-4

# EXHIBIT 1

C05589720

F-2014-04926

June 4, 2014

Office of Information Programs and Services
A/GIS/IPS/RL
US Department of State
Washington, DC 20522 8100

### AUTHORIZATION AND FOIA REQUEST MADE UNDER OATH

Dear FOIA OFFICER:

This is a request filed under the Freedom of Information Act.

The undersigned, Jose Roberto Muñoz, identification no. ███████ Dominican ██████████ date of birth ██████████ born in ██████ Dominican Republic, domiciled at ███████████ Dominican Republic, is hereby requesting the Department of State to provide any/all information it has regarding any alleged criminal/money laundering activities regarding for him.  Mr. Jose Roberto Munoz Moncion had his ███████████ revoked under Drug trafficking/money laundering charges the 3rd of February 2009.

**Name:  JOSE ROBERTO MUNOZ MONCION**
**Date of birth:** ████████
**Place of Birth:** ██████ **Dominican Republic**
**Citizenship/Nationality:  Dominican Citizen**
**Location of US Foreign Service Post:  Santo Domingo, Dominican Republic**
**Origin of Records:  (Probably) US Consulate in Santo Domingo**
**Date revocation was made:  2009**
**Visa Revoked:** █████████
**Visa issued on June 9, 1999**
**Visa No.** ████████
**Current Address:  EPS X 21060, 8260 NW 14th street Doral Florida 33126**
**TimeFrame:  From February 2007 thru June 2014**
**Attorney Authorized:  Karina A. Perez Rojas**

We are requesting all records that the Department of State has regarding Jose Roberto Munoz Moncion that prove that Mr. Munoz is a money launderer/drug trafficker or any information that proves that he is involved in any illegal/criminal/activities.  These activities have apparently led the Department of State to revoke Mr. Munoz´s visa.

I hereby declare under penalty of perjury under the laws of the United States that I am JOSE ROBERTO MUNOZ MONCION, the person who is entitled to the records requested herein.    Additionaly, I AUTHORIZE Ms. Karina A. Perez, Legal Representative, to request and obtain all records related to this request.  I hereby certify and authorize Ms. Karina A. Perez to handle this FOIA request and authorize her, under penalty of perjury under the laws of the United States of America, to obtain any records under my name.

'14 JUN 3 PM 1:40

C05589720

We are willing to pay up to US$100.00 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing this request.

I, JOSE ROBERTO MUNOZ MONCION, authorize the Department of State to release all records about me to Dra. Karina A. Perez, and I declare, certify, verify or state that, under penalty of perjury under the laws of the United States of America, the foregoing is true and correct.

This information should be sent to Ms. Karina A. Perez Rojas to the following address:

Karina A. Perez
EPS X 21060
8260 NW 14th Street
Doral Florida 33126

Please respond to our request twenty (20) working days from receipt of the same. Your assistance in this matter is appreciated.

Santo Domingo, Dominican Republic, the 4 June 2014.

José Roberto Muñoz Moncion

cc: B1B2 copy

# EXHIBIT 2



United States Department of State

*Washington, D.C. 20520*

**JUN 1 3 2014**

Dear Requester,

RE: ▮▮▮▮▮ Visa Revocation Regarding
Jose Roberto Munoz Moncion

This is in response to your request dated June 4, 2014. We have assigned
Case Control Number F-2014-09926 and will begin the processing of
your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a
specific timeframe.

Unusual circumstances (including the number and location of Department
components involved in responding to your request, the volume of requested
records, etc.) may arise that would require additional time to process your request.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you have any questions, you may call our FOIA Requester Service Center
at (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the
Case Control Number in any communication.

Sincerely,
Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*                          *Inquiries:*
*U.S. Department of State, SA-2*                          *Phone: 1-202-261-8484*
*Washington, DC 20522-8100*                          *FAX: 1-202-261-8579*
*Website: www.foia.state.gov*                          *E-mail: FOIAStatus@state.gov*

**Fees:** The Freedom of Information Act (FOIA) provides that agencies may assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted. You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified.

___✓___ You have stated your willingness to pay the fees incurred in the processing of this request up to $ 100.00.

_____ Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories). **Please do not send payment in advance. If there are fees incurred in the processing of your request, you will be notified of the amount owed in separate correspondence.**

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

_____ **Commercial Use Requesters** – Charges may be assessed that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

_____ **Educational Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_____ **Non-commercial Scientific Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_____ **Representatives of the News Media** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

___✓___ **All Other Requesters** – Charges may be assessed that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

_____ You have indicated your inclusion in a category different than the one indicated above. Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

**Visa Records:**  For visa records, provide the location of the U.S. Foreign Service post abroad where application was made; the type of visa (immigrant or non-immigrant); whether granted or denied; date of issuance or denial; and case number (for immigrant visa only).  Please include any additional information which you believe might be helpful to locate the documents you are seeking.

**For Pending Visa Petitions:**  The applicant, the applicant's attorney, or other designated representative of record may request copies of the following records directly from the National Visa Center (NVC), and **need not file a FOIA request:**

(a)   Correspondence previously sent or given to the applicant by a post or NVC;

(b)   Civil documents presented by the applicant, such as birth, death, and divorce certificates; and

(c)   Visa applications and any other documents submitted by the applicant in the form in which they were submitted.

Requests for these items may be sent to:

> National Visa Center
> Attention:  Written Correspondence
> 32 Rochester Avenue
> Portsmouth, NH  03801-2909

The request should include the name and address of the requesting party and his/her relation to the applicant, name of petitioner and beneficiary, the case number, and the documents being requested.

**Limitations on Releasability:**  Please note, the FOIA exempts from disclosure those agency records that are otherwise protected from release by federal statutes other than the FOIA (5 U.S.C. § 552(b)(3)).  One such statute is Section 222(f) of the Immigration and Nationality Act (8 U.S.C. § 1202(f)), which renders confidential those records of the Department of State pertaining to the issuance or refusal of visas or permits to enter the United States.  As a result, you should be aware that State Department visa records are generally exempt from disclosure under the (b)(3) exemption of the FOIA.  This is the case regardless of whether the requester is a third party or the visa applicant himself/herself, and regardless of whether the visa applicant has authorized the FOIA request or is no longer living.

Although documents that were submitted by or sent to the visa applicant or his/her representative in the course of processing the visa application may be releasable to the applicant, internal records generated by the Government in the course of processing the visa application generally would not be releasable.

# EXHIBIT 3

March 1, 2016

Karine A. Perez
EPS X 21060
8260 NW 14th Street
Doral FL,  33126

      Case Control Number: F-2014-09926

Dear Ms. Perez:

      I refer to your request under the Freedom of Information Act for copies of records pertaining to your client, Jose Roberto Munoz Moncion's request.  Inasmuch as your request relates to visa matters, the Visa Office of the State Department has searched its records, located, and reviewed 38 documents, totaling 89 pages, relating to your request.

      The Freedom of Information Act generally provides for public access to government records. However, it specifically exempts from disclosure those records which are otherwise specifically protected from release by statute (5 U.S.C. §552(b)(3)).  Section 222(f) of the Immigration and Nationality Act (8 U.S.C. §1202(f)), relating to the information contained in the records of the Department of State pertaining to the issuance or refusal of visas or permits to enter the United States, is such a statute.

      The 38 documents in question pertain to State Department records relating to the application for a visa or permit to enter the United States.  As such, they are separately protected from disclosure by Section 222(f) and are exempt from release by the (b)(3) exemption to the Freedom of Information Act. However, in accordance with the decision in Medina-Hincapie v. Department of State, et.al., 700 F2.d 737 (DC Cir. 1983), we agree to release two documents in full and two in parts, as these documents originated with the applicant or someone acting on his behalf, and release would therefore not breach their confidentiality.

      This decision may be appealed to the Chairman of the Appeals Review Panel of the Department pursuant to Section 171.52 Title 22 of the Code of Federal Regulations.  For your information, a copy of this regulation is enclosed.

                          Sincerely,

                          Matthew McNeil, Acting Chief
                          Advisory Opinions Division
                          Directorate for Visa Services

Enclosure:  As stated

# EXHIBIT 4

**United States Department of State**

*Washington, D.C. 20520*

Karina A. Perez, Esq.
EPS X 21060
8260 NW 14th Street
Doral, FL 33126

October 18, 2018

Case Control Number: F-2014-09926
Subject of Request: Jose Roberto Munoz Moncion

Dear Ms. Perez:

Thank you for your request under the Freedom of Information Act. As your request relates to visa matters, the Visa Office of the State Department has searched its records, located, and reviewed 104 documents, totaling 216 pages, relevant to your request.

The Freedom of Information Act generally provides for public access to government records. It specifically exempts from disclosure, however, those records which are otherwise specifically protected from release by statute (5 U.S.C. §552(b)(3)). Section 222(f) of the Immigration and Nationality Act (8 U.S.C. §1202(f)), is such a statute. 8 U.S.C. §1202(f) provides in pertinent part that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas…shall be considered confidential…"

However, in accordance with the decision in Medina-Hincapie v. Department of State, et.al., 700 F2.d 737 (DC Cir. 1983), we are permitted to release only those documents which were submitted or received by the applicant/requestor or others who have provided written authorizations for release of their documents. Thus, we are releasing to you 14 documents in full and four in part, as these documents originated from or were sent to individuals who provided written authorizations and release would therefore not breach confidentiality.

You may contact our FOIA Requester Service Center or our FOIA Public Liaison for any further assistance and to discuss any aspect of your request via email at Foiastatus@state.gov or telephone at (202) 261-8484. Please be sure to refer to the case control number shown above in all correspondence about this case.

If you are not satisfied with DOS's determination in response to your FOIA request, you may administratively appeal by writing to: Appeals Officer, Appeals Review Panel, Office of Information Programs and Services (IPS), U.S. Department of State, State Annex 2 (SA-2), 515 22nd Street, NW, Washington, D.C. 20522-8100, or faxed to (202) 261-8571. Appeals must be postmarked within 90 calendar days of the date of this initial agency decision letter. Please include a copy of this letter with your written appeal and clearly state why you disagree with the determinations set forth in this response.

Additionally, if you are not satisfied with DOS's determination in response to your request, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration (NARA) to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email address: ogis@nara.gov; telephone: (202) 741-5770; toll free number: 1-877-684-6448; facsimile: (202) 741-5769.

Sincerely,

for      Brenda Grewe, Deputy Director
Office of Domestic Operations
Directorate for Visa Services

Enclosure:
As stated

# EXHIBIT 5

# - Fax Transmission

| **To:** | State FOIA fax | **From:** | Kel McClanahan, Esq. |
|---|---|---|---|
| **Fax:** | 12022618579 | **Date:** | 11/9/2018 3:45:45 PM |
| **RE:** | FOIA Appeal - Req. No. F-2014-09926 | **Pages:** | 2 |

### Comments:

Please also add Ivan Jimenez and Karina Perez to this request/appeal as co-requesters. I have attached an authorization form. On behalf of my clients, I appeal State's final determination regarding this request. We appeal both the adequacy of State's search and all withholdings. Please note that in the Southern District of Florida, where Mr. Jimenez resides, it has been previously held that Section 222(f) of the Immigration and Nationality Act "precludes from disclosure documents related to the issuance or refusal of visas, but does not apply to visa revocations." Mantilla v. Dep't of State, No. 12-21109, 2012 U.S. Dist. LEXIS 136152, at *11-12 (S.D. Fla. Sept. 24, 2012), recons. denied 2013 U.S. Dist. LEXIS 13917 (Feb. 1, 2013). Given that any judicial review of your response will take place in the Southern District of Florida (since Mr. Munoz and Ms. Perez do not reside in the United States), and that this holding is not unique or a fluke, see also El Badrawi v. DHS, 583 F. Supp. 2d 285, 312 (D. Conn. 2008), this by itself is grounds to reverse the withholdings. Please email all future correspondence to me at Kel@NationalSecurityLaw.org or mail it on a CD to the address below my signature. Thank you, Kel McClanahan National Security Counselors 4702 Levada Terrace Rockville, MD 20853

# EXHIBIT 6



**United States Department of State**

*Washington, D.C. 20520*

December 20, 2018

Case No. F-2014-09926
Segment: VO

Kel McClanahan
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. McClanahan:

This is to inform you that the Chairman of the Department's Appeals Review Panel has received your letter of November 9, 2018, appealing the above Freedom of Information case.

Should you have any questions concerning the status of your appeal, please write to:

The Appeals Officer
A/GIS/IPS/PP/LA
SA-2, Room 8100
U.S. Department of State
Washington, DC  20522-8100

Sincerely,

Lori Hartmann
Appeals Officer
Office of Information Programs
  and Services

EXHIBIT 7



United States Department of State

*Washington, D.C.   20520*

June 26, 2019

Kel McClanahan, Esq.
4702 Levada Terrace
Rockville, MD  20853

Re:  Freedom of Information Act Request No. F-2014-09926

Dear Mr. McClanahan:

This is to inform you that action on the above administrative appeal has been
overtaken by the ongoing litigation of this matter in federal court.

We have consequently closed your administrative appeal in this office.
No further appeal action is now pending in regard to Freedom of
Information Act request F-2014-09926.

Sincerely,

Lori Hartmann
Appeals Officer
Office of Information Programs
and Services

# EXHIBIT 8



**United States Department of State**

*Washington, D.C.  20520*

June 26, 2020

Case No. F-2014-09926

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. Munoz:

I refer you to our letter dated October 18, 2018, regarding your request for material related to visa records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.

Visa records are confidential under section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  The Department interprets the law to permit us to disclose certain visa-related records, such as a visa application or immigrant visa petition, to the person who provided the record to, or has already received the record from, the Department of State or other government agency.  The Department previously withheld records protected from release by this statute pursuant to Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3).  Upon further review, the Department has determined that material within these records is further exempt from disclosure pursuant to FOIA Exemptions 5, 6, and 7, 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

The Department previously released 14 documents in full and 4 in part, as these documents originated from or were sent to individuals who provided written authorizations and release would therefore not breach confidentiality.  The Department withheld information in the four documents released in part pursuant to FOIA Exemption 3, 5 U.S.C. § 552.  Upon further review, the Department has determined that information withheld in these documents is further exempt pursuant to FOIA Exemptions 6 and 7, 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).

If you have any questions, your attorney may contact Assistant United States Attorney Carlos Raurell at (305) 961-9243 or Carlos.Raurell@usdoj.gov.  Please refer to the case number, F-2014-09926, and the civil action number, 19-cv-21546, in all correspondence regarding this case.

2

Sincerely,

Susan C. Weetman
Deputy Director
Office of Information Programs and Services

# EXHIBIT 9

X REF. M-2011-25886

November 6, 2106

Sirs
USDOS
A/GIS/IPS/RC  SA-2   Room 8100
Washington, DC 20522-8100

**Re:  Freedom of Information Request FOIA**

Dear Coordinator:

The undersigned, Miguel Angel de Jesus Vasquez Escoto, Dominican, Passport ███████
born in ██████ Dominican Republic, the ████████ US Address EPS X 21060, 8260 NW 14th
Street, Doral, Florida, 33191 is hereby requesting through his representative, Attorney Karina A.
Perez Rojas the following information:

**Records regarding alleged criminal activities that have led to his visa revocation that took
place in Santo Domingo, Dominican Republic in the year 2002.  His visa was revoked by the
US Consulate in Santo Domingo.**

       **Subject's full name: Miguel Angel de Jesus Vasquez Escoto**
           **Type of Visa:**
           **Visa No.**
           **Visa issued:**
           **Passport No.:**
           **Date of Birth:**
           **Control Number:**

**The records we are trying to locate are specific records that have led the US Department of
State to assume that Mr. Vasquez is ineligible under INA 212 6E (human trafficking).**

We are willing to provide payment not exceeding US$75.00.  In case that the costs for searching
and or copying these records exceed that amount, please advise us before processing.  Please
provide information necessary for an appeal if you deny this request.  Please send your response to
the following address:

           EPS X 21060
           8260 NW 14th Street
           Doral Florida 33191

In addition, please be advised that Mr. Vasquez is requesting that you answer this request in
20 working days.

