IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **23-10073-CC**

Ivan Jimenez, et al.,

Appellants,

- versus -

U.S. Department of Homeland Security, et al.,

Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

<u>BRIEF FOR THE UNITED STATES</u>

> Markenzy Lapointe
> United States Attorney
> Attorney for Appellee
> 99 N.E. 4th Street
> Miami, Florida 33132-2111
> (561) 209-1053

Daniel Matzkin
Chief, Appellate Division

Brittany Bull Panuccio
Assistant United States Attorney

Of Counsel

**Ivan Jimenez, et al. v. U.S. Dep't of Homeland Sec., et al.,**
**Case No. 23-10073-CC**
**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned counsel certifies that the list below is a complete list of the persons and entities previously included on the government's CIP, as well as additional persons and entities (designated in bold face) who have an interest in the outcome of this case.

**Bahr, David A.**

Department of Homeland Security

Department of State

**Eggleston, Jill A.**

Fajardo Orshan, Hon. Ariana

Gayles, Hon. Darrin P.

Gonzalez, Juan Antonio

**Holzer, James V.M.L.**

Jiménez, Iván

Knopf, Andrew Franklin

Lapointe, Markenzy

Machado, Juan

**Matzkin, Daniel**

**Ivan Jimenez, et al. v. U.S. Dep't of Homeland Sec., et al.,**
**Case No. 23-10073-CC**
**Certificate of Interested Persons (continued)**

McClanahan, Kelly B.

Muñoz, Jose

**National Security Counselors, Inc.**

**Office of Biometric Identity Management**

Otazo-Reyes, Hon. Alicia M.

**Panuccio, Brittany Bull**

**Paul Knopf Bigger PLLC**

**Perez, Karina**

**Pineiro, Fernando**

**Raurell, Carlos**

Rubio, Lisa Tobin

Sención, Guillermo

**Stein, Eric F.**

**U.S. Citizenship and Immigration Services**

**U.S. Immigration and Customs Enforcement**

Vásquez, Miguel

/s/ *Brittany Bull Panuccio*
Brittany Bull Panuccio
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the briefs and record before this Court adequately present the facts and legal arguments and that oral argument would not significantly aid the decisional process.

# Table of Contents

**Page**:

Certificate of Interested Persons ........................................................ c-1

Statement Regarding Oral Argument .................................................... i

Table of Contents .............................................................................. ii

Table of Citations ............................................................................ iv

Statement of Jurisdiction ................................................................. xii

Statement of the Issues.................................................................... 1

Statement of the Case:

1.    Statement of Facts & Procedural History ................................... 2

      a.    Appellants' Record Requests & FOIA Lawsuit................................. 2

      b.    The Government's Motion & Appellants' Cross-Motion for Summary Judgment.......................................................... 4

      c.    District Court Order Granting the Government's Motion for Summary Judgment.......................................................... 6

      d.    Appellants' Motion for Partial Summary Reversal............................ 8

      e.    Issues on Appeal................................................................... 9

2.    Standards of Review .............................................................. 10

Summary of the Argument ............................................................... 10

# Table of Contents

# (continued)

**Page**:

Argument .................................................................................................. 13

I.      The agencies were not required to include copies of FOIA correspondence with their declarations. ....................................... 15

II.     A presumption of good faith applies to the Holzer and Pineiro Declarations. .............................................................................. 20

III.    OBIM performed an adequate search, reasonably calculated to identify responsive material. ................................................................. 23

      a.      OBIM did not need to conduct an alien number search because its standard fingerprint search would yield the same records. ......... 24

      b.      Appellants' FOIA requests to OBIM were not "misdirected" and did not require forwarding. .............................................. 27

IV.     The agency properly withheld exempted material. .................................... 32

      a.      Exemption 3 .................................................................... 32

      b.      Exemption 5 .................................................................... 41

V.      The State Department adequately explained the harm that would occur because of disclosure. .................................................... 43

Conclusion ............................................................................................... 45

Certificate of Compliance ........................................................................ 46

Certificate of Service ............................................................................... 46

## Table of Citations

**Cases**:                                                                          **Page**:

*Airaj v. U.S. Dep't of State*,

  No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017)...............................36

*Airaj v. United States*,

  Civ. A. No. 15-983 (ESH), 2016 WL 1698260 (D.D.C. Apr. 27, 2016).............36

*Beltranena v. U.S. Dep't of State*,

  821 F. Supp. 2d 167 (D.D.C. 2011) ......................................................................35

*Broward Bulldog, Inc. v. U.S. Dep't of Justice*,

  939 F.3d 1164 (11th Cir. 2019)................................................................ 20, 41, 42

*Campbell v. U.S. Dep't of Justice*,

  133 F. Supp. 3d 58 (D.D.C. 2015) .......................................................................29

*Christensen v. Harris Cnty.*,

  529 U.S. 576 (2000) .............................................................................................31

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,

  447 U.S. 102 (1980) .............................................................................................39

*De Laurentiis v. Haig*,

  686 F.2d 192 (3d Cir. 1982)................................................................................34

*El Badrawi v. Dep't of Homeland Sec.*,

  583 F. Supp. 2d 285 (D. Conn. 2008).................................................... 37, 38, 39

iv

**Table of Citations (Continued)**

<u>**Cases:**</u>                                                                                    <u>**Page:**</u>

*Ellis v. Dep't of Justice*,

   110 F. Supp. 3d 99 (D.D.C. 2015) ........................................................29

*Epic Sys. Corp. v. Lewis*,

   138 S. Ct. 1612 (2018) .........................................................................31

*Goldberg v. U.S. Dep't of State*,

   818 F.2d 71 (D.C. Cir. 1987) ........................................................ 18, 22

*Hornes v. Exec. Off. of U.S. Att'ys*,

   2007 WL 1322088 (D.D.C. May 4, 2007)...........................................19

*Hussain v. U.S. Dep't of Homeland Sec.*,

   674 F. Supp. 2d 260 (D.D.C. 2009) ....................................................30

*In re Cassell*,

   688 F.3d 1291 (11th Cir. 2012)...........................................................37

*Kay v. F.C.C.*,

  976 F. Supp. 23 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998)................14

*Khatchadourian v. Defense Intel. Agency*,

   453 F. Supp. 3d 54 (D.D.C. 2020) ............................................... 18, 22

*Kidd v. Mando Am. Corp.*,

   731 F.3d 1196 (11th Cir. 2013)...........................................................18

**Table of Citations (Continued)**

<u>Cases</u>:                                                                                           <u>Page</u>:

*Kowalczyk v. DOJ*,

    73 F.3d 386 (D.C. Cir. 1996) ........................................................... 25, 26

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,

    523 U.S. 26 (1998) ...............................................................................39

*Machado Amadis v. U.S. Dep't of State*,

    971 F.3d 364 (D.C. Cir. 2020) ....................................................... 43, 44

*Mantilla v. U.S. Dep't of State*,

    No. 12-21109-CIV, 2012 WL 4372239 (S.D. Fla. Sept. 24, 2012).....................38

*Martin v. United States*,

    949 F.3d 662 (11th Cir. 2020)................................................................44

*Maynard v. C.I.A.*,

    986 F.2d 547 (1st Cir. 1993) ......................................................... 14, 27

*Medina-Hincapie v. Dep't of State*,

    700 F.2d 737 (D.C. Cir. 1983) ....................................................... 33, 34

*Meeropol v. Meese*,

    790 F.2d 942 (D.C. Cir. 1986) .............................................................19

*Miccosukee Tribe of Indians of Fla. v. United States*,

    516 F.3d 1235 (11th Cir. 2008) ..................................................... 14, 41

**Table of Citations (Continued)**

<u>Cases</u>:                                                                                       <u>Page</u>:

*Miller v. U.S. Dep't of State*,

    779 F.2d 1378 (8th Cir. 1985)......................................................... 14, 15

*Morales v. Trans World Airlines, Inc.*,

    504 U.S. 374 (1992) ......................................................................36

*Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*,

    376 F.3d 1270 (11th Cir. 2004)....................................................41

*Nation Magazine v. U.S. Customs Serv.*,

    71 F.3d 885 (D.C. Cir. 1995) .......................................................15

*News-Press v. U.S. Dep't of Homeland Sec.*,

    489 F.3d 1173 (11th Cir. 2007)....................................................10

*Off. of the Cap. Collateral Counsel, N. Region of Fla., ex rel. Mordenti v. Dep't of*

    *Justice*,

    331 F.3d 799 (11th Cir. 2003)......................................................10

*Oglesby v. U.S. Dep't of the Army*,

    920 F.2d 57 (D.C. Cir. 1990) .......................................................15

*Patterson v. I.R.S.*,

    56 F.3d 832 (7th Cir. 1995) ..........................................................14

**Table of Citations (Continued)**

<u>Cases:</u>                                                              <u>Page:</u>