This request is made through my representative, Dra. Karina A. Perez, and I authorize her
under the laws of the United States of America and under oath, to request and receive this
information.

DEC - 3 2019

Please contact us if you have any questions regarding this request at 829 764 5785, email **perezlegalkarina@gmail.com**.   The undersigned, Miguel Angel de Jesus Vasquez Escoto, is hereby authorizing Dra. Karina A. Perez, to request and receive this information on my behalf, and I make this authorization under oath and under the laws of the United States of America.

**This request in made under oath, I hereby swear and confirm that I am Miguel Angel de Jesus Vasquez Escoto, the person entitled to this records.  This request is made through my representative, Karina Perez Rojas, and therefore I authorize her to receive all/any information regarding this request.  I, Miguel Angel de Jesus Vasquez Escoto, declare and certify under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.**

Karina Perez Rojas
Attorney

Attachments: Revoked Visa
                    DOS Refusal Entry in US Visit

Sincerely,

Miguel A. De Jesus Vasquez Escoto
Owner of Records

# EXHIBIT 10



United States Department of State

*Washington, D.C. 20520*

**DEC 2 1 2015**

Dear Requester,

RE: _Visa revocation records for Miguel Angel de Jesus Vasquez Escoto_

This is in response to your request dated _Nov. 6_____. We have assigned Case
Control Number _F-2015-16891_____ and will begin the processing of your request
based upon the information provided in your communication.

☐ You have submitted proper third party authorization for all parties associated with
your request. Your request will be processed accordingly, and you will receive the
greatest possible access to records.

☒ You have **not** submitted proper third party authorization for all parties associated
with your request. Your request will be processed, but release of records will be
severely limited to protect the privacy of the subject individuals. If you submit
proper third party authorization within 30 days of the date of this letter (as described
in the enclosed insert), your request will be processed accordingly.

The cut-off date is the date the search is initiated unless you have provided a specific
timeframe.

Unusual circumstances (including the number and location of Department components
involved in responding to your request, the volume of requested records, etc.) may arise
that would require additional time to process your request.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you have any questions, you may call our FOIA Requester Service Center at
(202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case
Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*
*ATTN: A/GIS/IPS/RL/RC*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

**Fees:** The Freedom of Information Act (FOIA) provides that agencies may assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted. You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified. **Please do not send payment in advance. If there are fees incurred in the processing of your request, you will be notified of the amount owed in separate correspondence.**

✓ You have stated your willingness to pay the fees incurred in the processing of this request up to $ _75.00_ .

____ Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

____ **Commercial Use Requesters** – Charges may be assessed that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

____ **Educational Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____ **Non-commercial Scientific Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____ **Representatives of the News Media** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

✓ **All Other Requesters** – Charges may be assessed that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

____ You have indicated your inclusion in a category different than the one indicated above. Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

**Personal Verification:** For records concerning yourself, the Department of State requires that your request be dated and signed, and that your signature either be notarized or contain an under penalty of perjury statement (22 C.F.R. 171.32(b)). Please note that your request may be forwarded to us by U.S. mail or by fax.

If using a notary, your request should bear your **signature and the signature and seal of the notary**, and be dated within six months of the date of the request.

In lieu of notarization, you may make the following statement: "I declare, certify, verify or state that, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct." Such a statement must be forwarded to us **bearing your signature**, and be dated within six months of the date of the request.

Or complete a Certification of Identity Form DS-4240.

Please note, the authorization, and your request for information from the State Department, **should not be submitted on Department of Homeland Security (such as a G-28 or G-639) forms, or a form from any other agency,** but rather on your letterhead or plain bond. Please be advised that these forms do not authorize the State Department to release privacy-protected information, rather they authorize the Department of Homeland Security to release privacy-protected information.

Fax to: 202-261-8579



U.S. Department of State

F.2015-16891

## CERTIFICATION OF IDENTITY

| 1. Full Name of Requester [1] (*Last, First, MI*) | 2. Date of Birth (*mm-dd-yyyy*) |
|---|---|
| 3. Full Name of Subject of Records | 4. Citizenship Status [2] |
| 5. Current Address | 6. Place of Birth |

### Third Party Authorization
Complete this section if you are authorizing release of your records to another person.

I, _____ , pursuant to 5 U.S.C. Section 552a(b),

authorize the U.S. Department of State to release any and all information relating to me to

Name of Third Party _____

Address of Third Party _____

Type of Third Party (check one):  ☐ Parent  ☐ Custodial Guardian  ☐ Legal Representation  ☐ Other _____

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3] _____  Date (*mm-dd-yyyy*) _____

### PRIVACY ACT STATEMENT

**AUTHORITIES:** The information is sought pursuant to 22 CFR Section 171; 5 U.S.C. Section 552a (the Privacy Act of 1974); 5 U.S.C 552 (Freedom of Information Act).

**PURPOSE:** The information solicited on this form will be used to identify the individuals submitting requests by mail under the FOIA and Privacy Act of 1974, 5 U.S.C. Section 552a. This solicitation is to ensure that the records of individuals who are the subject of U.S. Department of State records are not wrongfully disclosed by the Department. The information furnished may also be used to provide third party authorization.

**ROUTINE USES:** The information on this form will only be used to certify identification and will not be shared with other offices or agencies. More information on the Routine Uses for the system can be found in the System of Records Notice State-35, Information Access Program Records.

**DISCLOSURE:** Providing this information is voluntary. Failure to provide the information requested on this form may result in less information being disclosed in a FOIA or Privacy Act request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

---

[1] Name of individual who is the subject of the record(s) sought.
[2] Individuals submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
[3] Name of individual who is the subject of the record(s) sought.

DS-4240
05-2013

# EXHIBIT 11

**United States Department of State**

*Washington, D.C. 20520*

Karina Perez
EPS X 21060
8260 NW 14th Street          October 4, 2016
Doral, FL 33191
perezlegalkarina@gmail.com       Case Control Number: F-2015-16891
                  Subject of Request: Miguel Angel de Jesus Vasquez Escoto

Dear Karina Perez:

Thank you for your request under the Freedom of Information Act.  As your request relates to visa matters, the Visa Office of the State Department has searched its records, located, and reviewed 413 document(s), totaling 658 page(s), relevant to your request.

The Freedom of Information Act generally provides for public access to government records. It specifically exempts from disclosure, however, those records which are otherwise specifically protected from release by statute (5 U.S.C. §552(b)(3)).  Section 222(f) of the Immigration and Nationality Act (8 U.S.C. §1202(f)), is such a statute.  8 U.S.C. §1202(f) provides in pertinent part that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas…shall be considered confidential…".

In accordance, with the decision in Medina-Hincapie v. Department of State, et.al., 700 F.2.d 737 (DC Cir. 1983), we are permitted to release to you 235 document(s) in full and 16 in part, as these documents originated with the applicant or someone acting on the applicant's behalf, and release to you would therefore not breach confidentiality.

This decision may be appealed to the Chairman of the Appeals Review Panel of the Department pursuant to Section 171.52 Title 22 of the Code of Federal Regulations.  For your information, a copy of this regulation is enclosed.

We have now completed the processing of your case.  If you have any questions you may write to the Office of Information Programs and Services, SA-2, Department of State, Washington DC 20522-8100, or contact the Office of Information Programs and Services by telephone at (202) 261-8484.  Please be sure to refer to the case number shown above in all correspondence about this case.

Sincerely,


for    Chloe Dybdahl, Chief
       Advisory Opinions Division
       Directorate for Visa Services

Enclosure:
As stated

# EXHIBIT 12

C06482285  09:33 AM PST  TO:12022618579  FROM:2406812189  Page: 2

*F- 2017- 17779*

# NATIONAL SECURITY COUNSELORS

4702 LEVADA TERRACE
ROCKVILLE, MD 20853

⸺

TELEPHONE: (301) 728-5908
FACSIMILE: (240) 681-2189

KEL MCCLANAHAN, ESQ., EXECUTIVE DIRECTOR (admitted in NY, DC)
EMAIL: KEL@NATIONALSECURITYLAW.ORG

BRADLEY P. MOSS, ESQ., DEPUTY EXECUTIVE DIRECTOR (admitted in IL, DC)
EMAIL: BRAD@NATIONALSECURITYLAW.ORG

18 December 2017

Department of State
Office of Information Programs and Services
A/GIS/IPS/RL
SA-2, Suite 8100
Washington, DC 20522-0208

Re:     FOIA Request – Miguel Vasquez visa revocation

To Whom It May Concern:

       This is a request on behalf of my clients Ivan Jimenez, Miguel Vasquez, and Karina Perez under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for copies of **all records, including emails, pertaining to the revocation of the visa previously held by Mr. Vasquez.** This explicitly includes all information relied upon by the Department of State ("State") in making the determination to revoke Mr. Vasquez' visa, as well as all information discussing the revocation itself.

       I have attached a Certification of Identity signed by Mr. Vasquez authorizing State to release this information to my clients and myself.

       Please note that in the Southern District of Florida, where Mr. Jimenez resides, it has been previously held that Section 222(f) of the Immigration and Nationality Act, upon which State regularly relies in similar situations as this, "precludes from disclosure documents related to the issuance or refusal of visas, *but does not apply to visa revocations.*" *Mantilla v. Dep't of State*, No. 12-21109, 2012 U.S. Dist. LEXIS 136152, at *11-12 (S.D. Fla. Sept. 24, 2012) (emphasis added), *recons. denied* 2013 U.S. Dist. LEXIS 13917 (Feb. 1, 2013). Given that any judicial review of State's response will take place in the Southern District of Florida (since Mr. Vasquez and Ms. Perez do not reside in the United States), and that this holding is not unique or a fluke, *see also El Badrawi v. DHS*, 583 F. Supp. 2d 285, 312 (D. Conn. 2008), we accordingly anticipate that State will not waste any time arguing that these records about a visa *revocation* can be withheld under Exemption (b)(3).

       Since this is a first-party request for a small number of easily locatable records, my clients do not anticipate being assessed any fees. Please provide all responsive records in electronic format.

Thank you for your prompt attention to this request. Your cooperation in this matter would be appreciated.  If you wish to discuss this request, please do not hesitate to contact me.

Sincerely,

Kel McClanahan

# - Fax Transmission

**To:**  State FOIA fax                **From:**  Kel McClanahan

**Fax:**  12022618579                 **Date:**  12/16/2017

**RE:**  New FOIA request             **Pages:**  4

---

**Comments:**

Please find attached a new FOIA request filed on behalf of my clients
Ivan Jimenez, Miguel Vasquez, and Karina Perez.

----

This electronic mail (email) transmission is meant solely for the
person(s) to whom it is addressed. It contains confidential information
that may also be legally privileged. Any copying, dissemination or
distribution of the contents of this email by anyone other than the
addressee or his or her agent for such purposes is strictly prohibited.
If you have received this email in error, please notify me immediately
by telephone or email and purge the original and all copies thereof.
Thank you.

Kel McClanahan, Esq.
Executive Director
National Security Counselors

"As a general rule, the most successful man in life is the man who has
the best information."
Benjamin Disraeli, 1880

"Quis custodiet ipsos custodes?" ("Who will watch the watchers?")
Juvenal, Satire VI

# EXHIBIT 13



United States Department of State

*Washington, D.C. 20520*

**DEC 2 7 2017**

Dear Requester:

RE: Visa revocation records regarding Miguel/Angel/ de Jesus Vazquez Escoto

This is in response to your request dated __12/18/17__, which was received on
__12/18/17__. We have assigned Case Control Number __F-2017-17779__ to
your request.

Based on our review of your correspondence, we have determined that we cannot process your request for
the following reason(s):

X____ You have not reasonably described the records you seek in a way that someone *details*
familiar with Department records and programs could locate them. *visa details*

____ You have not provided identifying information (such as your date and/or place of
birth, or the date and/or place of birth for all parties associated with your request;
citizenship status for all parties associated with your request).

____ You have not provided proof of your identity (see attached information sheet pertaining to
certification of identity).

____ Some or all of the records you have requested do not appear to be State Department
records (other agency information may be enclosed).

____ The records you seek are in the public domain.

____ Your request is not dated.

____ You have submitted your identifying information on forms that were not issued by
the State Department, which we do not accept.

____ You have not agreed to pay the fees associated with the processing of your request.

____ Your request is not a FOIA Request.

____ Your request was not submitted in English.

Accordingly, your request is invalid and your case has been closed.

____ Please see the enclosed information sheet pertaining to access to third party information.

____ Please see the enclosed information sheet pertaining to custodial verification.

Should you want to contact us, you may call our FOIA Requester Service Center on
(202) 261-8484 or send an email to FOIAstatus@state.gov. If you want information concerning how to
file a request, please refer to the Information Access Guide which is available at www.foia.state.gov.
Please refer to the Case Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*                    *Inquiries:*
*U.S. Department of State, SA-2*                           Phone: 1-202-261-8484
*Washington, DC 20522-8100*                                 FAX: 1-202-261-8579
*Website: www.foia.state.gov*                     E-mail: FOIAStatus@state.gov

The Department of State is responsible for formulating and executing U.S. foreign policy and primarily maintains records dealing with U.S. foreign relations. The Department also maintains records of applications from U.S. citizens for U.S. passports and visa requests from non-citizens to enter the U.S., records on consular assistance provided to U.S. citizens abroad, and records of Department employees.

Based on our review of your correspondence, we have determined that we cannot process your request because you have not reasonably described the records you seek in a way that someone familiar with Department records and programs could locate them. As the Department of State consists of hundreds of offices and overseas posts, with many different filing systems, your request should be specific, detailed, and include as much of the following as might be relevant:

- ☒ Please specify or narrow the time frame of your request;
- ☐ Please narrow the scope of your request;
- ☐ Type of record, subject matter, countries and/or organizations involved;
- ☐ Circumstances which lead you to believe the records exist;
- ☐ Full description of incidents, meetings, events, persons involved, etc., pertaining to the documents requested;
- ☐ If persons are involved, are they public figures or deceased individuals.
- ☐ Other -

## Documents about a Deceased Person

For deceased individuals, unless the death has been widely reported, please provide proof of death, e.g., a newspaper obituary or a copy of a death certificate, or advise us that none will be forthcoming.

## State.gov Email Records

For email records to or from state.gov email accounts, please identify the specific office/offices, or post/posts that may have responsive records, or identify a specific individual/individuals employed by the Department of State who may have sent or received responsive emails. In addition, please identify a specific subject or subjects for the email records you are requesting.

For visa records, provide the location of the U.S. Foreign Service post abroad where the application was made; the type of visa (immigrant or non-immigrant); whether granted or denied; the date of issuance or denial; and case number (for immigrant visa only).  Please include any additional information which you believe might be helpful to locate the documents you are seeking.