*Perry v. Block*,

   684 F.2d 121 (D.C. Cir. 1982) .................................................................. 13, 14, 15

*Power Auth. v. M/V Ellen S. Bouchard*,

   968 F.3d 165 (2d Cir. 2020)..................................................................................38

*Ray v. U.S. Dep't of Justice*,

   908 F.2d 1549 (11th Cir. 1990)............................................................... 13, 14, 15

*SafeCard Serv., Inc. v. Sec. and Exch. Comm'n*,

   926 F.2d 1197 (D.C. Cir. 1991) ......................................................... 14, 19, 20, 29

*Sepulveda v. U.S. Att'y Gen.*,

   401 F.3d 1226 (11th Cir. 2005).............................................................................32

*Smith v. U.S. Dep't of Justice*,

   115 F. Supp. 3d 48 (D.D.C. 2015) .......................................................................30

*Soto v. Dep't of State*,

   No. 14-604, 2016 WL 3390667 (D.D.C. June 17, 2016)......................... 35, 36, 37

*Spadaro v. U.S. Customs and Border Protection*,

   978 F.3d 34 (2d Cir. 2020)............................................... 33, 34, 35, 36, 37, 38, 39

*Thompson v. Exec. Off. for U.S. Att'ys*,

   587 F. Supp. 2d 202 (D.D.C. 2008) .....................................................................19

**Table of Citations (Continued)**

**Cases:**                                                                    **Page:**

*Truitt v. Dep't of State*,

   897 F.2d 540 (D.C. Cir. 1990) ................................................................14

*U.S. Dep't of Justice v. Tax Analysts*,

   492 U.S. 136 (1989) ...........................................................................13

*United States v. Nealy*,

   232 F.3d 825 (11th Cir. 2000) .............................................................32

*Vizcarra Calderon v. U.S. Dep't of Homeland Sec.*,

   Case No. 18-CV-764-CV, 2020 WL 805212 (D.D.C. Feb. 18, 2020) .......... 35, 36

*Weisberg v. U.S. Dep't of Justice*,

   705 F.2d 1344 (D.C. Cir. 1983) .................................................... 14, 27

*Wiener v. FBI*,

   943 F.2d 972 (9th Cir. 1991) ..............................................................34

**Table of Citations (Continued)**

**Statutes & Other Authorities:**                                    **Page:**

5 U.S.C. § 552 .................................................................. 2, 7, 13, 32, 33, 41, 43

8 U.S.C. § 1201 ...............................................................................39

8 U.S.C. § 1202 .......................................................... 12, 32, 33, 39, 40

28 U.S.C. § 1291 ........................................................................... xii

28 U.S.C. § 1331 ........................................................................... xii

28 U.S.C. § 1651 ..............................................................................2

28 U.S.C. § 2201 ..............................................................................2

28 U.S.C. § 2241 ........................................................................... xii

FED. R. APP. P. 4.......................................................................... xii, 8

Fed. R. App. P. 26.1 ........................................................................ c-1

FED. R. APP. P. 32...........................................................................46

Fed. R. Civ. P. 56 ...........................................................................14

FED. R. EVID. 1002 .........................................................................16

Pub. L. No. 108-458 ........................................................................40

## Table of Citations (Continued)

<u>**Regulations:**</u>                                              <u>**Page**</u>**:**

6 C.F.R. § 5.3 ................................................................................28

6 C.F.R. § 5.4 ...................................................... 7, 29, 30, 31

**Statement of Jurisdiction**

This is an appeal from a final decision of the United States District Court for the Southern District of Florida in a civil case. The district court had jurisdiction under 28 U.S.C. §§ 1331, 2241(a), and 2241(c)(1). On November 3, 2022, the district court granted the government's motion for summary judgment and denied Appellants' cross-motion for summary judgment. DE 103:2 (affirming and adopting report and recommendation, DE 86).[1] Appellants filed a timely notice of appeal on January 2, 2023. DE 104; *see* FED. R. APP. P. 4(a). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[1] All citations to "DE" refer to the underlying district court case, No. 1:19-CV-21546 (S.D. Fla.). All citations to "App. DE" refer to this appellate docket.

**Statement of the Issues**

1. Whether the agencies were required to include copies of FOIA correspondence with their declarations.

2. Whether a presumption of good faith applies to the Holzer and Pineiro Declarations.

3. Whether the Department of Homeland Security should have conducted an alien number search where the requestor did not provide an alien number and the standard fingerprint search would have yielded the same records.

4. Whether Appellants' FOIA request to the Office of Biometric Identity Management was "misdirected" and required forwarding.

5. Whether the agencies properly withheld exempted material under FOIA Exemptions 3 and 5.

6. Whether the State Department adequately explained the harm that would occur because of disclosure.

**Statement of the Case**

This case is about Appellants' Freedom of Information Act ("FOIA") requests to multiple government agencies for records related to Appellants' visa adjudications. As shown in the agencies' motion for summary judgment and the accompanying declarations of agency officials, the agencies conducted adequate searches for records responsive to Appellants' requests and properly withheld certain

information under well-established FOIA exemptions. The district court correctly granted the agencies' motion for summary judgment, and this Court should affirm.

1. **Statement of Facts & Procedural History**

   a. **Appellants' Record Requests & FOIA Lawsuit**

In April 2019, Appellants Iván Jiménez, Juan Machado, Jose Muñoz, Guillermo Sención, and Miguel Vásquez sued the agencies in the Southern District of Florida under FOIA, 5 U.S.C. § 552, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651. *See* DE 1:2. The case is about Appellants' records requests to the State Department and two Department of Homeland Security ("DHS") components—the Office of Biometric Identity Management ("OBIM") and the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 3. Appellants asserted ten causes of action stemming from their records requests—three for OBIM records, three for USCIS records, and four for State Department records. *Id.* at 3–13. They include:

OBIM

1. Jiménez/Machado, Constructive Records Denial, Request 2019-OBFO-05965;

2. Jiménez/Muñoz, Records Denial, Request 2019-OBFO-05969; and

3. Jiménez/Sención Records Denial, Request 2018-OBFO-17760.

USCIS

4. Jiménez/Machado, Constructive Records Denial, Request NRC2018089200;

5. Jiménez/Muñoz, Records Denial, Request NRC2018188049; and

6. Jiménez/Sención, Records Denial, Request NRC2018089201.

State Department

7. Jiménez/Machado, Constructive Records Denial, Request F-2018-04237;

8. Jiménez/Muñoz, Records Denial, Request F-2014-09926;

9. Jiménez/Sención, Records Denial, Request F-2018-06912; and

10. Jiménez/Vásquez, Constructive Records Denial, Requests F-2017-17779 & F-2018-00322.

*Id.*[2] All of Appellants' FOIA requests sought records "pertaining to the revocations of their visas." DE 61:1.

The agencies requested an extension of time to respond to the Complaint to allow them "to promptly provide [Appellants] all information to which they are entitled under FOIA before a response to the Complaint is due." DE 12:1. The district court granted the agencies' request, administratively closed the case, and

---

[2] Appellants have since moved this Court to voluntarily dismiss Guillermo Sención from this case, and they did not raise any issues on appeal relating to causes of action/FOIA requests 3, 6, or 9. *See* App. DE 30-1; App. DE 40-1. The Court granted Appellants' motion to dismiss Sención and related claims. App. DE 45-2. The Court also dismissed in part the remaining Appellants' appeal as to Counts 3, 6, and 9. *Id.*

required the parties to file successive status reports about the agencies' "progress in providing [Appellants] with the requested documents." DE 14.

### b. The Government's Motion & Appellants' Cross-Motion for Summary Judgment

After completing their responses to Appellants' FOIA requests, the agencies moved for summary judgment on all counts. DE 29. In their motion, the agencies argue that they "conducted adequate searches for records responsive to [Appellants'] requests and properly withheld certain information pursuant to well-established FOIA exemptions." DE 29:1. In support, the agencies proffered the Declarations of James V.M.L. Holzer on behalf of OBIM, Jill Eggleston on behalf of USCIS, and Eric Stein on behalf of the State Department. *Id.* at 6, 8, 9; DE 29-1; DE 29-2; DE 29-3; DE 29-4. And the government filed the Declaration of Fernando Pineiro on behalf of USCIS' Immigration and Customs Enforcement ("ICE"). DE 54; *see* DE 54-1–54-6.[3] The agencies' motion and accompanying declarations explain in detail how the agencies searched for records responsive to Appellants' FOIA requests and why the agencies withheld certain information. DE 29:5–24; DE 29-1–DE 29-4.