Immigrant Visa Petitions:  The applicant, the applicant's attorney, or other designated representative of record may request copies of the following records directly from the National Visa Center (NVC), and **need not file a FOIA request:**

   Correspondence previously sent or given to the applicant by a post or NVC;
   Civil documents presented by the applicant, such as birth, death, and divorce
   certificates; and
   Visa applications and any other documents submitted by the applicant in the form
   in which they were submitted.

Requests for these items may be sent to:

   National Visa Center
   Attention:  Written Correspondence
   32 Rochester Avenue
   Portsmouth, NH  03801-2909

The request should include the name and address of the requesting party and his/her relation to the applicant, name of petitioner and beneficiary, the case number, and the documents being requested.

Limitations on Releasability:  Please note, the FOIA exempts from disclosure those agency records that are otherwise protected from release by federal statutes other than the FOIA (5 U.S.C. § 552(b)(3)).  One such statute is Section 222(f) of the Immigration and Nationality Act (8 U.S.C. § 1202(f)), which renders confidential those records of the Department of State pertaining to the issuance or refusal of visas or permits to enter the United States.  As a result, you should be aware that State Department visa records are generally exempt from disclosure under the (b)(3) exemption of the FOIA.  This is the case regardless of whether the requester is a third party or the visa applicant himself/herself, and regardless of whether the visa applicant has authorized the FOIA request or is no longer living.

Although documents that were submitted by or sent to the visa applicant or his/her representative in the course of processing the visa application may be releasable to the applicant, internal records generated by the Government in the course of processing the visa application generally would not be releasable.

# EXHIBIT 14

**UNCLASSIFIED**
**Official - Transitory**

## FOIA Status

| | |
|---|---|
| **From:** | FOIA Status |
| **Sent:** | Monday, January 29, 2018 8:37 AM |
| **To:** | 'Kel McClanahan, Esq.' |
| **Subject:** | RE: Req. F-2017-17779 |

Dear Kel McClanahan, Esq.,

Please reference your new request number F-2018-00322 in future correspondence.
Your FOIA request is pending processing.  Please note that the Department processes FOIA and Privacy Act requests on a first-in, first-out basis, and currently has a backlog of approximately 10,800 cases.  As a result, there could be delays in processing your request.

For your information, the Department of State has collection of records on its website and makes monthly postings of records previously released in response to FOIA requests. You may search the Department's website at www.foia.state.gov for records that may be responsive to your request.

If you have any questions, please contact the FOIA Requester Service Center (FRSC) at (202) 261-8484, or fax us at (202) 261-8579 or send an e-mail to foiastatus@state.gov.

Regards,

U.S. Department of State
FOIA Requester Service Center
(202) 261-8484

**Official - Transitory**
**UNCLASSIFIED**

**From:** Kel McClanahan, Esq. [mailto:kel@nationalsecuritylaw.org]
**Sent:** Saturday, January 20, 2018 4:14 PM
**To:** FOIA Status <FOIAStatus@state.gov>
**Subject:** Re: Req. F-2017-17779

Please confirm that you are still processing it in your queue according to the submission date of 12/18/17.  If you are not please advise me so that I may file a formal appeal of the 12/27/17 denial, since that request was improperly closed.

On 1/19/2018 1:40 PM, FOIA Status wrote:

Mr. McClanahan's new request number is F-2018-00322.  Use this number going forward.

Thank you

**Floyd, Shaunita N**              **UNCLASSIFIED**              **1**
                                   **Official - Transitory**

# EXHIBIT 15

**United States Department of State**

*Washington, D.C. 20520*

Karina A. Perez Rojas, Esq.                           April 12, 2018
EPS X 21060
8260 NW 14TH 8 Street
Doral, FL 33191                                       Case Control Number: F-2018-00322
                                                      Subject of Request: Miguel Angel de Jesus
                                                      Vasquez Escoto

Dear Ms. Perez Rojas:

     Thank you for your request under the Freedom of Information Act.  As your request relates to visa matters, the Visa Office of the State Department has searched its records, located, and reviewed nine documents, totaling 19 pages, relevant to your request.

     The Freedom of Information Act generally provides for public access to government records.  It specifically exempts from disclosure, however, those records which are otherwise specifically protected from release by statute (5 U.S.C. §552(b)(3)).  Section 222(f) of the Immigration and Nationality Act (8 U.S.C. §1202(f)), is such a statute.  8 U.S.C. §1202(f) provides in pertinent part that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas…shall be considered confidential…"

     However, in accordance with the decision in Medina-Hincapie v. Department of State, et.al., 700 F2.d 737 (DC Cir. 1983), we are permitted to release only those documents which were submitted or received by the applicant/requestor or others who have provided written authorizations for release of their documents. Thus, we are releasing to you two documents in full, as these documents originated from or were sent to individuals who provided written authorizations and release would therefore not breach confidentiality.

     This decision may be appealed to the Appeals Officer of the Appeals Review Panel of the Department pursuant to Section 171.13 Title 22 of the Code of Federal Regulations.  For your information, a copy of this regulation is enclosed.

     The Department has now completed the processing of your request. If you have any questions you may write to the Office of Information Programs and Services, SA-2, Department of State, Washington DC 20522-8100, or contact the Office of Information Programs and Services by telephone at (202) 261-8484.  Please be sure to refer to the case control number shown above in all correspondence about this case.  Also, you may contact our FOIA Public Liaison via email at FOIAProgram-DL@state.gov or telephone at 202 663-2222 for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

     Sincerely,

     for     Matt McNeil, Acting Chief
               Advisory Opinions Division
               Directorate for Visa Services

Enclosure:
As stated

# EXHIBIT 16



**United States Department of State**

*Washington, D.C.   20520*

September 22, 2020

Case No. F-2018-00322

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. Vasquez:

I refer you to our letter dated December 18, 2017, regarding your request for material related to visa records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.

Visa records are confidential under Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). The Department interprets the law to permit us to disclose certain visa-related records, such as a visa application or immigrant visa petition, to the person who provided the record to, or has already received the record from, the Department of State or other government agency. The Department has located 95 such documents responsive to your request, 73 of which may be released in full and 22 of which may be released in part.

Any information about other visa records responsive to your request, including the quantity of such records, is confidential under Section 222(f) and therefore exempt from release under Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3). The Department has determined that material within these records is further exempt from disclosure pursuant to FOIA Exemptions 6 and 7, 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).

If you have any questions, your attorney may contact Assistant United States Attorney Carlos Raurell at (305) 961-9243 or Carlos.Raurell@usdoj.gov. Please refer to the case number, F-2018-00322, and the civil action number, 19-cv-21546, in all correspondence regarding this case.

Sincerely,

Susan C. Weetman
Deputy Director
Office of Information Programs and Services

Enclosure:  As stated

EXHIBIT 17

F-2018-01563

February 21, 2018

Office of Information, Programs, and Services
Department of State
515 – 22ⁿᵈ Street, NW
SA-2, Room 8100
Washington, D. C. 20522-8100

Dear FOIA OFFICER:

This is a request filed under the Freedom of Information Act/Privacy Act

The undersigned, Guillermo Antonio Sencion Suarez, Dominican passport no. ████
Dominican citizen. ███████████████ domiciled and residing at ███████████
████████████████████ Dominican Republic  hereby declare under oath
and under the laws of the United States that I am Guillermo Antonio Sencion Suarez, the person who
is entitled to the records requested herein.

I AUTHORIZE Ms. Karina A. Perez, Legal Representative, to request and obtain all records related
to this request, as well as my entire records within the United States Department of State. I hereby
certify and authorize Ms. Karina A. Perez to handle this FOIA request and I therefore authorize her,
under penalty of perjury under the laws of the United States of America, to obtain all of my records.

The information requested is as follows:

**Any/all records, entries, notes, emails in your possession and in your system of records inside
the continental United States of America and in your Consular Posts Abroad (specially in the
US Consulate in Santo Domingo) regarding any record, information or allegations of any
illegal/unlawful activity that could have led to subject of record´s visa cancellation/revocation
by the United States Consulate in Santo Domingo, on or about October 24, 2014 (Mr. Sencion
was summoned to the Consulate and had his visa revoked in front of him). Please include a
detailed index of such records will all reasonably segregable information.**

Subject´s full name: Guillermo Antonio Sencion Suarez
DOS Control no.: ████████
Date of Birth: ████████████

**A copy of the cancelled/revoked visa is attached for your convenience.**

We are willing to provide payment not exceeding US$100.00. In case that the costs for searching
and or copying these records exceed that amount, please advise us before processing. Please provide
information necessary for an appeal if you deny this request. Please send your response to the
following address:

EPS X 21060
8260 NW 14ᵗʰ Street
Doral Florida 33191

FEB 2 6 2018

In addition, please be advised that Mr Guillermo Antonio Sencion Suarez is requesting that you answer this request in 20 working days.

This request is made through my representative, Dra. Karina A. Perez, and I authorize her under the laws of the United States of America and under oath, to request and receive this information. I am attaching a Certificate of Identity.

Please contact us if you have any questions regarding this request at 829 764 5785, email **perezlegalkarina@gmail.com**.

This request in made under oath, I hereby swear and confirm that I am Guillermo Antonio Sencion Suarez, the person entitled to this records. This request is made through my representative, Karina Perez Rojas, and therefore I authorize her to receive all/any information regarding this request. I, Guillermo Antonio Sencion Suarez, declare and certify under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Sincerely,

Karina Perez Rojas
Attorney

Guillermo A. Sencion Suarez
Owner of Records

Attachments:    DS-4240 Certificate of Identity
Cancelled/revoked visa
Current Dominican Passport

# EXHIBIT 18



**United States Department of State**

*Washington, D.C. 20520*

**APR 2 4 2018**

Dear Requester,



RE [redacted] visa records regarding Guillermo Antonio Sencion Suarez

This is in response to your request dated 2-21-2018 , which was received on 2-26-2018 . We have assigned Case Control Number F-2018-01563 and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you have any questions, you may call our FOIA Requester Service Center at (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

**Fees:** The Freedom of Information Act (FOIA) provides that agencies may assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted.  You may specify a willingness to pay a greater amount.  If the estimated fees exceed this limit, you will be notified.  **Please do not send payment in advance. If there are fees incurred in the processing of your request, you will be notified of the amount owed in separate correspondence.**

_✓_   You have stated your willingness to pay the fees incurred in the processing of this request up to $ _100.00_ .

_____   Please let us know if you are willing to pay the fees that will be incurred in the processing of your request.  You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

Based upon the information that you have provided, we have placed you in the requester category checked below.  This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171).

_____   **Commercial Use Requesters** – Charges may be assessed that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

_____   **Educational Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_____   **Non-commercial Scientific Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_____   **Representatives of the News Media** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_✓_   **All Other Requesters** – Charges may be assessed that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

_____   You have indicated your inclusion in a category different than the one indicated above. Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

**Visa Records:** For visa records, provide the location of the U.S. Foreign Service post abroad where application was made; the type of visa (immigrant or non-immigrant); whether granted or denied; date of issuance or denial; and case number (for immigrant visa only). Please include any additional information which you believe might be helpful to locate the documents you are seeking.

**For Pending Visa Petitions:** The applicant, the applicant's attorney, or other designated representative of record may request copies of the following records directly from the National Visa Center (NVC), and **need not file a FOIA request:**

(a)    Correspondence previously sent or given to the applicant by a post or NVC;
(b)    Civil documents presented by the applicant, such as birth, death, and divorce certificates; and
(c)    Visa applications and any other documents submitted by the applicant in the form in which they were submitted.

Requests for these items may be sent to:

> National Visa Center
> Attention: Written Correspondence
> 32 Rochester Avenue
> Portsmouth, NH  03801-2909

The request should include the name and address of the requesting party and his/her relation to the applicant, name of petitioner and beneficiary, the case number, and the documents being requested.

**Limitations on Releasability:** Please note, the FOIA exempts from disclosure those agency records that are otherwise protected from release by federal statutes other than the FOIA (5 U.S.C. § 552(b)(3)). One such statute is Section 222(f) of the Immigration and Nationality Act (8 U.S.C. § 1202(f)), which renders confidential those records of the Department of State pertaining to the issuance or refusal of visas or permits to enter the United States. As a result, you should be aware that State Department visa records are generally exempt from disclosure under the (b)(3) exemption of the FOIA. This is the case regardless of whether the requester is a third party or the visa applicant himself/herself, and regardless of whether the visa applicant has authorized the FOIA request or is no longer living.

Although documents that were submitted by or sent to the visa applicant or his/her representative in the course of processing the visa application may be releasable to the applicant, internal records generated by the Government in the course of processing the visa application generally would not be releasable.

# EXHIBIT 19

**United States Department of State**

*Washington, D.C. 20520*

Karina A. Perez Rojas                                    May 3, 2018
EPS X 21060
8260 NW 14th St.
Doral FL. 33191                                          Case Control Number: F-2018-01563
                                                         Subject of Request: Guillermo Antonio Sencion Suarez

Dear Ms. Perez Rojas :

Thank you for your request under the Freedom of Information Act. As your request relates to visa matters, the Visa Office of the State Department has searched its records, located, and reviewed 64 documents, totaling 216 pages, relevant to your request.

The Freedom of Information Act generally provides for public access to government records. It specifically exempts from disclosure, however, those records which are otherwise specifically protected from release by statute (5 U.S.C. §552(b)(3)). Section 222(f) of the Immigration and Nationality Act (8 U.S.C. §1202(f)), is such a statute. 8 U.S.C. §1202(f) provides in pertinent part that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas…shall be considered confidential…"

However, in accordance with the decision in Medina-Hincapie v. Department of State, et.al., 700 F2.d 737 (DC Cir. 1983), we are permitted to release only those documents which were submitted or received by the applicant/requestor or others who have provided written authorizations for release of their documents. Thus, we are releasing to you 15 documents in full and four documents in part, as these documents originated from or was sent to individuals who provided written authorizations and release would therefore not breach confidentiality.

You may contact our FOIA Requester Service Center or our FOIA Public Liaison for any further assistance and to discuss any aspect of your request via email at Foiastatus@state.gov or telephone at (202) 261-8484. Please be sure to refer to the case control number shown above in all correspondence about this case.

If you are not satisfied with DOS's determination in response to your FOIA request, you may administratively appeal by writing to:  Appeals Officer, Appeals Review Panel, Office of Information Programs and Services (IPS), U.S. Department of State, State Annex 2 (SA-2), 515 22nd Street, NW, Washington, D.C. 20522-8100, or faxed to (202) 261-8571. Appeals must be postmarked within 90 calendar days of the date of this initial agency decision letter. Please include a copy of this letter with your written appeal and clearly state why you disagree with the determinations set forth in this response.

Additionally, if you are not satisfied with DOS's determination in response to your request, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration (NARA) to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email address: ogis@nara.gov; telephone: (202) 741-5770; toll free number: 1-877-684-6448; facsimile: (202) 741-5769.

                                         Sincerely,


                              for      Matt McNeil, Chief
                                       Advisory Opinions Division
                                       Directorate for Visa Services

Enclosure:
As stated

# EXHIBIT 20

F-2018-01563

Xref F-2018-01563

# - Fax Transmission

**To:**  State FOIA fax                **From:**  Kel McClanahan

**Fax:**  12022618579                  **Date:**  9/11/2018

**RE:**  New FOIA Request for Guillermo Sencion Suarez  **Pages:**  2

---

**Comments:**

On behalf of my clients Ivan Jimenez, Karina Perez, and Guillermo
Antonio Sencion Suarez, I hereby request an electronic copy of all
records responsive to Mr. Sencion's previous FOIA Req. No F-2018-01563,
with the following exception: You may exclude any records which were
previously released in full in response to that FOIA request.