In their cross-motion for summary judgment, Appellants argued the district court should deny the agencies' motion and grant theirs instead because the agencies

---

[3] USCIS referred to ICE some records it located for processing in response to Appellants' FOIA requests because the records originated from ICE. *See* DE 54-1 ¶¶ 4, 8.

"performed inadequate searches for records responsive to" some of Appellants' FOIA requests and "failed to demonstrate that there are no genuine issues of material fact regarding their withholding of information responsive to" some requests. DE 61:4. But Appellants first asked the court to address two threshold issues—(1) whether the agencies were required to attach to their declarations correspondence related to Appellants' FOIA requests, and (2) whether the presumption of good faith applied to two of the agencies' declarations. *Id.* First, Appellants argued that the agencies must file correspondence related to their FOIA requests with the agency declarations to comport with the Best Evidence Rule and standard practice. *Id.* at 5–8. Second, Appellants argued the Holzer and Pineiro Declarations are not entitled to a presumption of good faith because "DHS and ICE withheld information [they] had previously released to [Appellants] and defended those withholdings as justified by law." *Id.* at 8.

As for the merits, Appellants argued the agencies conducted inadequate searches for records responsive to Counts 1, 2, and 7 because they failed to: search appropriate locations or follow leads, use appropriate search terms related to Appellant Machado's name, and abide by agency regulations about misdirected requests. *Id.* at 15–19. Appellants also argued that the agencies improperly withheld information under FOIA Exemptions 3 and 5. *Id.* at 19–24.

### c. District Court Order Granting the Government's Motion for Summary Judgment

The district court entered judgment for the agencies, granting their motion for summary judgment and denying Appellants' cross-motion for summary judgment. DE 103:2 (affirming and adopting report and recommendation, DE 86). The district court started by addressing the two threshold issues Appellants raised: First, the court rejected Appellants' challenge to the agency officials' declarations "on the grounds that the declarants should have attached copies of … the agencies' … [c]orrespondence" with Appellants about their FOIA requests. DE 86:9–10. The court explained that Appellants "point to no such requirement for agency declarations in the FOIA case law," and the policy documents cited "carry no legal weight." *Id.* at 10. Second, the court concluded that Appellants failed to "overcome the good faith presumption that attaches to" the Holzer and Pineiro Declarations. *Id.* at 11. The court explained that "an agency's inconsistent approach to the classification designations of several records does not support a finding of bad faith with respect to its supporting declarations." *Id.* (cleaned up). And the court determined Appellants' provided "no support whatsoever" for their "speculative[]" theory that the agencies withheld more material in later releases because of this FOIA litigation. *Id.* at 10–11.

Turning to the merits of Appellants' FOIA claims, the district court found their claim that OBIM conducted inadequate searches to be unavailing. *Id.* at 11–13.

6

The district court rejected Appellants' argument that OBIM should have conducted an alien number search related to the FOIA request in Count 1 because the record shows the standard fingerprint search would yield the same records, and Appellants "point to no authority imposing this additional burden [of an alien number search] on OBIM." *Id.* at 12. The court likewise rejected Appellants' claim that OBIM should have referred a portion of Appellants' FOIA requests related to Counts 1 and 2 to CPB. *Id.* at 12–13. "Because there is no basis for imposing a referral duty on OBIM pursuant to 6 C.F.R. § 5.4(c)," the court held that Appellants' argument that OBIM's search related to Counts 1 and 2 was inadequate fails. *Id.* at 13.

The court also found that the agencies properly relied on FOIA Exemptions 3 and 5 to withhold visa revocation and adjudication records. *Id.* at 13–17. The court explained that Exemption 3 allows the withholding of information prohibited from disclosure by statute, and that § 222(f) of the Immigration and Nationality Act qualifies as a nondisclosure statute under Exemption 3. *Id.* at 14 (citing 5 U.S.C. § 552(b)(3)). The court held that the statute's "non-disclosure directive encompasses visa revocation records," and the agencies "properly relied on Exemption 3 to withhold visa revocation records" in this case. *Id.* at 14–15. Turning to Exemption 5, the court stated that it protects from disclosure "'inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.'" *Id.* at 15 (quoting 5 U.S.C. § 552(b)(5)).

7

Exemption 5, the court explained, includes documents protected by the attorney-client, work product, and deliberative process privileges. *Id.* The court concluded that "the Second Stein Declaration provides specific information sufficient to support the invocation of Exemption 5's protection over both the attorney-client and the deliberative process privileges." *Id.* at 17 (cleaned up). Thus, the court held that State "properly relied on Exemption 5 … to withhold visa adjudication records" related to Counts 8 and 9. *Id.*

### d.    Appellants' Motion for Partial Summary Reversal

Appellants timely appealed, DE 104, *see* FED. R. APP. P. 4(a), and moved for partial summary reversal, App. DE 19-1. Without reaching the merits of their FOIA claims, Appellants raised three so-called threshold issues: First, Appellants challenged the district court's conclusion that the agencies were not required to include copies of correspondence about Appellants' FOIA requests with their declarations supporting the agencies' motion for summary judgment. *Id.* at 4–5, 10–15. Second, Appellants disagreed with the district court's finding that DHS regulations did not require OBIM "to route Appellants' partially misdirected FOIA requests … to [CBP]." *Id.* at 5; *see id.* at 15–18. Finally, Appellants argued the district court "fail[ed] to address the foreseeable harm standard … without which it could not legitimately find that the Department of State [] properly withheld any information under Exemption (b)(5)." *Id.* at 5; *see id.* at 19–21.

This Court denied Appellants' motion for partial summary reversal. App. DE 25-2.

### e. Issues on Appeal

On appeal, Appellants raise six issues. Br. at 1–2.[4]  First, Appellants argue the district court erred by "holding that DHS did not have to file copies of FOIA correspondence on the record when seeking summary judgment regarding the FOIA requests at issue in Counts 1, 2, 4, and 5." *Id.* at 1; *see id.* at 8–18. Second, Appellants argue the district court erred by "holding that Appellants failed to refute the presumption of good faith regarding the Holzer and Pineiro declarations." *Id.*; *see id.* at 18–27. Third, Appellants argue the district court erred by "holding that Appellees performed adequate searches for records responsive to the FOIA requests at issue in Counts 1, 2, 4, and 5" because the agencies did not do an alien number search in addition to the standard fingerprint search. *Id.*; *see id.* at 27–30. Fourth, Appellants argue that OBIM's search for documents responsive to two FOIA requests was inadequate because OBIM was required to refer Appellants' requests to a different DHS component, U.S. Customs and Border Protection ("CBP"). *Id.* at 30–39. Fifth, Appellants argue the district court erred by finding that the agencies "properly withheld information from the FOIA requests at issue in Counts 1, 2, 4, 7,

---

[4] Citations to Appellants' brief reference the internal pagination, not the page number in the header generated by the Court's electronic filing system.

8, and 10." *Id.* at 1; *see id.* at 39–52. Sixth, Appellants fault the district court for not specifically addressing the issue of "foreseeable harm" that could result from disclosing the information at issue. *See id.* at 53–55.

## 2.    <u>Standards of Review</u>

"The district court decided this [FOIA] case at summary judgment, so appellate review is *de novo.*" *Off. of the Cap. Collateral Counsel, N. Region of Fla., ex rel. Mordenti v. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003) (citations omitted). To the extent that the issues raised turn on a factual dispute, this Court would review the district court's findings for clear error. *See News-Press v. U.S. Dep't of Homeland Sec.,* 489 F.3d 1173, 1187–89 (11th Cir. 2007).

### Summary of the Argument

Appellants submitted FOIA requests to multiple government agencies for records related to Appellants' visa revocations. As shown in the agencies' motion for summary judgment and the accompanying declarations of agency officials, the agencies conducted adequate searches for records responsive to Appellants' requests and properly withheld certain information under well-established FOIA exemptions. Appellants have raised six issues related to the adequacy of the agencies' searches and the propriety of the claimed exemptions. None of their arguments are meritorious.

First, contrary to Appellants' claim, the agencies were not required to include copies of FOIA correspondence with their declarations. Despite the different framing, Appellants' argument is essentially a hearsay objection. But, as Appellants acknowledge, hearsay *is* permissible in an agency's declaration in a FOIA case. And Appellants' point to no relevant legal authority stating an agency defending a FOIA lawsuit must include with its declaration a copy of its correspondence with the requestor. Plus, the details of Appellants' requests were not in dispute, so there was no reason for the agencies to prove those details through additional evidence.

Second, a presumption of good faith applies to the agencies' Holzer and Pineiro Declarations. Alleged differences in how the agencies redacted responsive records is insufficient to show bad faith. Appellants must do more than show the agency previously classified the requested information differently. And Appellants' theory that the agencies more heavily redacted later releases because of FOIA litigation is speculative and defies common sense.