Please note that in the Southern District of Florida, where Mr. Jimenez
resides, it has been previously held that Section 222(f) of the
Immigration and Nationality Act "precludes from disclosure documents
related to the issuance or refusal of visas, but does not apply to visa
revocations." Mantilla v. Dep't of State, No. 12-21109, 2012 U.S. Dist.
LEXIS 136152, at *11-12 (S.D. Fla. Sept. 24, 2012) (emphasis added),
recons. denied 2013 U.S. Dist. LEXIS 13917 (Feb. 1, 2013). Given that
any judicial review of your response will take place in the Southern
District of Florida (since Mr. Sencion and Ms. Perez do not reside in
the United States), and that this holding is not unique or a fluke, see
also El Badrawi v. DHS, 583 F. Supp. 2d 285, 312 (D. Conn. 2008), we
accordingly anticipate that you will not waste any time arguing that any
responsive information about the revocation of Mr. Sencion's visa can be
withheld under Exemption (b)(3), as you did in your response to his
first request.

Given that this is in part a first party request by a non-commercial
requester, we do not anticipate the assessment of any fees.
Furthermore, since we are requesting electronic records, it is not
reasonable for you to assess any fees to this request. However, if you
decide to assess fees, please provide me with an itemized estimate for
each line item above so we can make an informed decision regarding how
much money we agree to pay.

Please email the responsive records to me at this address or mail them
on a CD to the address below my signature.

Thank you.

EXHIBIT 21



**United States Department of State**

*Washington, D.C.   20520*

FOIA Control Number: F-2018-06912

November 5, 2018

Kel McClanahan
4702 Levada Terrace
Rockville, MD 20853
kel@nationalsecuritylaw.org

Dear Mr. McClanahan,

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated
September 11, 2018, pursuant to FOIA 5 U.S.C. § 552, to the Department of State (DOS), in
which you requested copy of all unreleased records responsive to Guillermo Antonio Sencion
Suarez.

The Department of State, Office of Information Programs and Services (IPS) received your
FOIA request on September 12, 2018. Your FOIA request was assigned the tracking number at
the top of this letter. Please include the tracking number in all future communications concerning
this FOIA request. In addition, we have placed your request in the complex category.

This Office has adopted a first in/first out practice of processing all incoming requests. Your
request has been placed in chronological order based on the date of receipt and will be handled
as quickly as possible. If you have any questions regarding the status of your request or to
discuss any aspect of your request, you may contact our FOIA Requester Service Center or our
FOIA Public Liaison via email at FOIAstatus@state.gov or by telephone at (202) 261-8484.

Sincerely,

*HA/for*

Eric F. Stein, Director
Office of Information Programs and Services

EXHIBIT 22

**United States Department of State**

*Washington, D.C. 20520*

Kel McClanahan, Esq.                                   February 15, 2019
National Security Counselors

E-mail: kel@nationalsecuritylaw.org                    Case Control Number: F-2018-06912
                                                       Subject of Request: Guillermo Antonio Sencion Suarez


Dear Mr. McClanahan:

   Thank you for your request under the Freedom of Information Act. As your request relates to visa matters, the Visa Office of the State Department has searched its records, located, and reviewed 64 documents, totaling 216 pages, relevant to your request.

   The Freedom of Information Act generally provides for public access to government records. It specifically exempts from disclosure, however, those records which are otherwise specifically protected from release by statute (5 U.S.C. §552(b)(3)). Section 222(f) of the Immigration and Nationality Act (8 U.S.C. §1202(f)), is such a statute. 8 U.S.C. §1202(f) provides in pertinent part that "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas…shall be considered confidential…"

   However, in accordance with the decision in Medina-Hincapie v. Department of State, et.al., 700 F2.d 737 (DC Cir. 1983), we are permitted to release only those documents which were submitted or received by the applicant/requestor or others who have provided written authorizations for release of their documents. Thus, we are releasing to you 15 documents in full and four in part, as these documents originated from or were sent to individuals who provided written authorizations and release would therefore not breach confidentiality.

   You may contact our FOIA Requester Service Center or our FOIA Public Liaison for any further assistance and to discuss any aspect of your request via email at Foiastatus@state.gov or telephone at (202) 261-8484. Please be sure to refer to the case control number shown above in all correspondence about this case.

   If you are not satisfied with DOS's determination in response to your FOIA request, you may administratively appeal by writing to: Appeals Officer, Appeals Review Panel, Office of Information Programs and Services (IPS), U.S. Department of State, State Annex 2 (SA-2), 515 22nd Street, NW, Washington, D.C. 20522-8100, or faxed to (202) 261-8571. Appeals must be postmarked within 90 calendar days of the date of this initial agency decision letter. Please include a copy of this letter with your written appeal and clearly state why you disagree with the determinations set forth in this response.

   Additionally, if you are not satisfied with DOS's determination in response to your request, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration (NARA) to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email address: ogis@nara.gov; telephone: (202) 741-5770; toll free number: 1-877-684-6448; facsimile: (202) 741-5769.

                                                       Sincerely,

                                                       *Brenda Grewe*

                                                       Brenda Grewe, Deputy Director
                                                       Office of Domestic Operations
BG: ma                                                 Directorate for Visa Services

Enclosure:
As stated

# EXHIBIT 23

# - Fax Transmission

**To:**  12022618582

**Fax:**  12022618582

**RE:**  Appeal - Req. No. F-2018-06912

**From:**  Kel McClanahan, Esq.

**Date:**  3/11/2019 8:16:50 AM

**Pages:**  1

**Comments:**

On behalf of my clients Ivan Jimenez, Karina Perez, and Guillermo Sencion, I hereby appeal both the adequacy of the agency's search and all withholdings. Specifically with respect to your claim that Medina-Hincapie allows you to invoke Exemption (b)(3) to withhold responsive information, as noted in the initial request letter, any litigation over this request would be brought in the Southern District of Florida, which does not follow that precedent, and in fact explicitly rejects it. Kel McClanahan

EXHIBIT 24



**United States Department of State**

*Washington, D.C. 20520*

March 12, 2019

Case No. F-2018-06912
Segment:  VO

Mr. Kel McClanahan
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. McClanahan:

This is to inform you that the Chairman of the Department's Appeals Review Panel has received your letter of March 11, 2019, appealing the above Freedom of Information case.

Should you have any questions concerning the status of your appeal, please write to:

> The Appeals Officer
> A/GIS/IPS/PP/LA
> SA-2, Room 8100
> U.S. Department of State
> Washington, DC  20522-8100

Sincerely,

Lori Hartmann
Appeals Officer
Office of Information Programs
 and Services

# EXHIBIT 25



United States Department of State

*Washington, D.C.  20520*

June 26, 2019

Kel McClanahan, Esq.
4702 Levada Terrace
Rockville, MD  20853

Re:  Freedom of Information Act Request No. F-2018-06912

Dear Mr. McClanahan:

This is to inform you that action on the above administrative appeal has been
overtaken by the ongoing litigation of this matter in federal court.

We have consequently closed your administrative appeal in this office.
No further appeal action is now pending in regard to Freedom of
Information Act request F-2018-06912.

Sincerely,

Lori Hartmann
Appeals Officer
Office of Information Programs
  and Services

EXHIBIT 26



**United States Department of State**

*Washington, D.C.   20520*

June 26, 2020

Case No. F-2018-06912

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. Sencion:

I refer you to our letter dated February 15, 2019, regarding your request for material related to visa records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.

Visa records are confidential under section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  The Department interprets the law to permit us to disclose certain visa-related records, such as a visa application or immigrant visa petition, to the person who provided the record to, or has already received the record from, the Department of State or other government agency.  The Department previously withheld records protected from release by this statute pursuant to Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3).  Upon further review, the Department has determined that material within these records is further exempt from disclosure pursuant to FOIA Exemptions 5, 6, and 7, 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

The Department previously released 15 documents in full and 4 in part, as these documents originated from or were sent to individuals who provided written authorizations and release would therefore not breach confidentiality.  The Department withheld information in the four documents released in part pursuant to FOIA Exemption 3, 5 U.S.C. § 552.  Upon further review, the Department has determined that information withheld in these documents is further exempt pursuant to FOIA Exemptions 6 and 7, 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).

If you have any questions, your attorney may contact Assistant United States Attorney Carlos Raurell at (305) 961-9243 or Carlos.Raurell@usdoj.gov.  Please refer to the case number, F-2014-09926, and the civil action number, 19-cv-21546, in all correspondence regarding this case.

Sincerely,

Susan C. Weetman
Deputy Director
Office of Information Programs and Services

# EXHIBIT 27

10:52 AM PDT   TO:12022618579   FROM:2406812189   Page: 1

*F-2018-04237*

# - Fax Transmission

| | | | |
|---|---|---|---|
| **To:** | State FOIA fax | **From:** | Kel McClanahan |
| **Fax:** | 12022618579 | **Date:** | 6/3/2018 |
| **RE:** | FOIA Request for Juan Machado Amadis | **Pages:** | 2 |

*xref F-2017-12067*

**Comments:**

On behalf of my clients Ivan Jimenez, Karina Perez, and Juan Luciano Machado Amadis, I hereby request an electronic copy of the following records:

1) all records, including emails, in the U.S. Embassy in Santo Domingo, including but not limited to the Regional Security Office, including any permutations of Mr. Machado Amadis' name (including permutations which lack "Amadis");
2) all records, including emails, in the U.S. Embassy in Santo Domingo, including but not limited to the Regional Security Office, created since 2010 pertaining to Mr. Machado Amadis' business Romaca Industrial SA, a/k/a Romaca SRL (including all records including the email address romaca.cxa@claro.net.do);
3) all records, including emails, pertaining to the revocation of Mr. Machado Amadis' visa (including but not limited to records describing his alleged criminal conduct), regardless of where in the State Department they are located; and
4) all records deemed potentially responsive to FOIA Req. No. F-2016-10536 but later deemed non-responsive to that request.

I have attached an Authorization and Privacy Waiver for your records. It may also assist you to know that Mr. Machado Amadis' previous visa number was 31399406.

Mr. Machado Amadis previously submitted two other FOIA requests, Nos. F-2016-10536 and F-2017-12067, which were the subject of the case Machado Amadis v. DOJ, No. 16-2230 (D.D.C.). Please apply the following rules to your processing of this request:

a) Please exclude any records which were previously released in full in response to FOIA Req. No. F-2016-10536.
b) Please process any records which were withheld in full or in part in response to FOIA Req. No. F-2016-10536.
c) Please perform new searches for records responsive to each of the

# EXHIBIT 28

C06620868



**United States Department of State**

*Washington, D.C.  20520*

August 17, 2018                                                   F-2018-04237

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. McClanahan:

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated
June 3, 2018, pursuant to FOIA 5 U.S.C. § 552, to the Department of State (DOS), in which you
requested all records regarding any permutations of Mr. Machado Amadis' name, his business
Romaca Industrial SA (aka Romaca SRL), his visa revocation, and all records deemed
potentially responsive to FOIA Req. No. F-2016-10536 but later deemed non-responsive to that
request.

The Department of State, Office of Information Programs and Services (IPS) received your
FOIA request on June 4, 2018.  Your FOIA request was assigned the tracking number at the top
of this letter.  Please include the tracking number in all future communications concerning this
FOIA request. In addition, we have placed your request in the complex category.

This Office has adopted a first in/first out practice of processing all incoming requests.  Your
request has been placed in chronological order based on the date of receipt and will be handled
as quickly as possible.  If you have any questions regarding the status of your request or to
discuss any aspect of your request, you may contact our FOIA Requester Service Center or our
FOIA Public Liaison via email at FOIAstatus@state.gov or by telephone at (202) 261-8484.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

EXHIBIT 29



**United States Department of State**

*Washington, D.C.  20520*

September 22, 2020

Case No. F-2018-04237

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

Dear Mr. Amadis:

I refer you to our letter dated June 3, 2018, regarding your request for certain Department of State ("Department") material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.

Visa records are confidential under Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  The Department interprets the law to permit us to disclose certain visa-related records, such as a visa application or immigrant visa petition, to the person who provided the record to, or has already received the record from, the Department of State or other government agency.  The Department has located 37 such documents responsive to your request, 21 of which may be released in full and 16 of which may be released in part.

Any information about other visa records responsive to your request, including the quantity of such records, is confidential under Section 222(f) and therefore exempt from release under Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3).  Consequently, the Department is unable to disclose any further information in response to your request.  The Department has further determined that material within these records is exempt from disclosure pursuant to FOIA Exemptions 6 and 7, 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).

If you have any questions, your attorney may contact Assistant United States Attorney Carlos Raurell at (305) 961-9243 or Carlos.Raurell@usdoj.gov.  Please refer to the case number, F-2018-04237, and the civil action number, 19-cv-21546, in all correspondence regarding this case.

Sincerely,

Susan C. Weetman

Susan C. Weetman
Deputy Director
Office of Information Programs and Services

Enclosure:  As stated

DE 30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21546-CIV-GAYLES

IVAN JIMENEZ, JUAN MACHADO,
JOSE MUNOZ, GUILLERMO SENCION, and
MIGUEL VASQUEZ,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED STATES
DEPARTMENT OF STATE,

      Defendants.

_____/

### DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants, U.S. Department of Homeland Security (on behalf of its components Office of Biometric Information Management ("OBIM") and  U.S. Citizenship and Immigration Services ("USCIS")) and U.S. Department of State, in support of their Motion for Summary Judgment filed separately on this date, file this statement of facts as to which there is not a genuine dispute.

1.  Plaintiffs tendered the following requests to OBIM under the Freedom of Information Act, 5 U.S.C. § 552::

    a.  request dated November 14, 2018 (2019-OBFO-05965), which sought "all information located in the Automated Biometric Identification System ("IDENT"), Arrival Departure Information System ("ADIS"), and other OBIM systems about Mr. Machado";

    b.  a request dated November 14, 2018 (2019-OBFO-05969), which sought "all information located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz"; and

    c.  a request dated March 3, 2018 (2018-OBFO-17760), which sought "[a] complete copy of all the files, records, notes, correspondence, etc. that you have on Guillermo Sencion from January 2000 until present day, including emails and letters."

2. IDENT is the central DHS-wide system for storage and processing of biometric and associated biographic information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions and certain positions of public trust; and associated testing, training, management reporting, planning and analysis, or other administrative uses. Holzer Decl. ¶ 8. (A copy of the Holzer Declaration is attached as Exhibit A to Defendants' Motion for Summary Judgment)

3. ADIS, the other database identified in Plaintiffs' requests, is not owned or maintained by OBIM. Holzer Decl. ¶ 9.

4. ADIS is a system of records maintained by U.S. Customs and Border Protection. *Id*.[1]

5. OBIM does not own or maintain the ADIS system of records, and could not search the same for records responsive to Plaintiffs' request. *Id*.

6. The primary mission of OBIM is to provide biometric match, store, share, and analyze services to other DHS components and mission partners, it does not have any independent need to collect information regarding individuals or conduct inquiries into individuals other than within the IDENT system. *Id*. at ¶ 18.

7. OBIM searched IDENT based on the agency's belief that any responsive records in the agency's possession would be located there. Holzer Decl. ¶¶ 10, 19.

8. Plaintiffs included fingerprint cards with their FOIA requests to OBIM. Holzer Decl. ¶ 11.

9. 10. OBIM routinely receives fingerprint cards as part of FOIA requests. *Id*.

10. In order to properly respond to such requests, OBIM must match the fingerprints on the cards with the individuals' fingerprint identification numbers (FINs). *Id*.