Third, OBIM did not need to conduct an alien number search related to Count 1 because its standard fingerprint search would yield the same records and the request did not include an alien number to be searched. Appellants argue that OBIM "should have asked for Machado's alien number or obtained it elsewhere" to conduct an adequate search. Br. at 29. But Appellants "point to no authority imposing this additional burden on OBIM." DE 86:12.

11

Fourth, Appellants' FOIA requests to OBIM were not "misdirected" and in need of forwarding. Appellants argue that OBIM's search for documents responsive to two FOIA requests was inadequate because OBIM was required to refer Appellants' requests to a different DHS component—CBP. But Appellants submitted their FOIA request directly to OBIM, and OBIM appropriately limited its search to records in its possession at the time of the request. Contrary to Appellants' claim, "there is no basis for imposing a referral duty on OBIM" under the relevant DHS regulations. DE 86:13.

Fifth, the agencies properly withheld exempted material. Specifically, the agencies properly withheld information about Appellants' visa cancellations and revocations because such information is confidential under § 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), and therefore exempt from disclosure under FOIA Exemption 3. In addition, State properly withheld certain information relating to Appellants' visa adjudications under the attorney-client privilege and deliberative process privilege, which is exempt from disclosure under FOIA Exemption 5.

Sixth, the State Department adequately explained the harm that would occur because of disclosure of the information at issue. The Stein Declaration adequately explains the foreseeable harm that would result from a disclosure of intra-agency communications among agency officials deliberating issues related to Appellants'

visa applications. In short, it would chill future internal discussions.

In sum, the district court correctly granted the agencies' motion for summary judgment, and this Court should affirm.

## Argument

FOIA requires an agency to disclose records responsive to a properly submitted request unless one or more of the Act's nine exemptions protect those records from disclosure. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989).[5] Once a court determines that an agency has "released all nonexempt material," it has "no further judicial function to perform under the FOIA," and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). Here, the agencies have met their FOIA obligations by conducting adequate searches for responsive records and providing Appellants all non-exempt, responsive material located.

An agency responding to a FOIA request must conduct a reasonable search for responsive records. *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds sub nom. U.S. Dep't of State v. Ray*, 502 U.S. 164

---

[5] The FOIA exemptions relevant to this appeal cover matters that are: "specifically exempted from disclosure by statute" (Exemption 3), and "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years of more before the date on which the records were requested" (Exemption 5). 5 U.S.C. § 552(b)(3), (5).

(1991); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). When the adequacy of an agency's search for records is at issue, "'the agency must show beyond a material doubt … that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1248 (11th Cir. 2008) (quoting *Ray*, 908 F.2d at 1558). Importantly, the agency "need not show that its search was exhaustive" but only that it was "reasonable." *Ray*, 908 F.2d at 1558.

In an action under FOIA, an agency may establish that it conducted a reasonable search through "affidavits of responsible officials 'so long as the affidavits are relatively detailed, nonconclusory and submitted in good faith.'" *Id.* (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)); *see Perry*, 684 F.2d at 127.[6]

Whether a search was reasonable depends on the circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (citing *Weisberg*, 705

---

[6] "Generally, declarations accounting for searches of documents that contain hearsay are acceptable." *Kay v. F.C.C.*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). "[A]n agency need not submit an affidavit from the employee who actually conducted the search." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993). Affidavits of officials responsible for supervising or coordinating search efforts are sufficient to fulfill Federal Rule of Civil Procedure 56(c)'s personal knowledge requirement. *See id.*; *SafeCard Serv., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Patterson v. I.R.S.*, 56 F.3d 832, 840–41 (7th Cir. 1995) (declarant's reliance on a standard search form completed by his predecessor was appropriate).

F.2d at 1351). The agency need not show that it has conducted an exhaustive search but must show that it made a good-faith effort, using methods which could reasonably be expected to uncover the requested information or documents. *See Ray*, 908 F.2d at 1558; *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Miller*, 779 F.2d at 1383 ("[T]he search need only be reasonable; it does not have to be exhaustive"). The agency need not prove that every responsive document has been located. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citing *Perry*, 684 F.2d at 128). And a search is not presumed unreasonable if it fails to produce all relevant documents. *Id.*

Appellants raised six issues related to the adequacy of the agencies' searches and the propriety of the claimed exemptions. None of their arguments are meritorious.

## I.    The agencies were not required to include copies of FOIA correspondence with their declarations.

Appellants first argue that the agencies needed to include copies of correspondence about Appellants' FOIA requests with their declarations supporting the agencies' motion for summary judgment. Br. at 8–18. Appellants claim the district court erred by "holding that DHS and USCIS were not required to file FOIA correspondence with the Holzer and Eggleston Declarations." *Id.* at 17.

Not so. Appellants cited no relevant legal authority for this proposition. First, like in the district court, Appellants rely on a Department of Justice PowerPoint

15

presentation about FOIA. *See id.* at 8–9 & n.2 (citing DE 61-2 and DE 61-3); DE 61-3:2 (listing "[e]mails and other correspondence to and from the requester" as an "[e]xample" of "evidence/support"). The district court correctly concluded that "[t]hese materials carry no legal weight and are irrelevant." DE 86:10. Even if, as Appellants' counsel contends, the government has included FOIA correspondence in other cases in which he has litigated, *see* Br. at 8–9, that does not mean it is necessary under these facts or that any binding rule requires it. Indeed, Appellants "point to no such requirement for agency declarations in the FOIA case law." DE 86:10.

Alternatively, Appellants rely on what is known as the Best Evidence Rule. *See* FED. R. EVID. 1002. It provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." *Id.* Appellants broadly assert the agencies "are obviously trying to prove the contents of the FOIA correspondence by stating what [it] says." Br. at 11.

As the district court recognized, there was no dispute about the details of Appellants' various requests. *See* DE 86:6–8. The agencies recited the details of Appellants' requests, including the dates of the requests and the information requested, in the agencies' Statement of Undisputed Facts. *See* DE 30 ¶¶ 1, 21, 33. Appellants admitted that those details were accurate. *See* DE 86:6–8. Since the

details of Appellants' requests were not in dispute, there was no reason for the agencies to prove those details through additional evidence.

The only issues before the district court were whether the agencies complied with their obligations under FOIA to (1) conduct reasonable searches and (2) produce non-exempt responsive material. Copies of the agencies' correspondence with Appellants have no bearing on that determination when there is no dispute about the details of the requests. So the district court correctly concluded that the agencies were not required to include copies of the correspondence with their declarations. *See* DE 86:9–10.

Appellants' two "examples" of "the extent to which [the agencies] sought to prove the contents of the FOIA correspondence" fall short. Br. at 12. In the first example, Appellants claim there is a discrepancy in dates regarding when a particular FOIA request was submitted. *See* Br. at 12–14. Again, the details of the FOIA requests were not in dispute, so there was no need to prove that information with additional evidence. *See* DE 86:6–8. Appellants seem to suggest that the agencies are using the request receipt date to prove that it did not know Appellant Machado's alien number. *See* Br. at 12–14. But, as discussed *infra* Part III(a), the agency did not need to run an alien number search because the standard fingerprint search would yield the same results. So Appellants' first example does not show that

17

the agencies' declarations seek to prove any aspect of the FOIA request correspondence.

Appellants' second example also misses the mark. *See* Br. at 14–16. To show that the district court erred by finding that "DHS and USCIS were not required to file FOIA correspondence with the Holzer and Eggleston Declarations," Appellants claim that ICE's inconsistent responses to a FOIA request show that the Pineiro Declaration is not entitled to a presumption of good faith and thus why the Best Evidence Rule "must apply in such cases." Br. at 14, 17. In short, Appellants' example is about a different agency and a different declaration—so it is not relevant to the holding Appellants challenge here. In any event, as discussed *infra* Part II, such discrepancies in FOIA responses are "insufficient to show bad faith. . . . '[A] FOIA petitioner must do more than point to evidence that the information sought was at some previous time classified differently.'" *Khatchadourian v. Defense Intel. Agency*, 453 F. Supp. 3d 54, 80–81 (D.D.C. 2020) (quoting *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 81 (D.C. Cir. 1987)).