11. OBIM does not, however, have an independent query capability for its IDENT system using fingerprint cards. *Id*. Instead, OBIM runs queries in the Arrest Graphical User Interface for Law Enforcement ("EAGLE") system. *Id*.

12. EAGLE is a part of a DHS shared common database repository. *Id.*

13. Specifically, OBIM scans copies of the fingerprint cards, uploads them into EAGLE, and then uses EAGLE to query IDENT to find the subjects' FINs, if they exist. *Id*.

---

[1] CBP's ADIS system consolidates data from a variety of systems to create a unique person-centric record with complete travel history. Holzer Decl. ¶ 9.

14. It is the practice of OBIM to search for records in IDENT using fingerprint cards where available. *Id.*

15. A search conducted using fingerprint cards will result in the location of any records relating to a subject in IDENT. *Id.*

16. Despite OBIM's searches within IDENT for records regarding the three subject individuals using the fingerprints they submitted, it found records responsive only to the request for records about Plaintiff Muñoz. Holzer Decl. ¶¶ 12, 13, 17.

17. OBIM's search for records relating to Plaintiff Muñoz resulted in the location of eight pages from a United States Visitor and Immigrant Status Indicator Technology (US-VISIT) Secondary Inspection Tool Report relating to him maintained by OBIM. Holzer Decl. ¶ 13.

18. The agency produced to Plaintiffs' counsel the responsive material it located regarding Plaintiff Muñoz, redacted of information exempt from disclosure under FOIA.

19. After Plaintiffs filed this lawsuit, OBIM repeated its searches on July 1, 2019, to ensure that its initial response was accurate. Holzer Decl. ¶ 18.

20. The results for all three searches were the same as those initially communicated to Plaintiffs. *Id.* No additional records were located. *Id.*

21. Plaintiffs submitted the following FOIA requests to USCIS:

   a. a request dated June 3, 2018, (NRC2018089200), which sought "an electronic copy of Mr. Machado Amadis' alien file";

   b. a request dated November 16, 2018 (NRC2018188049), which sought "an electronic copy of Mr. Muñoz' alien file"; and

   c. a request dated June 3, 2018 (NRC2018089201), which sought "an electronic copy of Mr. Sencion Suarez' alien file."

22. In response to the first request (NRC2018089200), the agency searched for and located Mr. Machado Amadis's alien file ("A-File").[2] Eggleston Decl. ¶ 12. A copy

---

[2] The agency did not locate an A-File associated with another Alien Registration Number "A-Number") (019-443-729) identified in the FOIA request.

of the Eggleston Declaration is attached as Exhibit B to Defendants' Motion for Summary Judgment.

23. The agency also searched for records responsive for the second and third requests (NRC2018188049 and NRC2018089201, respectively) for A-Files pertaining to Mr. Muñoz or Mr. Sencion but was unable to locate responsive records. *Id*.

24. An A-File is the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process. Eggleston Decl. ¶ 10.

25. USCIS records and tracks the location of A-Files in its National File Tracking System ("NFTS"). Eggleston Decl. ¶ 11, n.2.

26. Personnel of USCIS's National Records Center ("NRC") determined that any records in USCIS's control that were responsive to Plaintiffs' FOIA requests would be found by searching NFTS. *Id*.

27. NRC staff determined that no other record system was likely to produce responsive documents. *Id*.

28. NRC staff ran computerized database searches in the NFTS database using the information supplied by Plaintiffs with their FOIA request. Eggleston Decl. ¶ 11.

29. NRC staff searched the NFTS for a record of each subject's A-File using the subject's name, date of birth and A-Number. *Id*.

30. NRC Staff located an A-File pertaining to Mr. Machado using the foregoing search methods. *Id*. [3]

31. The agency produced a copy of Mr. Machado's A-File, redacted of information exempt from disclosure under FOIA. Eggleston Decl. ¶ 12.

32. NRC's searches for A-Files pertaining to Messrs. Muñoz and Sencion did not locate any responsive records. Eggleston Decl. ¶¶ 13-14.

33. Plaintiffs submitted the following six FOIA requests to the Department of State:

    a.   a request dated June 4, 2014 (F-2014-09926), by Plaintiff Jose Muñoz, seeking "all records that the Department of State has regarding Jose Roberto Muñoz

---

[3] NRC staff retrieved the A-File pertaining to Mr. Machado Amadis and scanned it into the NRC's FOIA Immigration Records System ("FIRST"). FIRST is a computerized FOIA processing system that allows NRC staff to review records and process FOIA requests electronically.

Moncion that prove that Mr. Muñoz is a money launderer/drug trafficker or any information that proves that he is involved in any illegal/criminal/activities";

b.  a request dated February 21, 2018 (F-2018-01563), by Plaintiff Sencion for "[a]ny/all records, entries, notes, emails in your possession and in your system of records inside the continental United States of America and in your Consular Posts Abroad ([e]specially in the US Consulate in Santo Domingo) regarding any record, information or allegations of any illegal/unlawful activity that could have led to subject of record's visa cancellation/revocation by the United States Consulate in Santo Domingo, on or about October 24, 2014 (Mr. Sencion was summoned to the Consulate and had his visa revoked in front of him. Please include a detailed index of such records wi[th] all reasonably segregable information";

c.  a request dated June 3, 2018 (F-2018-04237), by Plaintiff Machado Amadis, which sought four categories of records pertaining to him, including "any records which were withheld in full or in part in response to a previous FOIA request." Plaintiff specifically requested that State "perform new searches for records responsive to each of the items in this request, since they are broader than his previous requests";

d.  a request dated September 11, 2018 (F-2018-06912), by Jimenez and Sencion for records responsive to request F-2018-01563, excluding records previously released in full to Sencion;

e.  a request dated November 6, 2015 (F-2015-16891), by Vasquez for "[r]ecords regarding alleged criminal activities that have led to his visa revocation that took place in Santo Domingo, Dominican Republic in the year 2002"; and

f.  a request dated December 18, 2017 (F-2017-17779), by Jimenez and Vasquez for "all records, including emails, pertaining to the revocation of the visa previously held by Mr. Vasquez," which was subsequently reassigned case number F-2018-00322.

34.  Although there were a total of six requests, the requests sought records in possession of the State Department regarding four of the five Plaintiffs (Jose Muñoz, Guillermo Sencion, Juan Machado Amadis, and Miguel Vasquez,).

35.  When the Department receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested." Stein Decl. ¶ 35. A copy of the Stein Declaration is attached as Exhibit C to Defendants' Motion for Summary Judgment.

36. This determination is based on the description of the records requested and IPS's familiarity with the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions. *Id*.

37. Based on its knowledge of the responsibilities of the various Department components, together with an evaluation of the subject matter of Plaintiffs' requests, IPS tasked the Directorate of Visa Services in the Bureau of Consular Affairs ("CA/VO" or "VO") with conducting searches for documents responsive to Plaintiffs' FOIA requests. Stein Decl. ¶ 38.

38. VO manages all aspects of visa services for foreign nationals who wish to enter the United States. Stein Decl. ¶ 39. VO interprets and applies immigration laws and regulations and acts as a point of contact for the public. *Id*. VO also serves as a liaison between the Department of State and its embassies and consulates abroad on visa matters. *Id*. VO's primary responsibility is the enforcement of U.S. immigration laws and regulations. *Id*. VO generally maintains records relating to visa applications, among other matters, in a central electronic database called the Consular Consolidated Database[4] ("CCD"). *Id*. VO also maintains the CLASS system and the Non-Immigrant Visa ("NIV") system.[5]

---

[4] [t]he CCD is a system of non-public consolidated databases that holds all of the current and archived data entered by consular officers from U.S. embassies and consulates around the world, including the U.S. Embassy in Santo Domingo, Dominican Republic. This includes, among other information, data regarding the diversity visa program, immigrant visas, non-immigrant visas, the visa revocation system, the admissibility review and information service, and identity verification applications, as well as an interface to the consular lookout and support system. The CCD contains a record of every U.S. visa application made since 1997 with the accompanying adjudication decision concerning an applicant's eligibility for a visa, including any decision to issue, refuse, or revoke a visa. Access to the CCD and its combined applications and databases is password-protected and provides authorized users with real-time access to case-related information. The database is a crucial law enforcement tool, used to administer and enforce U.S. immigration law; to assess an alien's visa eligibility under the Immigration and Nationality Act and other applicable laws; and to prevent and track fraud.
Stein Decl. ¶ 39 n.2.

[5] The NIV system automates and streamlines posts' capabilities for processing and adjudicating applications for standard non-immigrant visas. The system processes applicant, vessel, petition,

39. In addition to VO, IPS tasked the U.S. Embassy in Santo Domingo, Dominican Republic, and the Department of State's Bureau of Diplomatic Security ("DS") with searching for records responsive to Plaintiff Machado Amadis's request, given the scope of that request. Stein Decl. ¶ 38.

40. IPS relied on the knowledge and expertise of the employees in each of these Department components to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized. Stein Decl. ¶ 37.  Likewise, those employees are also in the best position to determine which search terms would yield potentially responsive records, because they are most knowledgeable about the organization of the records systems in use. *Id.*

41. VO employees searched the CCD—which in relevant part, "contains a record of every U.S. visa application made since 1997 with the accompanying adjudication decision concerning an applicant's eligibility for a visa, including any decision to issue, refuse, or revoke a visa"—for each Plaintiff's name, and permutations thereof, and date of birth. These searches were not limited by date. Stein Decl. ¶¶ 39 n.2, 42–45.

42. These searches located more than 18 responsive records for Plaintiff Muñoz, more than 95 responsive records for Plaintiff Vasquez, more than 19 responsive records for Plaintiff Sencion, and more than 32 responsive records for Plaintiff Machado Amadis.

43. The U.S. Embassy in Santo Domingo determined that the only section reasonably likely to maintain responsive records was the Consular Section. Stein Decl. ¶ 46.

44. A Non-Immigrant Visa Chief in the Consular Section, who was knowledgeable of the FOIA request at issue and the Embassy's records system, conducted a search of the Consular Section's email records and shared drive using the search terms "Juan Luciano Machado Amadis," "Juan Machado," and "Juan Amadis." *Id*. The date range of the search was January 1, 2000, through September 2, 2020. *Id*. The search located five documents responsive to the request. *Id*.

---

diplomatic note, and referral data; enables the user to view the results from namechecks; records the decision of the adjudicating officer; and prints the Machine Readable Visa ("MRV"). Stein Decl. ¶ 39 n.3.

45. A FOIA Division Chief in DS, who was knowledgeable of the FOIA request at issue and DS's records systems, conducted a search of the Investigative Management System ("IMS")[6] and DS's current and retired records using the search terms "Juan Luciano Machado Amadis," "Machado Amadis," "Juan Amadis," "Amadis," "Romaca Industrial SA," "Romaca SRL," and "Romaca." Stein Decl. ¶ 47. The search was not limited by date. *Id*. These searches located no responsive records. *Id*.

46. The Department of State's searches for records responsive to Plaintiffs' FOIA requests were reasonably expected to locate the requested records.

47. OBIM's search for records responsive to Mr. Muñoz's FOIA request yielded eight pages from a US-VISIT[7] Secondary Inspection[8] Tool Report. OBIM withheld portions of these pages pursuant to FOIA Exemptions 3, 6, 7(C) and 7(E), 5 U.S.C. § 552 (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E). Holzer Decl. ¶ 13.

48. OBIM withheld a portion of the US-VISIT report that originated with the Department of State, indicating the denial of Plaintiff Muñoz's visa petition. Holzer Decl. ¶ 14.

49. Pursuant to FOIA Exemption 6, OBIM redacted from the US-VISIT Report "terminal ID numbers" associated with DHS personnel involved in various encounters with Plaintiff Muñoz. Holzer Decl. ¶ 15.

---

[6] IMS is the primary criminal and law enforcement database used by DS.  It is an electronic tracking system used by DS to control and document criminal investigations and was launched in January 2007. The information stored in the system covers case background, case allegations, case documented interviews, evidence, surveillance videos/audio tapes, pictures, post records and foreign government records, and related investigative information. There are a number of query fields, with name being the most common.

[7] DHS established the United States Visitor and Immigrant Status Indicator Technology Program in 2003 to verify the identities and travel documents of aliens. Aliens subject to US-VISIT may be required to provide fingerscans, photographs, or other biometric identifiers upon arrival at the United States. Currently, aliens arriving at a United States port of entry with a nonimmigrant visa, or those traveling without a visa as part of the Visa Waiver Program, are subject to US-VISIT requirements with certain limited exceptions. *See* United States Visitor and Immigrant Status Indicator Technology Program (''US–VISIT''), 73 Fed. Reg. 77,473 (Dec. 19, 2008).

[8] Secondary Inspection occurs in instances where a U.S. Customs and Border Protection ("CBP") officer at the port of entry has concerns about an arriving person's travel or the traveler's documents or has other concerns. In Secondary Inspection, a traveler may be interviewed further to determine whether he or she is admissible to the United States. *See* Welcome to the United States: A Guide for International Visitors, https://www.cbp.gov/sites/default/files/documents/WelcomeToTheUS.pdf.

50. The DHS employees associated with the identification numbers redacted from the responsive records are or were staff level employees. Holzer Decl. ¶ 15.

51. OBIM withheld certain internal law enforcement codes and encounter information pursuant to FOIA Exemption 7(E). Holzer Decl. ¶ 16.

52. Disclosure of the internal law enforcement codes and encounter information would reveal law enforcement techniques employed during the course of the enforcement of immigration laws of the United States. Holzer Decl. ¶ 16. Disclosure of this information could undermine DHS's efforts in this regard and could enable members of the public to evade such enforcement. *Id.*

53. In response to Plaintiff Machado Amadis's FOIA request (NRC2018089200), USCIS located and provided his A-File. USCIS withheld from the records certain information pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E),  5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(E).

54. USCIS withheld information in two pages originating from the State Department described as "State Department record of an Advisory Opinion INA 212 (a) (23) for Juan Machado Amadiz." Eggleston Decl. at Ex. AA.

55. The information withheld concerns the issuance or refusal of a permit to enter the United States by the U.S. Department of State. *Id.*

56. USCIS invoked FOIA Exemption 6, 5 U.S.C. § 552(b)(6) to withhold the names and other personal identifying information of third parties contained within an application submitted by Plaintiff Machado Amadis. Eggleston Decl. ¶ 20, Ex. AA.

57. USCIS applied Exemption 7(C) to protect the privacy of individuals identified in records compiled for law enforcement purposes. Eggleston Decl. ¶¶ 23, 24.

58. USCIS applied Exemption 7(C) to withhold the personal identifying information of law enforcement personnel contained within immigration enforcement information in DHS systems. Eggleston Decl. ¶ 20, Ex. AA.

59. USCIS invoked FOIA Exemption 7(E) to protect from disclosure certain law enforcement systems checks and law enforcement database codes. Eggleston Decl. ¶ 27.

60. More specifically, USCIS invoked FOIA Exemption 7(E) to prevent disclosure of the name of a law enforcement agency consulted by USCIS in the course of performing its

immigration and national security law enforcement functions. Eggleston Decl. ¶ 27, Ex. AA.

61. The Department of State invoked FOIA Exemptions 3, 5, 6, 7(C), and 7(E) to withhold information in the responsive records it released to Plaintiffs.