Although they try to cast their argument as something other than a hearsay objection to the declarants' statements, Appellants' argument is essentially that—a hearsay objection. The only case Appellants cite related to its discussion on hearsay is not a FOIA case. *See* Br. at 16 (citing *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013)). But, as Appellants acknowledge, hearsay *is* permissible in

18

an agency's declaration in a FOIA case. *See* DE 86:9; App. DE 19-1:13; Br. at 16. *See also SafeCard Serv., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (rejecting challenge to the "second-hand nature" of agency official's affidavit in FOIA case because official "was in charge of coordinating the SEC's … efforts, and therefore is the most appropriate person to provide a comprehensive affidavit"); *Meeropol v. Meese*, 790 F.2d 942, 951–52, 956 (D.C. Cir. 1986) (approving reliance on affidavit of agency official responsible for supervising search, though he necessarily relied on information from staff members who performed search). FOIA declarants may include statements in their declarations based on information they have obtained during their official duties. *See, e.g.*, *Thompson v. Exec. Off. for U.S. Att'ys*, 587 F. Supp. 2d 202, 208 n.4 (D.D.C. 2008) (crediting a declaration based on the declarant's "review of [the Defendant's] official files and records, [her] own personal knowledge, and the information [she] acquired in performing her official duties"); *Hornes v. Exec. Off. of U.S. Att'ys*, 2007 WL 1322088, at *4 (D.D.C. May 4, 2007) ("[the declarant's] statements are based on his personal knowledge, his review of [agency] official files and records and information that he acquired in performing [his] official duties … Declarations provided by similarly situated officials have long been recognized as acceptable in FOIA cases") (cleaned up).

19

Appellants' argument that an agency defending a FOIA lawsuit must include with its declaration a copy of its correspondence with the requestor is unsupported by law. There is no rule to that effect, nor is there a practical reason for such a rule where, as here, the details of a FOIA request are not in dispute. In sum, Appellants' argument misses the mark.

## II.    A presumption of good faith applies to the Holzer and Pineiro Declarations.

"Agency affidavits are accorded a presumption of good faith." *SafeCard Servs.*, 926 F.2d at 1200. "When reviewing courts consider good faith, they do so to determine only whether to credit agency affidavits detailing the reasons why an exemption applies or why a search was adequate." *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1180 (11th Cir. 2019).

Appellants argue that this presumption should not apply to the Holzer Declaration (on behalf of OBIM) and Pineiro Declaration (on behalf of ICE) because "both DHS and ICE withheld information [they] had previously released to [Appellants] and defended those withholdings as justified by law." Br. at 18. Appellants allege that, in 2013, DHS produced some of the material OBIM more recently produced in response to the FOIA request underlying Count 2, but with fewer redactions. *Id.* Appellants similarly cite inconsistent redactions in the same material they received from ICE in response to the FOIA request at issue in Count 4. *Id.* at 21–24.

20

To start, Appellants do not show that the material they claim DHS produced in 2013 (*see* DE 59-1:1–5) was produced by OBIM, or that the records allegedly produced in 2013 are the same as those produced more recently (*see* DE 59-2:1–8). Yet Appellants argue that "when DHS processed the records the second time, it expected litigation, and so it chose to take a hardline approach, claiming exemptions which were not applicable." Br. at 19. This claim is pure speculation. *See* DE 86:10 (finding Appellants' claim that "the later responses are more restrictive due to this litigation" to be "speculative[]").

Appellants baldly labeled the reasons for the redactions provided in the Holzer Declaration as "hollow" and claimed the cited exemptions were "not applicable." Br. at 19–20. But Appellants do not even try to show that the information redacted from the more recent release was not, in fact, exempt under FOIA. *See id.*; DE 86:10 ("[Appellants] do not challenge the propriety of the subsequent redactions."). Instead, Appellants argue that the agencies' willingness to defend redactions of previously released information shows bad faith. *See* Br. at 19–20.

The alleged differences in how "DHS" processed records in 2013 versus how OBIM processed records responsive to the FOIA request at issue—seven years apart—do not show agency bad faith. As discussed, it is not clear that OBIM produced the 2013 records. And even if OBIM did, such discrepancies in application of FOIA exemptions are unremarkable when "records are reviewed [] years apart,"

and such discrepancies are "insufficient to show bad faith. . . . [A] FOIA petitioner must do more than point to evidence that the information sought was at some previous time classified differently." *Khatchadourian*, 453 F. Supp. 3d at 80–81 (finding no agency bad faith where "FOIA exemptions were applied differently" to the same slide deck, which "is bound to happen when large numbers of records are reviewed three years apart"). Rather, a FOIA plaintiff must point to evidence that undermines or casts doubt on the correctness of the claimed exemption or the agency's explanation for the withholding. *Id.* (citing *Goldberg*, 818 F.2d at 80). Appellants have not done so.

Appellants' claim about ICE's inconsistent responses fails for similar reasons. Appellants provide a timeline of ICE's releases, note the inconsistent redactions across the releases, and then leap to the conclusion that the agency acted in bad faith. *See* Br. at 21–24. As discussed, such discrepancies are "insufficient to show bad faith." *Khatchadourian*, 453 F. Supp. 3d at 80. "Agencies should be encouraged to review records multiple times," and an agency "is entitled to reprocess records and change its mind." *Id.* And an agency's inconsistent approach to redaction of records is not evidence of bad faith if the agency subsequently corrects any errors. *See, e.g.*, *id.* at 79 ("DIA's inconsistent approach to the classification designations of several records is not evidence of bad faith because DIA has subsequently corrected any errors"). Here, ICE's final production released *all* the information that had been

inconsistently withheld in the earlier productions. *See* DE 54-1:3–4 ("[T]o make consistent the withholdings asserted on the two previous productions, ICE FOIA … released a third version, which contained the fewest withholdings and … removed any inconsistencies between the first two productions.").

At bottom, Appellants' theory that the agencies redacted additional information because of litigation is speculation. Appellants offer no evidence showing that OBIM's or ICE's FOIA units reviewed or redacted material differently because litigation was pending or anticipated. Plus, that theory defies common sense. It would be irrational for an agency that anticipates judicial scrutiny of its FOIA exemption assertions to purposefully assert inapplicable exemptions.

Thus, Appellants have not overcome the presumption of good faith that applies to the Holzer and Pineiro Declarations.

## III. OBIM performed an adequate search, reasonably calculated to identify responsive material.

Appellants challenge the adequacy of OBIM's search for responsive records related to Counts 1 and 2 in two ways. The FOIA requests underlying these counts are: (1) a November 14, 2018 request (2019-OBFO-05965) seeking "all information located in the Automated Biometric Identification System ('IDENT'), Arrival Departure Information System ('ADIS'), and other OBIM systems about Mr. Machado," DE 30 ¶ 1, and (2) a November 14, 2018 request (2019-OBFO-05969)

seeking "all information located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz," *id.*[7]

First, Appellants argue OBIM should have run an alien number search related to Count 1 because the agency's fingerprint search yielded no responsive records. Br. at 27–30. Second, Appellants argue that OBIM's search for documents responsive to Counts 1 and 2 was inadequate because OBIM was required to refer Appellants' requests to a different DHS component—CBP. Br. at 30–39. Both arguments are unavailing.

### a. OBIM did not need to conduct an alien number search because its standard fingerprint search would yield the same records.

Appellants argue that OBIM should have run an alien number search related to Count 1 because the agency's fingerprint search yielded no responsive records. Br. at 27–30. Contrary to Appellants' claim, any lack of alien number search did not render the search inadequate. *See* Br. at 30.

---

[7] IDENT is a "DHS-wide system for storage and processing of … biometric information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions and certain positions of public trust; and associated testing, training, management reporting, planning and analysis, or other administrative uses." DE 29-1 ¶ 8. "ADIS is a system owned and maintained by U.S. Customs and Border Protection (CBP), which consolidates data from a variety of systems to create a unique person-centric record with complete travel history. OBIM does not own or maintain the ADIS system of records." *Id.* ¶ 9.

The Holzer Declaration explains that a search using fingerprint cards—OBIM's standard practice—"will result in the location of any records relating to a subject in IDENT." DE 29-1 ¶ 11.[8] Although the Holzer Declaration states that OBIM is also able to search for a subject by alien number, it explains that such a search "would locate the same records" as a fingerprint search. *Id.* So a search using an alien number would be redundant where, like here, the requestor provided fingerprint cards.

Even if an alien number search could locate additional records, Appellants did not provide Appellant Machado's alien number in their FOIA request. *See* DE 74-2. Machado's request expressly contemplates a fingerprint search—as is OBIM's standard practice—not an alien number search. *See id.* Machado's counsel states in the request that, upon receipt of a request number from OBIM, he "will send … a completed fingerprint card for Mr. Machado." *Id.* Machado's counsel did not provide—or even offer to provide—Machado's alien number with his FOIA request.

Appellants argue that OBIM "should have asked for Machado's alien number or obtained it elsewhere" to conduct an adequate search. Br. at 29. But Appellants "point to no authority imposing this additional burden on OBIM." DE 86:12. And the case Appellants cite in support is inapt. *See* Br. at 29–30 (quoting *Kowalczyk v.*

---

[8] And, as discussed in the next subsection, OBIM did not search the ADIS system because it is no longer within OBIM's custody and control. DE 29-1 ¶ 9.

*DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996)). In *Kowalczyk*, the D.C. Circuit held that the FBI reasonably limited its search to its headquarters, where Kowalczyk sent his FOIA request, because the request did not enable the agency to determine that its New York field office had responsive records. 73 F.3d at 388–89. The court also noted that "it will be a rare case indeed in which an agency record contains a lead so apparent that the [agency] cannot in good faith fail to pursue it." *Id.* at 389. Appellants cherry-picked language from this quote to suggest that Machado's alien number was "a 'lead so apparent that the [agency] cannot in good faith fail to pursue it.'" Br. at 29 (quoting *Kowalczyk*, 73 F.3d at 389). But the court was referring to information within responsive documents the agency found. *See Kowalczyk*, 73 F.3d at 389. Unlike in *Kowalczyk*, Appellants do not argue that OBIM ignored information in responsive documents that would have led to discovery of more responsive documents. Plus, Appellants ignored the court's statement that an "agency is not required to speculate about potential leads" or "look beyond the four corners of the request for leads to … responsive documents." *Id.* The four corners of Machado's request only discussed fingerprints; it did not request searches based on his alien number. In any event, as the Holzer Declaration states, an alien number search "would locate the same records" as a fingerprint search. DE 29-1 ¶ 11.

Appellants also quote dicta from two other out-of-circuit cases to argue that it is "inherently unbelievable" that OBIM's search yielded no documents about

Machado and suggest that shows the search was inadequate. Br. at 28–29 (quoting *Weisberg v. DOJ*, 705 F.2d at 1351 and *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993)). But, as the Holzer Declaration explains, "IDENT is the only system of records owned and maintained by OBIM, where records regarding [Appellants] would be found." DE 29-1 ¶ 19. And OBIM reconducted its IDENT search after Appellants filed this lawsuit "to ensure that its initial responses were accurate." *Id.* ¶ 18. OBIM did not find any additional responsive records. *Id.*

Thus, Appellants have failed to show that OBIM's fingerprint card search was inadequate.

### b. Appellants' FOIA requests to OBIM were not "misdirected" and did not require forwarding.

Appellants next argue that OBIM's search for documents responsive to two FOIA requests was inadequate because OBIM was required to refer Appellants' requests to a different DHS component—CBP. *See* Br. at 30–39. The district court disagreed. It correctly held that "there is no basis for imposing a referral duty on OBIM" under DHS regulations, so Appellants' "argument that OBIM's search was inadequate with respect to [Appellants' first two causes of action] fails." DE 86:13.

The first request at issue (Count 1) sought "all information located in the Automated Biometric Identification System ("IDENT"), Arrival Departure Information System ("ADIS"), and other OBIM systems about Mr. Machado." *Id.* at 11 (quoting DE 30 ¶ 1). The second request (Count 2) sought "all information

located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz." *Id.* (quoting DE 30 ¶ 1). Appellants submitted these FOIA requests directly to OBIM. Along with asking OBIM to search IDENT for records, the requests asked OBIM to search ADIS, a records system that OBIM no longer maintains. The Holzer Declaration explains that OBIM did not search the ADIS system because it is no longer within OBIM's custody and control. DE 29-1:3. OBIM transferred custody and control of the ADIS system to CBP in January 2014—several years before Appellants submitted the FOIA requests at issue. *See* U.S. Dep't of Homeland Sec., *Arrival and Departure Information System—Information Sharing Update*, at n.1 (Mar. 7, 2014), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cpb-adis-update-20140305.pdf ("ADIS[] transitioned from ... Office of Biometric Identity Management (OBIM) to Customs and Border Protection (CBP) on Saturday, January 18, 2014"). And information about this transfer was publicly available when Appellants submitted their FOIA requests. *See, e.g.*, *id.* Plus, as Appellants highlight in their complaint, an OBIM representative informed them in November 2018 that OBIM "no longer 'owns' ADIS" and they would "need to submit a separate request to Customs and Border Protection for those records." DE 1 ¶ 22. *See* 6 C.F.R. § 5.3(a)(1) ("To make a request for DHS records, a requestor should write directly to the FOIA office of the component that maintains the records being sought.").

Yet Appellants argue that OBIM should have referred their requests to CBP pursuant to 6 C.F.R. § 5.4(c). *See* Br. at 32–33. That regulation provides: "Where a component's FOIA office determines that a request was misdirected within DHS, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s)." 6 C.F.R. § 5.4(c). That provision is inapplicable here. Appellants specifically addressed their FOIA requests to OBIM. And those requests sought records from IDENT, *see* DE 86:6–7, a records system OBIM *does* maintain. That Appellants' FOIA requests also sought records from a records system OBIM no longer maintains does not render the FOIA request "misdirected within DHS" as contemplated in 6 C.F.R. § 5.4(c).

Essentially, Appellants argue that OBIM was required to search not only the records in its custody and control at the time of the FOIA request but also at any time previously. Yet FOIA does not require an agency to search for records no longer in its possession. *See SafeCard Serv., Inc.*, 926 F.2d at 1202 ("Nor is the SEC required to recreate or to reacquire a document that it no longer has."). Nor does FOIA require one agency component to search the records system of another component not in its control. *Campbell v. U.S. Dep't of Justice*, 133 F. Supp. 3d 58, 65–66 (D.D.C. 2015) ("Having lodged his request with and filed his complaint against the [DOJ] Criminal Division, plaintiff may not now complain that records systems outside the control of this component were not searched."); *see Ellis v. Dep't of Justice*, 110 F. Supp. 3d

29

99, 105–106 (D.D.C. 2015) (finding request made directly to DOJ Criminal Division did not require systems within the FBI or EOUSA to be searched); *Smith v. U.S. Dep't of Justice*, 115 F. Supp. 3d 48, 54–55 (D.D.C. 2015) (agency "properly informed plaintiff that its statutory obligation extended to processing records in its custody and control at the time of the FOIA request" but it was not required to refer FOIA request to another component if it identified records from that component).

DHS's FOIA regulations state that, when responding to a FOIA request, "a component ordinarily will include only records in its possession as of the date that it begins its search" for them. 6 C.F.R. § 5.4(a). Appellants submitted their FOIA request to OBIM, not CBP. At the time of the requests, ADIS was no longer within OBIM's custody or control. So OBIM acted appropriately by limiting its search to records in its possession at the time of the request and even informed Appellants that it did not control ADIS. *See Hussain v. U.S. Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 265–66 (D.D.C. 2009) ("Plaintiff submitted his FOIA request to USCIS, not to ICE; defendant therefore acted appropriately when it limited its search to records in USCIS's possession").

Appellants cite a laundry list of documents that purport to show that DHS interpreted 6 C.F.R. § 5.4(a) differently before this case. Br. at 33–37. These citations are unpersuasive for myriad reasons. First, they all predate the version of the regulation at issue, so they could not show any difference in interpretation of a

30

regulation that did not then exist. *See id.* at 34–38 (citing a 2007 statute, 2007 statement of Sen. Kyl, 2012 DHS internal memorandum, 2014 and 2016 DHS FOIA annual reports, and 2015 DHS proposed rule). In addition, guidance documents, proposed rules, and statements of congressmen do not merit such weight when interpreting the plain meaning of an unambiguous regulation. *See, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("*Auer* deference is warranted only when the language of the regulation is ambiguous."); *id.* ("Interpretations such as those in opinion letters … policy statements, agency manuals, and enforcement guidelines[] all … lack the force of law."); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) ("[L]egislative history is not the law, … and once [Congress] enacts a statute we do not inquire what the legislature meant; we ask only what the statute means.") (cleaned up).

Even if these sources were relevant, they would not be persuasive because they can be read consistently with DHS's interpretation of § 5.4(a). For example, the cited documents explain that "misdirected" FOIA requests will be "rerouted" to the appropriate component. Br. at 35 (cleaned up); *see id.* at 37. But, as discussed, Appellants' FOIA requests were directed to and sought records from OBIM; the fact that the requests also sought records from a records system OBIM no longer maintains does not render the FOIA request "misdirected within DHS" as contemplated in § 5.4(c).

31

In sum, the district court correctly rejected Appellants' argument about a regulation-based referral obligation.