62. All of the records the Department withheld are "visa-related records." Stein Decl. ¶ 49.

63. Pursuant to Exemption 3, 5 U.S.C. § (b)(3), and INA Section 222(f), 8 U.S.C. § 1202(f), the Department withheld information in a number of documents pertaining to the issuance or refusal of visas and information in other documents pertaining to the revocation of visas. *Id.*

64. The Department of State invoked FOIA Exemption 5, 5 U.S.C. § 552(b)(5), to withhold from production certain information under the attorney-client privilege and attorney work product doctrine.  The information withheld reflects confidential communications and advice between Department officials and Department attorneys regarding visa applications. Stein Decl. ¶  63.

65. The Department of State also withheld information from the responsive material that is subject to FOIA's exemptions protecting the privacy of third parties, Exemptions 6 and 7(C).  Specifically, the Department withheld identifying information of law enforcement and consular officers under these Exemptions. Stein Decl. ¶¶  65, 71.

66. Pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), the Department withheld records regarding or resulting from searches of non-public law enforcement databases used by the Department and other authorized law enforcement personnel.  Stein Decl. ¶ 73.  These non-public law enforcement databases serve as repositories for collected national security and criminal investigative information. *Id.*  Access to these databases is restricted; VO officials have access to them in accordance with datashare agreements that restrict further disclosure of the records. *Id.*

Dated:  October 7, 2020
Miami, Florida

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   /s/ Carlos Raurell
Carlos Raurell
Assistant United States Attorney
Florida Bar No. 529893

Carlos.Raurell@usdoj.gov
United States Attorney's Office
99 NE 4th Avenue, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9243
Facsimile: (305) 530-7139
Attorneys for the Defendants


## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2020, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system.

/s/ Carlos Raurell
CARLOS RAURELL
Assistant United States Attorney

DE 44

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

IVAN JIMENEZ, *et al.*,                         *
                                                *
      Plaintiffs,                   *
                                                *
      v.                            *       Civil Action No. 1:19-cv-21546 (DPG)
                                                *
DEPARTMENT OF HOMELAND                          *
SECURITY, *et al.*,                             *
                                                *
      Defendants.                   *
                                                *
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFFS' MOTION FOR STATUS CONFERENCE AND TO STAY BRIEFING

NOW COME Plaintiffs to respectfully request a status conference to resolve a fundamental issue about the scope of the case about which the parties are unable to agree. Plaintiffs also request that the Court stay all briefing until this matter has been resolved.

Plaintiffs have good cause to request this relief. During the course of processing one of Plaintiffs' Freedom of Information Act ("FOIA") requests, twenty-six pages were referred by United States Citizenship and Immigration Services ("USCIS") to Immigration and Customs Enforcement ("ICE"). (Eggleston Decl., Dkt. #29-2, ¶ 12 (filed Oct. 7, 2020).) ICE then processed and released redacted copies of these records. (*Id.*) Under well-established FOIA jurisprudence, these records remain part of this case, and the government must justify ICE's withholdings. *See*, *e.g.*, *Keys v. DHS*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) ("[W]hen an agency receives a FOIA request for agency records in its possession, it must take responsibility for processing the request, even if it determines that the documents originated elsewhere. . . . Because the agency who received the FOIA request—in this case the Secret Service—is the agency ultimately responsible for responding to the request, the agency is not absolved of its

obligations under FOIA when it refers the documents elsewhere.") (internal quotations omitted) (quoting *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983)). However, Defendants argue that the fact that these ICE records—located in a USCIS file—"originated with [ICE] and are, therefore, not agency records subject to [Plaintiff's] FOIA request to USCIS,"[1] which has, simply put, never been the law.

This is a straightforward question of law which will significantly affect the briefing going forward. If, as Defendants suggest, Plaintiffs were merely to include this argument in an opposition brief, the Court would almost certainly decide the question in Plaintiffs' favor and kick off another round of briefing, since it is unlikely that the Court would simply order all of the withheld material to be released solely because Defendants' counsel took this position. Alternatively, Defendants may choose to reverse their position and include a new declaration from an ICE official with their reply, which would then necessitate a sur-reply and possibly even a sur-sur-reply, also prolonging the briefing significantly. Therefore, because of the simplicity of this fundamental question, a status conference is appropriate to resolve the matter.[2]

It is therefore in the interest of judicial economy to stay briefing at this point and hold a status conference to resolve these matters. Plaintiffs maintain that Defendants should reprocess some of the responsive records, perform additional searches, and file at least three new declarations before an opposition would be appropriate. At the very least, a status conference

---

[1] This statement was taken from an email exchange which can be provided to the Court upon request.

[2] Plaintiffs would also like to bring other issues to the Court's attention during the status conference, such as the Department of Homeland Security's ("DHS") failure to refer Plaintiffs' requests for ADIS information to Customs and Border Protection, in express violation of its own regulation 6 C.F.R. § 5.4(c), Defendants' inexplicable failure to include copies of the request correspondence with the Holzer and Eggleston declarations, and a missing footnote in the Eggleston declaration, all of which would properly be resolved before any summary judgment briefing.

would serve to clarify the issues in controversy and potentially even resolve some threshold

matters to ensure that the parties do not become locked in a cycle of renewed motions and

supplemental filings. Plaintiffs' counsel has attempted to resolve these issues with Defendants'

counsel, but Defendants' counsel has refused to modify any of the government's filings.

     Defendants oppose this Motion. A proposed Order accompanies this Motion.

Date:   February 16, 2021

                          Respectfully submitted,

                          /s/ Kelly B. McClanahan
                          Kelly B. McClanahan, Esq.
                          *Pro hac vice*
                          D.C. Bar #984704
                          National Security Counselors
                          4702 Levada Terrace
                          Rockville, MD  20853
                          301-728-5908
                          240-681-2189 fax
                          Kel@NationalSecurityLaw.org

                          /s/ Andrew F. Knopf
                          Andrew F. Knopf, Esq.
                          FL Bar #658871
                          Paul Knopf Bigger
                          840 South Denning Drive
                          Suite 200
                          Winter Park, FL  32789
                          407-622-2111
                          Andrew@PKBLawFirm.com

                          *Counsel for Plaintiffs*

DE 45

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21546-CIV-GAYLES

IVAN JIMENEZ, JUAN MACHADO,
JOSE MUNOZ, GUILLERMO SENCION, and
MIGUEL VASQUEZ,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED STATES
DEPARTMENT OF STATE,

      Defendants.

_____/

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR STATUS CONFERENCE AND TO STAY BRIEFING

Defendants, U.S. Department of Homeland Security (on behalf of its components Office of Biometric Information Management ("OBIM") and  U.S. Citizenship and Immigration Services ("USCIS")) and U.S. Department of State, hereby respond to Plaintiffs' Motion for Status Conference and to Stay Briefing (ECF No. 44).

### ARGUMENT

Despite receiving five extensions of time and having had more than four months to respond to Defendants' Motion for Summary Judgment, Plaintiffs waited until a federal holiday, one day before Plaintiffs' response was due, to contact the undersigned about what Plaintiffs' view as deficiencies in Defendants' Motion, and to propose a stay of briefing. Plaintiffs' Motion asks the Court to order the government to file an additional declaration regarding redactions made by non-party U.S. Immigration and Customs Enforcement (ICE) to 26 pages of records ICE produced to Plaintiffs in June 2020, after those records were referred to ICE by USCIS.  As demonstrated below, Plaintiffs' counsel has severely misrepresented the circumstances and his need for the relief he is seeking.

On the same date as he filed Plaintiffs' Motion to Stay Briefing (February 16, 2021), Plaintiffs' counsel, Kel McClanahan, revealed on Twitter that he already has much of the

information redacted from the ICE documents at issue. A copy of the relevant portion of Plaintiffs' counsel's Twitter feed is attached hereto as Exhibit A.

Exposing what he believes is evidence of government corruption or incompetence, Mr. McClanahan explains to his followers that ICE had previously produced the same 26 pages to him, but with far fewer redactions.   Mr. McClanahan's tweets explain that ICE first produced the records to him in February 2020 and that the records were only "lightly redacted."  Mr. McClanahan adds that he "didn't have any major problem" with the redactions.  Mr. McClanahan then explains, however, that ICE  produced the documents again in June of 2020, but with more redactions.  According to Mr. McClanahan, he intends to use this "wonderful little revelation[]"  to "bludgeon" the government about its redaction decisions. In relevant part, Mr. McClanahan tweeted the following:

> So, I have a client who's trying to get a visa. We filed a request with USCIS for his A-file. We got a response in 2019 with a bunch of pages and a note that said that several pages were referred to ICE. OK, fine, whatever. We then get a release from ICE in February 2020. It's pretty lightly redacted. I don't have any major problems with it.
>
> Then COVID hits and for some reason ICE forgets that they sent this response. They start telling the judge that they're working on the referral. Then in June 2020 they make a release. Same documents. Same referral. Now it is so heavily redacted you can barely tell who it's about. I'd show examples but they've got PII in them.
>
> It's pretty clear what happened. The original referral happened before we filed suit. Nobody bothered to tell ICE that the request was in litigation, so they just processed it like good, conscientious FOIA officers. Then they forgot they did that.
>
> A few months later, they start getting bothered by a DOJ lawyer asking about the referral. They think, "Well, this asshole sued us, so we'll just withhold everything. (b)(5), (b)(6), (b)(7)(E), you name it. He won't be able to read ANYTHING."
>
> Except that they DID reply to me. And now I have the mostly unredacted pages. And they're making all these over-the-top claims about how sensitive all this stuff is, with no idea that I'm going to bludgeon them with the fact that, for example, the super secret law enforcement technique they are protecting is that they asked the FBI (in 1977!) if they had a file on the guy.
>
> To head off the question, no, in no way am I concerned that someone involved in this case will see this. . . .

Kel McClanahan (@NatlSecCnslr), Twitter, https://twitter.com/NatlSecCnslrs (February 16, 2021, 12:43am) (reformatted).

As explained below, Mr. McLanahan himself caused ICE to produce the 26 pages at issue twice by denying he received ICE's first production.  Even though he now admits in his tweets that he "[got] a release from ICE in February 2020," Mr. McClanahan indicated to the undersigned in March of 2020 that he had not received any records from ICE.   Because the coronavirus pandemic had made it difficult to reach ICE's FOIA personnel for information, the undersigned had emailed Mr. McClanahan on March 4, 2020 to ask, "Have you received any response directly from ICE related to the 26 pages referred by USCIS?"  A copy of the undersigned's email exchange with Mr. McClanahan is attached hereto as Exhibit B.  Mr. McClanahan responded, "I haven't received anything from anyone."  Five days later, on March 9, 2020, Mr. McClanahan again wrote to the undersigned to inquire about the status of the records he claimed he had not received.

Based on Mr. McClanahan's representation that he had not received any material from ICE, the undersigned and USCIS personnel followed up with ICE about the referral.   The undersigned advised Mr. McClanahan, "We've reached out to ICE for an update as to the records referred to them and are awaiting a response. . . I hope to have information for an updated status report soon."  Mr. McClanahan never advised the undersigned that he had *already* received the records.

In the weeks and months that followed, Mr. McClanahan participated in the preparation of Joint Status Reports advising the Court that ICE was still processing the records for production – even though Mr. McClanahan had already received the records.  *See* ECF Nos. 18 and 19. The parties' Second Joint Status Report, filed March 27, 2020, advised the Court that

> USCIS and the undersigned counsel have requested that ICE expedite its review
> of the material referred to it. As of this date, ICE has not yet completed
> processing the material referred to it.

ECF No. 18 at 3.

The Parties' Third Joint Status Report, filed June 1, 2020, advised the Court that

> the undersigned counsel for the federal government defendants [had] been unable
> to determine the current status of ICE's work in processing the material referred
> to it. The undersigned will continue in his efforts to obtain and provide the status
> to Plaintiffs' counsel.

ECF No. 19 at 3.

Despite what has now been revealed in his Tweets, Mr. McClanahan insisted on including the

following language in the parties' Third Status Report:

> Plaintiffs ask the Court to order ICE to complete its processing of these records
> and release all releasable information to Plaintiffs no later than July 3, 2020. If
> ICE believes that this deadline is infeasible, Plaintiffs ask[] the Court to order ICE
> to [] propose a detailed release schedule for the responsive records, including
> specific information about the number of records and any factors ICE believes
> will hinder its production. Plaintiffs ask that the Court not accept a blanket
> statement that the coronavirus emergency has caused its delays without further
> specifics about how its production is [a]ffected and what measures it is taking to
> address the matter.

*Id*.

ICE made its second production of the same records in June 2020. As for why it may

have been more heavily redacted than the Agency's February 2020 production, agencies such as

ICE have a number of FOIA analysts and in the event the same set of documents is processed by

two different analysts, there can be differences in processing.  While DHS and its components

make every effort through training and supervision to ensure consistency in processing, it is

inevitable and not surprising that two individuals will come to different conclusions regarding

the application of exemptions to particular pieces of information.  Regardless, Plaintiff did not

alert the undersigned to any issue whatsoever with ICE's production – or even the fact that it had

produced the same pages twice.

The government Defendants moved for summary judgment regarding their responses to

Plaintiffs' twelve FOIA requests on October 7, 2020.  Although Plaintiffs' cross-motion for

summary judgment and response was due on November 13, 2020, Plaintiffs sought, without

opposition, five extensions.   After the last of these, Plaintiffs' response to Defendants' Motion

for Summary Judgment was due on February 16, 2021 – more than four months after Defendants

filed it.   Instead of filing a response, Plaintiffs seek to hold up briefing based on their challenge

to redactions of information they have already been provided.   Defendants respectfully submit

that Plaintiffs are not entitled to the relief they seek.  At best, Plaintiffs are wasting the Court's

time.  At worst, they are perpetrating a fraud upon it.[1]

---

[1] Plaintiffs' Motion, at footnote 2, explains that they would also like to bring to the Court's
attention, "such as the Department of Homeland Security's ("DHS") failure to refer Plaintiffs'

**CONCLUSION**

For the reasons provided above, Plaintiffs' Motion for Status Conference and to Stay Briefing should be denied.

Dated: February 16, 2021                    Respectfully submitted,
Miami, Florida

                                            ARIANA FAJARDO ORSHAN
                                            UNITED STATES ATTORNEY

                                    By:      /s/ Carlos Raurell
                                            Carlos Raurell
                                            Assistant United States Attorney
                                            Florida Bar No. 529893
                                            Carlos.Raurell@usdoj.gov
                                            United States Attorney's Office
                                            99 NE 4th Avenue, Suite 300
                                            Miami, Florida 33132
                                            Telephone: (305) 961-9243
                                            Facsimile: (305) 530-7139
                                            Attorneys for the Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system.

                                             /s/ Carlos Raurell
                                            CARLOS RAURELL
                                            Assistant United States Attorney

---

requests for ADIS information to Customs and Border Protection, . . . Defendants' inexplicable failure to include copies of the request correspondence with the Holzer and Eggleston declarations, and a missing footnote in the Eggleston declaration." These are matters which can and should be addressed in Plaintiffs' briefing on summary judgment – not in a status conference. As for the missing footnote 3 in the Eggleston Declaration, the superscript pointer was a typo and should not have been included. There is no missing footnote.