## IV. The agency properly withheld exempted material.

Appellants also challenge the agencies' withholding of certain information under FOIA's exemptions—specifically, Exemptions 3 and 5.[9]

### a. Exemption 3

The agencies properly relied on FOIA Exemption 3 when withholding records related to Counts 1, 2, 4, 7, 8, and 10. Appellants challenge the agencies' assertion of FOIA Exemption 3 (5 U.S.C. § 552(b)(3)) under § 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), to withhold information about Appellants' visa cancellations and revocations. *See* Br. at 39–50. Appellants ask the Court to ignore the greater weight of authority holding that such information is confidential under INA § 222(f)—and therefore exempt from disclosure under Exemption 3—and instead follow a couple of outlier district court decisions that visa cancellations and

---

[9] In the district court, Appellants also objected to the agencies' invocation of FOIA Exemptions 6, 7(C), and 7(E). *See* DE 86:13. But Appellants "withdr[e]w their objections" to the agencies' invocation of those exemptions because the magistrate judge "found against them on the threshold issues of Requested Correspondence and the presumption of good faith." *Id.* Nor did Appellants address these exemptions in their opening brief, so the issues are forfeited. *See* Br. at 39; *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000) ("Parties must submit all issues on appeal in their initial briefs."); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, the issue is abandoned.").

revocations are not protected. *See id.* at 40–41. Yet Appellants concede "that if the Court follows the case law of the D.C. Circuit and Second Circuit, they lose this argument." *Id.* at 41.

Exemption 3 allows the withholding of information prohibited from disclosure by another statute. 5 U.S.C. § 552(b)(3). The non-disclosure statute must:

> (A)(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
> (ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld.

*Id.* To use this exemption, the agency must show that: "(1) the statute invoked qualifies as an [E]xemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope." *Spadaro v. U.S. Customs and Border Protection*, 978 F.3d 34, 42 (2d Cir. 2020) (cleaned up); *see Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 740 (D.C. Cir. 1983). The agencies invoked INA § 222(f) as the non-disclosure statute allowing withholding of the information at issue under Exemption 3. DE 29:13–15, 18, 20–23 (citing the Holzer, Eggleston, and Stein Declarations). Section 222(f) is titled "Confidential nature of records" and states, in relevant part:

> The records of the Department of State and of diplomatic and consular offices of the United States *pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential* and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States except [in limited circumstances not relevant here].

INA § 222(f) (codified at 8 U.S.C. § 1202(f)) (emphasis added).

33

Courts have long recognized INA § 222(f) as a nondisclosure statute under Exemption 3. *See Medina-Hincapie*, 700 F.2d at 740–43 ("Every court which has considered the issue has concluded that section 222(f) qualifies as an Exemption 3 statute."); *see also Spadaro*, 978 F.3d at 43; *Wiener v. FBI*, 943 F.2d 972, 982 (9th Cir. 1991); *De Laurentiis v. Haig*, 686 F.2d 192, 193 (3d Cir. 1982). Section 222(f) satisfies clause (i) of Exemption 3 because it leaves the Secretary "no authority to disclose material to the public" (even though the Secretary may disclose those records to a court pursuant to a valid order.). *Medina-Hincapie*, 700 F.2d at 741. "In that sense the confidentiality mandate is absolute; *all* matters covered by the statute 'shall be considered confidential.'" *Id.* Section 222(f) also qualifies as a withholding statute under clause (ii) because it refers to particular types of matters to be withheld, specifically: "records … pertaining to the issuance or refusal of visas or permits to enter the United States." *Id.* at 742 (cleaned up). Section 222(f) applies not only to the information an applicant seeking to enter the United States provides, but also any "information revealing the thought-processes of those who rule on the application." *Id.* at 744. Thus, under FOIA Exemption 3 and INA § 222(f), responsive records about the issuance or refusal of a visa are exempt from disclosure. *Id.* at 741–42.

Appellants argue that records that pertain to the "cancellation or revocation" of a visa, rather than the "issuance or refusal" of a visa, are not subject to the confidentiality provision in INA § 222(f). *See* Br. at 40–41. The only circuit court to

address the question disagreed. *See Spadaro*, 978 F.3d at 45; *see also Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 178 (D.D.C. 2011) (holding that agency properly withheld records under Exemption 3 and INA § 222(f) because they "pertain[] to the issuance or refusal of a visa to enter the United States") (cleaned up); *Soto v. Dep't of State*, No. 14-604, 2016 WL 3390667, at *4 (D.D.C. June 17, 2016) (holding the agency properly withheld "records relating to [appellant's] visa revocation pursuant to Exemption 3"); *Vizcarra Calderon v. U.S. Dep't of Homeland Sec.*, Case No. 18-CV-764, 2020 WL 805212, at *3 (D.D.C. Feb. 18, 2020) (holding that INA § 222(f) protects records pertaining to visa revocations).

In *Spadaro*, a former visa-holder claimed the district court erred by permitting State to rely on FOIA Exemption 3 to withhold documents related to the revocation of his visa because the documents did not relate to the issuance or refusal of visas and were thus not protected from disclosure by INA § 222(f). 978 F.3d at 42. The Second Circuit disagreed, holding that documents that pertain to a visa revocation also "pertain to the issuance or refusal of visas" and thus are confidential under INA § 222(f) and subject to FOIA Exemption 3. *Id.* at 49.

The court explained that "[a]lthough the statutory language refers only to issuances or refusals on its face, the use of the word 'pertaining' makes clear that the reach of the statute is not so limited." *Id.* at 46. "Pertain" means "[t]o relate directly to; to concern or have to do with." *Pertain*, BLACK'S LAW DICTIONARY (11th ed.

35

2019); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (explaining that in the Federal Aviation Act the plain meaning of "relating to" "is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'") (quoting BLACK'S LAW DICTIONARY (5th ed. 1979)). So the Second Circuit "conclude[d] that the use of the broad phrase 'pertaining to' plainly gives the statute a wider reach than mere issuances and refusals." *Spadaro*, 978 F.3d at 46. *See, e.g.*, *Airaj v. United States*, No. CV 15-983, 2016 WL 1698260, at *8 (D.D.C. Apr. 27, 2016) ("The plain language of the statute, which encompasses records 'pertaining' to the issuance or refusal of visas, discourages such a strict interpretation of Section 222(f)."), *aff'd sub nom. Airaj v. U.S. Dep't of State*, No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017).

Interpreting the "broad phrase" "pertaining to" in its statutory context, the Second Circuit stated, "it is clear that the revocation of a visa pertains to the issuance of a visa because they are so closely related—namely, a revocation constitutes a nullification of that issuance." *Spadaro*, 978 F.3d at 46 (citing *Soto*, 2016 WL 3390667, at *3–4; *Vizcarra Calderon*, 2020 WL 805212, at *3 (relying on *Soto* to find that a document similarly entitled "Visa Revocation Services" was properly withheld under Exemption 3)). "Indeed, a visa can never be revoked without first being issued." *Id.* Put differently, "the issuance and revocation of visas represent two

sides of the same coin." *Id.* (quoting *Soto*, 2016 WL 3390667, at *4). "[B]y way of analogy," the Second Circuit explained "that a refund receipt for a product would be a document 'pertaining to' the purchase of that product." *Id.* The court concluded the "question here is one of pertinence, not equivalence" and "h[eld] that the plain language of INA § 222(f) encompasses revocation documents." *Id.*

Appellants claim the Second Circuit's interpretation of "pertaining to" means that "every document in the State Department would be exempt because they all relate *in some way* to visa issuances and denials." Br. at 44. Not so. The Second Circuit made clear which documents would fall under INA § 222(f): "[W]e agree with courts that have cautioned that INA § 222(f) cannot be used 'to withhold information that was not gathered, used, nor is being used to determine an actual past or pending visa application.'" *Spadaro*, 978 F.3d at 44 (cleaned up).[10]

Appellants urge this Court to ignore *Spadaro* and the district court decisions it cites and instead follow the outlier district courts holding that INA § 222(f) does not protect records pertaining to visa revocations. *See* Br. at 41–43 (citing *El*

---

[10] Appellants also "emphasize[d] that *Spadaro* is *not a Florida case*," so its reasoning should be rejected. Br. at 45. Appellants included a long tangent about the Florida Supreme Court's judicial philosophy, which is irrelevant here. *See id.* at 45–49. The final arbiter of state law is the state supreme court. *See In re Cassell*, 688 F.3d 1291, 1292 (11th Cir. 2012). But this is a federal case about the interpretation of federal statutes; there is no reason to involve state law. In any event, the government's analysis focuses on the plain meaning of the statutory text, and the *Spadaro* court's analysis is persuasive.

*Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285 (D. Conn. 2008), *abrogated by Spadaro*, 978 F.3d at 34, and *Mantilla v. U.S. Dep't of State*, No. 12-21109-CIV, 2012 WL 4372239, at *3–4 (S.D. Fla. Sept. 24, 2012)). Indeed, Appellants block quote *El Badrawi*'s reasoning at length. *See* Br. at 42–43. The *El Badrawi* court focused on specific statutory terms and invoked the canon of *expressio unius* to reason that "while both 'issuance' and 'refusal' of visas are explicitly mentioned, 'revocation' is not." 583 F. Supp. 2d at 311. So the court held that "records pertaining to visa revocation are not protected under the INA." *Id.* The court also found that the INA's legislative history supported its conclusion that Exemption 3 does not cover visa revocation records. *Id.* at 312.