DE 47

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| IVAN JIMENEZ, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:19-cv-21546 (DPG) |
| | * | |
| DEPARTMENT OF HOMELAND | * | |
| SECURITY, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>PLAINTIFFS' REPLY FOR STATUS CONFERENCE AND TO STAY BRIEFING</u>**

In an attempt to avoid the unpleasant reality that the government has failed to provide evidence required by law to the Court, the Government instead takes issue with the fact that Plaintiffs' undersigned counsel Kel McClanahan discussed the agency's misconduct in admittedly intemperate terms on social media, while drawing unsupported conclusions about his motivations for seeking this status conference. None of Defendants' attempted deflections, however, change the fact that as long as even minor pieces of information remain withheld by Immigration and Customs Enforcement ("ICE"), the burden remains the Government to justify those withholdings, and Defendants' position is squarely precluded by established case law. *Compare McGehee v. CIA*, 697 F.2d 1095, 1109 (D.C. Cir. 1983) ("*[A]ll records in an agency's possession, whether created by the agency itself or by other bodies covered by the Act, constitute 'agency records.'*") (emphasis in original), *with* Ex. A ("Briefly stated, the material from ICE originated with that agency and are, therefore, not agency records subject to your FOIA request to USCIS."). Until Defendants resolve the matters like this (where there is legally no basis for

their position), it would be wasteful to continue with briefing of Defendants' motion for summary judgment.[1]

Regarding Mr. McClanahan's social media posts, he will be more than willing to explain the significance of them—or lack thereof—to the Court in that same status conference, should the Court deem it necessary. Simply put, Defendants' counsel has mischaracterized these posts greatly and is using them to deflect from the legitimate issues of this case, namely, Defendants' consistent withholding of patently non-exempt information and bad faith assertions regarding its withholdings. As noted on social media, Plaintiffs do intend to show that ICE and USCIS have grossly abused the presumption of good faith typically afforded to government FOIA offices, and Plaintiffs are confident that upon viewing the documentary evidence once the record is complete, the Court will agree that what happened in this case is a far cry from a simple difference of opinion between different FOIA officers, as Defendants' counsel intimates. However, all this being said, Mr. McClanahan does apologize to this Court for the intemperate nature of his social media posts, but he maintains that the misconduct he alleged remains a continuing issue.

---

[1] The other purely legal issues identified by Plaintiffs and minimized by Defendants are similarly clear cut. To reiterate: 1) the Department of Homeland Security ("DHS") was required by its own regulation, 6 C.F.R. § 5.4(c), to refer the requests for Arrival & Departure Information System records to Customs and Border Protection, and cannot legally justify refusing to do so; 2) the Government cannot legally meet its burden of production without filing the relevant correspondence regarding the DHS and U.S. Citizenship and Immigration Services ("USCIS") requests as exhibits as it did for the Department of State requests; and 3) even if the orphaned footnote indicator in the Eggleston Declaration is a scrivener's error, a statement to that effect by Defendants' counsel in a brief is not admissible evidence. Each of these issues is both purely legal and easily resolved, making them significantly more amenable to a status conference than formal summary judgment briefing, since they do not involve any factual disputes.

Date: February 17, 2021

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
*Pro hac vice*
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

/s/ Andrew F. Knopf
Andrew F. Knopf, Esq.
FL Bar #658871
Paul Knopf Bigger
840 South Denning Drive
Suite 200
Winter Park, FL 32789
407-622-2111
Andrew@PKBLawFirm.com

*Counsel for Plaintiffs*

3

DE 47-1

Re: Activity in Case 1:19-cv-21546-DPG Jimenez et al v. Department of...

Case 1:19-cv-21546-DPG   Document 47-1   Entered on FLSD Docket 02/17/2021   Page 1 of 1
USCA11 Case: 23-10073   Document: 41-1   Date Filed: 09/25/2023   Page: 206 of 247

**Subject:** Re: Activity in Case 1:19-cv-21546-DPG Jimenez et al v. Department of Homeland Security et al Order on Motion to Amend/Correct

**From:** "Raurell, Carlos (USAFLS)" <Carlos.Raurell@usdoj.gov>

**Date:** Tue, 16 Feb 2021 11:10:42 +0000

**To:** "Kel McClanahan, Esq." <kel@nationalsecuritylaw.org>

We've had many months to identify and handle any such issues.  Briefly stated, the material from ICE originated with that agency and are, therefore, not agency records subject to your FOIA request to USCIS. It processed your request by referring the records to ICE for a direct response by ICE to you.

The government opposes any further modification of the briefing schedule and will respond to your arguments in our Reply. If you need to file something under seal, you can follow my District's local rules for doing so.

Sent from my iPhone



Ex. A

2/16/2021 7:26 PM

DE 54-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

---

IVAN JIMENEZ, JUAN MACHADO,
JOSE MUNOZ, GUILLERMO SENCION, and
MIGUEL VASQUEZ,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED
STATES DEPARTMENT OF STATE,

      Defendants.

Case No. 19-21546-CIV-GAYLES

---

**DECLARATION OF FERNANDO PINEIRO**

**I.   INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

      1.      I am the Acting FOIA Officer of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since July 10, 2019 and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013 to July 9, 2019, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

2.      My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE, including overseeing the receipt and response to FOIA referrals and consultations from other federal agencies.   In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE.   Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

3.      I make this declaration in my official capacity in support of the Government's motion for summary judgment in the above-captioned action.   The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of its business activities, and information provided to me by other ICE employees in the course of my official duties.   The documents attached hereto are kept by ICE in the ordinary course of its business activities.

4.      This declaration describes the process upon which ICE received a 26-page referral from U. S. Citizenship and Immigration Services ("USCIS") in response to Plaintiffs' FOIA request, and the manner in which ICE processed and disclosed the 26-page referral.

5.      Additionally, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration describes the portions of records ICE withheld in response to Plaintiffs' FOIA request and the basis for ICE's withholdings pursuant to the Privacy Act and FOIA Exemptions (b)(5), (b)(6), and (b)(7)(C).   Attached as Exhibit 1 is the *Vaughn* index which completely and accurately describes the material withheld on the pages processed by the ICE

FOIA Office and the bases for the withholdings.

## II.   ICE'S RESPONSE TO THE REQUEST

8.     By letter dated May 28, 2019, USCIS referred 26 pages to U.S. Immigration and Customs Enforcement; the referral was assigned NRC2018089200 by USCIS for its tracking purposes. **A complete and accurate copy of the May 28, 2019 letter is attached as Exhibit 2.**

9.     The ICE FOIA Office received the referral on February 13, 2020, and assigned it 2020-ICFO-22648 for ICE tracking purposes. In a letter to Plaintiffs dated February 18, 2020[1], the ICE FOIA Office issued a final response to Plaintiffs, along with the 26 pages of records, to kel@nationalsecuritylaw.org. As stated in the February 18, 2020 letter, ICE FOIA asserted FOIA Exemptions 3, 5, 6, 7(C), and 7(E). **A complete and accurate copy of the February 18, 2020 letter is attached as Exhibit 3.**

10.     On June 4, 2020, the AUSA in this case, and agency counsel for USCIS, reached out to the ICE FOIA Office about the 26-page referral sent from USCIS to ICE. Having been informed the Plaintiffs had not received a response at all, the ICE FOIA Office assigned the referral a second tracking number, 2020-ICFO-50729, and processed the 26-pages a second time. In a letter to Plaintiffs dated December 30, 2020, the ICE FOIA Office issued a second final response to Plaintiffs, along with the 26 pages of records, to kel@nationalsecuritylaw.org. As stated in the December 30, 2020 letter, ICE FOIA asserted FOIA Exemptions 3, 5, 6, 7(C), and 7(E). **A complete and accurate copy of the December 30, 2020 letter is attached as Exhibit 4.**

11.     Upon litigation review, ICE FOIA determined that the two productions referenced above in paragraphs 9 and 10 were not redacted the same. ICE has a number of FOIA analysts and in the event that the same set of documents is processed by two different analysts, there can

---

[1] The final release letter was dated February 18, 2020. However, the letter was not emailed to the Plaintiffs until April 3, 2020.

be differences in processing.  While ICE FOIA makes every effort through training and supervision to ensure consistency in processing, it is inevitable and not surprising that two individuals will come to different conclusions regarding the application of exemptions to particular pieces of information.  Nonetheless, in order to make consistent the withholdings asserted on the two previous productions, ICE FOIA went through both previous productions and released a third version, which contained the fewest withholdings and released the most information possible.  The third production removed any inconsistencies between the first two productions and is the focus of ICE's *Vaughn* Index for this declaration.  This third production was sent to Plaintiffs at kel@nationalsecuritylaw.org on March 23, 2021.  **A complete and accurate copy of the March 23, 2021 letter is attached as Exhibit 5.**

## III.    ORGANIZATION OF ICE'S *VAUGHN* INDEX

12.    Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* index accompanies this declaration providing a description of each redaction and applicable exemption in the 26 pages that ICE produced to Plaintiffs in response to his FOIA request.  *See* **Exhibit 1.**

13.    The *Vaughn* index is in a table format.  The first row contains the titles of five (5) columns that provide a brief description of the information contained within the corresponding columns below.  The heading titles, from the left to the right side of the page, are: Entry Number, Page Number, Withholding: Full/Partial, Description of Records and Redactions, and Reasons for Redactions, and Exemption(s) Applied to Redactions.

14.    There are nineteen (19) entry numbers.  The second heading, Page Number, refers to the page number from the production, and ranges from 1-26.  The third heading, Full/Partial Withholding, refers to the level of withholdings taken on the documents.  The information below

the third heading, Description of Records and Redactions, and Reasons for Redactions, describes the redacted information and the justification for redaction.  The fourth heading, Exemption(s) Applied to Redactions, describes the exemptions applied to the redactions in the documents.

## IV.    DESCRIPTION OF INFORMATION WITHHELD BY ICE

### FOIA Exemption 5 U.S.C. § 552(b)(5)

15.    Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context.  Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

16.    ICE withheld internal attorney notes under the attorney work-product privilege on page 3.  The purpose of this FOIA Exemption is to protect documents and other memoranda prepared by an attorney in contemplation of litigation.  The withheld information here includes attorney notes, thoughts, questions, plans, preparation, and litigation strategy related to an active immigration case and contemplates future litigation.

### FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

17.    5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

18.    The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of non-citizens, subject to certain exceptions. *See* 8 U.S.C. § 1103.  ICE is the largest investigative arm

of DHS and the second largest investigative agency in the federal government.  Created in 2003

through a merger of the investigative and interior enforcement elements of the U.S. Customs

Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees

and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's

immigration laws, and identifying and eliminating vulnerabilities within the nation's borders.

19.     The ICE ERO directorate oversees programs and conducts operations to identify

and apprehend removable non-citizens, to detain these individuals when necessary, and to remove

illegal non-citizens from the United States. Within ICE, ERO has broad authority and prioritizes

the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national

security, fugitives, recent border entrants, and non-citizens who thwart immigration control. ERO

manages all logistical aspects of the removal process, including domestic transportation, detention,

alternatives to detention programs, bond management, and supervised release. ERO comprises

seven headquarters divisions and 24 Field Offices, and more than 7,600 employees.

20.     The ICE information at issue in this case was compiled by ICE because it relates to

ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S.

individuals who may be illegally present in the United States, including records of interviews,

arrest, booking, detention, removal, and other related investigations.  Therefore, all the ICE records

responsive to Plaintiffs' FOIA request were compiled for law enforcement purposes and meet the

threshold requirement of FOIA Exemption (b)(7).

**FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)**

21.     FOIA Exemption 6 allows the withholding of information found in "personnel and

medical files and similar files, the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(6) ("Exemption 6").  Records that apply to or

describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6.  When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

22.     FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

23.     When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its statutory duties.

24.     Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names and other personally identifiable information ("PII") of third-party individuals and ICE employees.

25.     Such information, if disclosed to the public or to a third-party requester without the permission of the subject of the record, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harass or harm the individual.

26.     Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes.  The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files.  The individuals' privacy interest in the

7

information contained in the record outweighs any minimal public interest in the disclosure of the

information.  Plaintiffs have not articulated a sufficient public interest or public need to justify

release of this information.  The disclosure of this PII serves no public benefit and would not assist

the public in understanding how ICE is carrying out its statutory responsibilities.  Finally, the third

parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

27.     ICE determined that the disclosure of this information would constitute a clearly

unwarranted invasion of personal privacy and thus Exemption 6 applied. In addition, ICE

determined that disclosure of this information, which was compiled for law enforcement purposes,

could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus

Exemption 7(C) applied.

28.     Having determined that the individuals identified in the responsive records have a

cognizable privacy interest in not having their information released, ICE FOIA then balanced the

interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the

public's interest in shedding light on the operations and activities of ICE in the performance of its

statutory duties. Exemptions 6 and 7(C) were applied to prevent disclosure of third-party

individuals' identities and PII as well as the identities of ICE personnel. In each instance where

Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and

all other personally identifiable information, which if released, would not shed any further light as

to the operations or activities of ICE.

29.     Based upon the traditional recognition of strong privacy interests in law

enforcement records, the categorical withholding of third-party information identified in law

enforcement records is appropriate. Moreover, the third parties identified in these records have not

provided consent to the release of their personally identifying information as required by 6 C.F.R.

§§ 5.3(a) & 5.21(d).

## V.    SEGREGABILITY

30.    5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

31.    A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

32.    With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.  ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

**JURAT CLAUSE**

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this 26th day of March, 2021.

_____
Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

9

DE 54-2

**Ivan Jimenez et. al. v. U.S. Department of Homeland Security, et. al.**

Case No.: (19-21546-CIV-GAYLES)

U.S. Immigration and Customs Enforcement *Vaughn* Index

| Entry Number | Page Number | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied to Redactions |
|---|---|---|---|---|
| 1 | 1 | Partial | **Memo to File Re: Juan Luciano Machado-Amadis**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "From:", "Attorney", "with", "of", and "foregoing", are the names of third party individuals, specifically, government attorney names.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interest in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6),(b)(7)(C) |
| 2 | 2 | Partial | **Trial Attorney Worksheet, dated 3/6/89**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "attorney" and "Trial Atty.", are the names of two third party individuals, specifically, two government attorney names. | Freedom of Information Act 5 U.S.C. § 552 (b)(6),(b)(7)(C) |

Case 1:19-cv-21546-DPG   Document 54-2   Entered on FLSD Docket 03/26/2021   Page 2 of 13

| | | | Freedom of Information Act 5 U.S.C. § 552 (b)(5),(b)(6), (b)(7)(C) |
|---|---|---|---|
| 3 | | | **Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may be grudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.<br><br>The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. |
| 3 | | | **Memo dated 3-3-89** |
| | Partial | | **Redactions:** The information withheld on this page under (b)(6),(b)(7)(C) located at the bottom right of this page is a third party individual's name, specifically, a government attorney's name. The rest of the information withheld on this page, withheld under (b)(5), (b)(6),(b)(7)(C), contains the government attorney's notes written in a memo, including case information involving third party individuals.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may be grudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. |

| 4 | 4 | Partial | **Handwritten Letter to "Asst Dist. Counsel"** | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
|---|---|---|---|---|
| | | | The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |
| | | | FOIA Exemption (b)(5): FOIA Exemption 5 was asserted to protect from disclosure attorney work product, and contains notes, questions, litigation strategy and thoughts, by a government attorney. The withheld information was created in anticipation of and in preparation for immigration litigation, and/or removal proceedings, and is exempt from disclosure in order to protect the adversarial trial process by insulating the attorney's preparation from scrutiny. | |
| | | | **Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Dear," is a third party individual's name, specifically, a government attorney's name. | |
| | | | **Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |

| | | | | |
|---|---|---|---|---|
| 5 | 5 | Partial | **Letter titled "Request for Advanced Parole…"**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located above "INS", after "w/", and below "under", are the names of third party individuals, specifically, government attorney names.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 6 | 7 | Partial | **Trial Attorney Worksheet**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "3-3-89" is a third party individual's initials, specifically, a government attorney's initials.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names or initials of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| 7 | 8 | Partial | **Trial Attorney Worksheet** | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
|---|---|---|---|---|
| | | | interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |
| | | | **Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located under "ATTY" contains the initials of a third party individual, specifically, a government attorney. The information withheld on this page under (b)(6), (b)(7)(C) located after "NYC" is a third party individual name, specifically, a government agent's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party initials or names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives, and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |

| 8 | 10 | Partial | **Page 2 of Letter dated 12/20/1988**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located above "Assistant District Counsel" is a third party individual's name, specifically, a government attorney's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 9 | 12 | Partial | **Administrative Page**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "signature" and "title", and below "receipt of any" is a third party individual's name, specifically, a government employee criminal investigator's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| 10 | 14 | Partial | being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
|---|---|---|---|---|
| | | | **Agency Address Check Request** | |
| | | | **Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Inv." and above "investigations" are two third party individual's names, specifically, two government employee criminal investigator names. | |
| | | | **Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |

Case 1:19-cv-21546-DPG   Document 54-2   Entered on FLSD Docket 03/26/2021   Page 8 of 13

| | | | Form G-135 | |
|---|---|---|---|---|
| 11 | 15 | Partial | **Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Inv." is a third party individual's name, specifically, a government employee criminal investigator's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with an alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 12 | 16 | Partial | **Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Inv." is a third party individual's name, specifically, a government employee criminal investigator's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

8

| 13 | 18 | Partial | being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.<br><br>**Memo to File**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "of" contains the name of a third party individual. The information withheld on this page under (b)(6), (b)(7)(C) located below "9/14/71" contains the third party name of a government employee criminal investigator.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
|---|---|---|---|---|

Case 1:19-cv-21546-DPG   Document 54-2   Entered on FLSD Docket 03/26/2021   Page 10 of 13

| | | | Request for Record Check | Freedom of Information Act 5 U.S.C. § 552 (b)(6),(b)(7)(C) |
|---|---|---|---|---|
| 14 | 19 | Partial | **Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Spec. Inv." at the top of the page, and below "3) AC" at the bottom of the page, is a third party individual's name, specifically, a government criminal investigator's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | |
| 15 | 20 | Partial | **Form G-135**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Inv." is a third party individual's name, specifically, a government criminal investigator's name.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be | Freedom of Information Act 5 U.S.C. § 552 (b)(6),(b)(7)(C) |

| 16 | 21 | Partial | Agency Address Check Request | Freedom of Information Act 5 U.S.C. § 552 (b)(6),(b)(7)(C) |
|----|----|---------|------------------------------|-----------------------------------------------------------|

expected to constitute a unwarranted invasion of the personal privacy interest in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.

**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located after "Inv." and above "investigations" are two third party individual's names, specifically, two government employee criminal investigator names.

**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute a unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute a unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with a alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.

Case 1:19-cv-21546-DPG   Document 54-2   Entered on FLSD Docket 03/26/2021   Page 12 of 13

| 17 | 24 | Partial | **Record of Deportable Alien** | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
|----|----|---------|-------------------------------|------------|

**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located before "Invest." and above "Signature and Title" are two third party individual's names, specifically, two government employee criminal investigator names.

**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.

| 18 | 25 | Partial | **Record of Deportable Alien** | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
|----|----|---------|-------------------------------|------------|

**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located before "Invest." and above "Signature and Title" are two third party individual's names, specifically, two government employee criminal investigator names.

**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not

| 19 | 26 | Partial | | |
|---|---|---|---|---|
| | | | being associated unwarrantedly with an alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII.<br><br>**Record of Deportable Alien**<br><br>**Redactions:** The information withheld on this page under (b)(6), (b)(7)(C) located before "Invest." and above "Signature and Title" are two third party individual's names, specifically, two government employee criminal investigator names.<br><br>**Reason:** FOIA Exemptions (b)(6) & (b)(7)(C): The disclosure of the third party names of government employees could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting the government employees to harassment and annoyance in conducting their official duties and in their private lives; and could place them in danger as individuals targeted by law enforcement may begrudge government employees for an indefinite time period and seek revenge. In addition, the disclosure of the names of government employees and third parties could reasonably be expected to constitute an unwarranted invasion of the personal privacy interests in: not being associated unwarrantedly with an alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit, would not assist the public in understanding how the agency is carrying out its statutory responsibilities, and would not shed light on ICE operations or activities. There is no public interest to be served by releasing the identities or other personally identifiable information of third parties. Further, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

DE 54-3

**U.S. Department of Homeland Security**
National Records Center
P.O. Box 648010
Lee's Summit, MO 64064-8010



**U.S. Citizenship and Immigration Services**

May 28, 2019

**NRC2018089200**

MEMORANDUM FOR:

> Immigration and Customs Enforcement
> Catrina M. Pavlik-Keenan
> Freedom of Information Act Office
> 500 12th Street, SW, Stop 5009
> (202) 732-0300
> Washington, DC 20536-5009

FROM:     Jill A. Eggleston
          Director, FOIA Operations

SUBJECT:  FOIA/PA Referral/Consultation
          FOIA/PA Control #: NRC2018089200

X  1.  Documents originated by your agency are being referred to you for review and **direct response** to the requester.

> X    There are 1 UNCLASSIFIED documents consisting of a total of 26 pages.
>
> There are __ CLASSIFIED documents consisting of a total of __ pages. Please advise us if the classification of any of the documents has changed.

_ 2.  Documents originated by Immigration that contain information furnished by your agency are being referred to you **for consultation**. Please review your information that has been outlined.

> X    We have no objection to the release of Immigration information; therefore please respond directly to the requester with your determination and provide us a copy of your response.
>
> _    Please return the documents to us making any deletions you deem appropriate and cite the FOIA/PA exemptions claimed and the procedure for the requester to file an appeal to your agency. The response should be returned to the address shown above.
>
> _    There are _ UNCLASSIFIED documents consisting of a total of _ pages.
>      There are __ CLASSIFIED documents consisting of a total of __ pages. Please advise us if the classification of any of the documents has changed.

X  3.  We have advised the requester of this referral to your agency.

**www.uscis.gov**



FIPS1874987-0000-0000

Page 1

 4.    We have not advised the requester of this referral to your agency.

X  5.    A copy of the request is enclosed for your convenience.

 6.    Please see the attached page(s) for additional information.

www.uscis.gov

FIPS1874987-0000-0000

DE 54-4

*Office of Information Governance and Privacy*

**U.S. Department of Homeland Security**
500 12th St., SW
Washington, D.C. 20536



February 18, 2020

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853

**RE:    ICE FOIA Case Number 2020-ICFO-22648**
**USCIS FOIA Case Number NRC2018089200**

Dear Mr. McClanahan:

This is the final response to your Freedom of Information Act (FOIA) request to U.S. Citizenship and Immigration Services (USCIS) dated June 03, 2018.  You are seeking records pertaining to Juan Machado Amadis.

A search of USCIS for records responsive to your request produced records that originated from U.S. Immigration and Customs Enforcement (ICE). USCIS referred these records to ICE for review and processing under the FOIA, 5 U.S.C. § 552.

After review of the records referred by USCIS, I have determined that portions of the documents will be withheld pursuant to Exemptions of the FOIA. The specific Exemptions applied are identified within the enclosed documents. Descriptions of those Exemptions are enclosed.

You have a right to appeal the above withholding determination.  Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.8. You may submit your appeal electronically at GILDFOIAAppeals@ice.dhs.gov or via regular mail to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office and reference the ICE FOIA case number in the subject line of this

letter. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

for   Fernando Pineiro
FOIA Officer

**FOIA Exemption 3** protects information specifically exempted from disclosure by another statute, if the statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matters to be withheld.

**FOIA Exemption 5** protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. The attorney work-product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of litigation.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

DE 54-5

*Office of Information Governance and Privacy*

**U.S. Department of Homeland Security**
500 12ᵗʰ St., SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

DFeFb r Fu30, 2020

y F8K eC8anahan
l ationa8SFeMitc CoMnsF8ous
N402 7FLava dFuneF
ToeRLi88F, K D 20k53

**RE:   ICE FOIA Case Number 2020-ICFO-50729
        USCIS FOIA Case Number NRC2018089200**

DFau K u K eC8anahan:

dhis is thF fina8uFsponsF to coMuuuFFvob of Infoub ation Aet (mOIA) uFqMFst to U.S. CitizFnship
anv Ib b iguation SFuLieFs (USCIS) vatFv JMnF 11, 201k. YoMauF sFFRing anc anv a88uFeouvs
pFutaining to JMan 7Mciano Kaehavo Ab avis A031E3wwFN06.

A sFaueh of USCIS fouuFeouvs uFsponsiLF to coMuuFqMFst puovMFFv uFeouvs that ouiginatFv fuob
U.S. Ib b iguation anv CMstob s §nfoueFb Fnt (IC§). USCIS uFFFuuFv thFsF uFeouvs to IC§ fou
uFLiFx anv puoeFssing MnvFuthF mOIA, 5 U.S.C. 9 552.

AftFuuFLiFx of thF uFeouvs uFFFuuFv r c USCIS, I haLF vFtFub inFv that poutions of thF voeMb Fnts
x i88r F x ithhF8v pMsMant to §HFb ptions of thF mOIA. dhF spFeifie §HFb ptions app8iFv auF
ivFntifiFv x ithin thF Fne8osFv voeMb Fnts. DFseuiptions of thosF §HFb ptions auF Fne8osFv.

YoMhaLF a uight to appFa8thF ar oLF x ithho8ving vFtFub ination. ShoM8v coMx ish to vo so, coM
b Mst sFnv coMtappFa8anv a eopc of this 8FttFu x ithin w0 vacs of thF vatF of this 8FttFufo88ox ing
thF puoeFvMFs oM8inFv in thF DP S mOIA uFgM8ations at 6 C.mT. Gaut 5 9 5.k. YoMb ac sMtb it
coMtappFa8F8Fetuoniea8c at @I7DnmOIAAppFa8s- ieF.vhs.goL ouLia uFgM8aub ai8to:

                    U.S. Ib b iguation anv CMstob s §nfoueFb Fnt
                    OffieF of thF Guineipa87Fga8AvLisou
                    U.S. DFpautb Fnt of P ob F8anv SFeMitc
                    500 12th StuFFt, S.W., Kai8Stop 5w00
                    Washington, D.C. 20536E5w00

YoMuFnLF8opF anv 8FttFushoM8v r F b auRFv "mOIA AppFa8" CopiFs of thF mOIA anv DP S
uFgM8ations auF aLai8ar 8F at x x x .vhs.goL/foia.

If coMnFFv anc fMuthFuassistaneF ou x oM8v 8RF to viseMs anc aspFet of coMuuFqMFst, p8FasF
eontaet thF mOIA offieF anv uFFFuFneF thF IC§ mOIA easF nMb r Fuin thF sMtjFet 8nF of this

8FttFu YoMb ac sFnv an FEb ai8to ieFEfoia-  ieF.vhs.goL, ea8to8fuFF (k66) 633E1k2, oucoM b ac eontaet oMm OIA GM 8e 7iaison, mFunanvo GinFiwo, in thF sab F b annFu Avvitiona88c, coM haLF a uight to uight to sFFR vispMF uFso8Mion sFuLieFs fuob thF OffieF of @oLFunb Fnt Infoub ation SFuLieFs (O@IS) x hieh b FviatFs vispMFs r Ftx FFn mOIA uFqMFstFus anv mFvFua8 agFneiFs as a nonFFb8MiLF a8FunatiLF to 8tigation. If coMauF uFqMFsting aeeFss to coMtox n uFeouws (x hieh is eonsivFuFv a GuiLaec Aet uFqMFst), coMshoMbv Rnox that O@IS voFs not haLF thF aMhouitc to hanv8F uFqMFsts b avF MnvFuthF GuiLaec Aet of 1w4N YoMb ac eontaet O@IS as fo88ox s:  OffieF of @oLFunb Fnt Infoub ation SFuLieFs, l ationa8AuehiLFs anv TFeouws Avb inistuation, k601 AvF8phi ToavFO@IS, Co88FgF GauR, K auc8anv 204N0E6001, FEb ai8at ogis- naua.goL; tF8FphonF at 202E4N1E5440; to8fuFF at 1Ek44E6kN6NNk; oufaesib i8F at 202E4N1E 546w.

SineFuF8c,

SFniouGaua8Fga8 IC§ mOIA fou

mFunanvo GinFiwo Ju
(A)mOIA OffieFu

**FOIA Exemption 3** protects information specifically exempted from disclosure by another statute, if the statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

**FOIA Exemption 5** protects from disclosure those inter-or intra-agency memoranda or documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations embodied within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. The attorney work-product privilege protects confidential materials prepared by an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus reflecting, those facts, as well as communications between attorneys and his client supplied information. The attorney-client privilege is not limited to the context of litigation.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records here outweigh any minimal public interest in disclosure of the information. Any private interest could have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantedly associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records here requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest could have in that information does not factor into this determination.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well-known to the public.

DE 54-6

*Office of Information Governance and Privacy*

**U.S. Department of Homeland Security**
500 12th St., SW
Washington, D.C. 20536



U.S. Immigration
and Customs
Enforcement

March 23, 2021

Kel McClanahan
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
Email: kel@nationalsecuritylaw.org

**RE:    ICE FOIA Case Numbers 2020-ICFO-22648, 2020-ICFO-50729**
**        USCIS FOIA Case Number NRC2018089200**

Dear Mr. McClanahan:

This letter is a supplemental response to your Freedom of Information Act (FOIA) request to
U.S. Citizenship and Immigration Services (USCIS) dated June 11, 2018. You are seeking any
and all records pertaining to Juan Luciano Machado Amadis A031-399-406.

ICE has considered your request under the FOIA, 5 U.S.C. § 552.

Upon litigation review, and after comparing the previous two productions made in this case, ICE
has determined that some of the information previously withheld may be released to you under
the FOIA. ICE has applied FOIA Exemptions (b)(5), (b)(6), and (b)(7)(C) to portions of these
pages as described below.

**FOIA Exemption (b)(5)** exempts from disclosure inter-agency or intra-agency memorandums or
letters, which would not be available by law to a party other than an agency in litigation with the
agency. FOIA Exemption (b)(5) was applied to attorney work product and attorney client
privileged information.

**FOIA Exemption (b)(6)** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy.  This requires a
balancing of the public's right to disclosure against the individual's right to privacy.  The privacy
interests of the individuals in the records you have requested outweigh any minimal public
interest in disclosure of the information.  Any private interest you may have in that information
does not factor into the aforementioned balancing test.

**FOIA Exemption (b)(7)(C)** protects records or information compiled for law enforcement
purposes that could reasonably be expected to constitute an unwarranted invasion of personal
privacy.  This exemption takes particular note of the strong interests of individuals, whether they
are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged
criminal activity.  That interest extends to persons who are not only the subjects of the

investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation.  Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.  As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information.  Please note that any private interest you may have in that information does not factor into this determination.

If you have any questions about this letter, please contact Assistant U.S. Attorney Carlos Raurell at 305-961-9243 or Carlos.Raurell@usdoj.gov.

Sincerely,

Senior Paralegal, ICE FOIA for

Fernando Pineiro Jr.
(A)FOIA Officer

Enclosure(s):   26 page(s)

DE 59-1 (SEALED)

DE 59-2 (SEALED)

DE 59-3 (SEALED)