As Appellants concede, the Second Circuit abrogated *El Badrawi* with its decision in *Spadaro*. Br. at 43. In doing so, the court explained why the reasoning in *El Badrawi*—which Appellants parrot—is unpersuasive. *See Spadaro*, 978 F.3d at 45–49. To begin, reliance on the canon of *expressio unius* is misplaced because the relevant statutory language is not ambiguous. *Id.* at 47 (citing *Power Auth. v. M/V Ellen S. Bouchard*, 968 F.3d 165, 170 (2d Cir. 2020) ("Only if the text is ambiguous do we 'turn to canons of statutory construction for assistance in interpreting the statute.'").

And, even if the text were ambiguous, the statutory structure supports the agencies' interpretation. "[A] statute is to be considered in all its parts when

38

construing any one of them." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998). As multiple courts have recognized, "although INA § 222(f) appears in a section of the INA entitled 'Application for visas,' 8 U.S.C. § 1202, the subsection of the INA that provides for the revocation of visas, 8 U.S.C. § 1201(i), appears in a section of the Act entitled 'Issuance of visas,' *see* 8 U.S.C. § 1201." *Spadaro*, 978 F.3d at 47 (cleaned up). So even if INA § 222(f) were ambiguous, Congress's use of "the title 'Issuance of visas' to cover not just the initial issuance of the visa, but also intertwined acts such as visa renewals, non-issuances, and revocations" "certainly buttresse[s]" § 222(f)'s "application to revocations." *Id.* (citing 8 U.S.C. § 1201(c), (g), (i)).

In addition, later amendments to the INA are not relevant to congressional intent about the statutory language at issue. The Second Circuit "emphasize[d] the Supreme Court's 'oft-repeated warning that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Id.* (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980)) (cleaned up). "That hazard is magnified where, as here, the subsequent amendments did not relate to the particular provision at issue and were done for an entirely different purpose." *Id.* The amendments *El Badrawi* and Appellants cite "were enacted in 2004 as part of the Intelligence Reform and Terrorism Prevention Act, which sought to 'reform the intelligence community and the intelligence and

39

intelligence-related activities of the United States [g]overnment.'" *Id.* (quoting Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004)). "[T]he fact that Congress treated revocation and issuance of visas differently for the purposes of reforming the existing revocation and issuance processes says nothing about Congress's earlier decision to treat revocations within the umbrella of visa issuance in § 1201, much less about the congressional decision to make records regarding visas confidential in § 1202." *Id.* at 47–48 (cleaned up). At bottom, "these subsequent amendments have no weight in discerning congressional intent on the issue" at hand. *Id.* at 48.

Ultimately, this Court should join the Second Circuit and numerous district courts in holding that INA § 222(f) applies to information pertaining to the cancellation or revocation of a visa because it applies to the issuance or refusal of one.

In short, the agencies properly relied on Exemption 3 when withholding the material at issue.[11]

---

[11] Appellants argue that even if the Court agrees with the government, it should not affirm the district court's grant of summary judgment on these counts and should instead order in camera review or a segregability analysis to ensure that the records for which the agencies invoked Exemption 3 "are actually, fully about Visa revocations and not something merely *touching* on visa revocations." Br. at 50. That is not the standard. "Pertaining to" is a broad phrase that in no way limits its statutory reach to documents "*fully* about Visa revocations." *Id.* (emphasis added). Plus, the agencies considered segregability when responding to Appellants' FOIA requests. *See, e.g.*, DE 29-2:8 (USCIS "considered whether any information could be segregated and released without causing a foreseeable harm to the agency" and "determined that no further segregation of meaningful information in the withheld

**b.    Exemption 5**

Appellants also challenge the sufficiency of State's justification for asserting FOIA Exemption 5 (5 U.S.C. § 552(b)(5)) to withhold communications between State officials and attorneys about visa applications and other deliberative communications related to Appellants' visa adjudications. *See* Br. at 50–52. Contrary to Appellants' assertions, State properly relied on FOIA Exemption 5 when withholding records related to Count 8.

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). Exemption 5 includes documents protected by the attorney-client and work product privileges, *see Miccosukee Tribe*, 516 F.3d at 1262–63, as well as the deliberative process privilege, *see Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004).

---

documents … would be possible without disclosing information that warrants protection under the law."); DE 74-1:8 (State completed a "line-by-line review of all the records related to" the FOIA requests at issue and "ensured that any reasonably segregable, non-exempt information within these records was disclosed and determined that no further information from withheld or partially withheld responsive documents could be released without revealing information warranting protection under the law."). "And *in camera* review should be used in only the rare case" because it "undercuts the traditional adversarial theory of judicial dispute resolution." *Broward Bulldog*, 939 F.3d at 1179 (cleaned up). This is not such a case.

41

Here, State withheld certain information under the attorney-client privilege and deliberative process privilege. DE 74-1 ¶¶ 16–17. The Second Stein Declaration explains that the information withheld under the attorney-client privilege reflects "communications to [State] Department attorneys for the purpose of receiving legal advice or the product of attorneys providing legal advice to Department officials for the purpose of [Appellants'] visa adjudications." *Id.* ¶ 16. The Declaration further explains that information withheld under the deliberative process privilege reflects internal State communications that are pre-decisional and deliberative with respect to evaluating Appellants' visa adjudications and handling communications regarding the same, including certain legal deliberations. *Id.* ¶ 17. And the Declaration states that disclosure of such deliberations would impede State's ability to engage in candid evaluations of visa issues and adjudications. *Id.* This information is thus exempt from release under Exemption 5 under the attorney-client privilege and the deliberative process privilege.

Appellants claim State's privilege assertions in the Second Stein Declaration are "conclusory" without articulating what more they think should have been included. Br. at 52. "[A]n agency's response must logically fit the particular facts and circumstances of the case," but "[t]here are only so many ways an agency can claim the same exemption." *Broward Bulldog*, 939 F.3d at 1180 (cleaned up). And, as the Stein Declaration explained, "[p]roviding more detail would reveal legally

42

privileged information about the nature of the legal advice sought and offered on specific visa adjudications." DE 74-1 ¶ 16.

Appellants also make much ado about the fact that State previously invoked the attorney work-product doctrine over the information for which it now asserts the deliberative process privilege. *See* Br. at 50–52. As the government explained in the district court, the first assertion was "inadvertent." DE 74-1 ¶ 17. And State has properly invoked the deliberative process privilege.

In sum, the agency properly relied on Exemptions 3 and 5 when withholding material.

## V.    The State Department adequately explained the harm that would occur because of disclosure.

Finally, Appellants fault the district court for not specifically addressing the issue of "foreseeable harm" that could result from disclosing the information at issue. *See* Br. at 53–55.

"To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption,' *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). In its analysis of the agencies' application of Exemption 5, the district court cited and briefly responded to Appellants' argument about possible harm. *See* DE 86:16–17. But even if that were insufficient, it does not

43

warrant reversal. This Court "can affirm on any basis supported by the record, regardless of whether the district court decided the case on that basis." *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020). And the record here shows that the State Department adequately explained the harm that would occur because of disclosing the information, including information withheld under FOIA Exemption 5. The Second Stein Declaration explains that it withheld information about "Plaintiffs' visa adjudications" under Exemption 5 because:

> [d]isclosure of this information would impede the ability of responsible Executive Branch officials to formulate recommendations regarding, and effectively execute, visa adjudications by inhibiting candid discussion and the expression of viewpoints and judgments regarding said adjudications.

DE 74-1 ¶¶ 16–17. The agency "specifically focused on the information at issue … and it concluded that disclosure of that information would chill future internal discussions." *Machado Amadis*, 971 F.3d at 371 (cleaned up). The Stein Declaration adequately explained the foreseeable harm that would—not could—result from a disclosure of intra-agency communications among agency officials deliberating issues related to Appellants' visa applications.

In short, the State Department adequately explained the harm that would occur because of disclosure.

44

**Conclusion**

For these reasons, the district court's decision should be affirmed.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By:    /s/ *Brittany Bull Panuccio*
       Brittany Bull Panuccio
       Assistant United States Attorney
       500 S Australian Ave., Ste. 400
       West Palm Beach, FL 33401
       (561) 209-1053
       Brittany.Panuccio@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Of Counsel

## Certificate of Compliance

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 10,716 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements for FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2016, 14-point Times New Roman.

## Certificate of Service

I hereby certify that four copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 19th day of December 2023, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on Kelly B. McClanahan, Counsel for Appellant.

/s/ *Brittany Bull Panuccio*
Brittany Bull Panuccio
Assistant United States Attorney

*ab*