No. 23-10073

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

IVAN JIMENEZ, *et al.*,

*Plaintiff-Appellants*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendant-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
No. 19-21546-cv-DPG (Darrin P. Gayles, J.)

_____

**APPELLANTS' REPLY BRIEF**

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellants*

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT (CIP)**

Jiménez *vs.* DHS    Appeal No. 23-10073

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

*(please type or print legibly)*:

Bahr, David A.

Department of Homeland Security

Department of State

Eggleston, Jill A.

Fajardo Orshan, Hon. Ariana

Gayles, Hon. Darrin P.

Gonzalez, Juan Antonio

Holzer, James V. M. L.

Immigration and Customs Enforcement

Jiménez, Iván

Rev.: 12/20

Jiménez v. DHS, No. 23-10073

Knopf, Andrew Franklin

Lapointe, Markenzy

Machado, Juan

Matzkin, Daniel

McClanahan, Kelly B.

Muñoz, José

National Security Counselors, Inc.

Office of Biometric Identity Management

Otazo-Reyes, Hon. Alicia M.

Panuccio, Brittany

Paul Knopf Bigger PLLC

Perez, Karina

Pineiro, Fernando

Raurell, Carlos

Rubio, Lisa Tobin

Stein, Eric F.

United States Citizenship and Immigration Services

Vásquez, Miguel

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ....................................................................1

ARGUMENT ...........................................................................................2

    I.    PRELIMINARY ISSUES ..........................................................2

    II.    STANDARD OF REVIEW .......................................................5

    III.    REQUEST CORRESPONDENCE MUST BE FILED ...............7

    IV.    APPELLANTS OVERCAME THE PRESUMPTION OF GOOD
          FAITH IN THE HOLZER AND PINEIRO DECLARATIONS..13

    V.    DHS SHOULD HAVE CONDUCTED AN ALIEN NUMBER
          SEARCH ...................................................................................15

    VI.    DHS WAS REQUIRED TO REFER REQUESTS TO CBP .......17

    VII.    PROPRIETY OF CLAIMED EXEMPTIONS ...........................17

CONCLUSION .......................................................................................18

## <u>TABLE OF CITATIONS</u>

**Cases:**                                                                                    **Pages**

*\*Animal Legal Defense Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016)...............6

*Church of Scientology v. Department of the Army*, 611 F.2d 738 (9th Cir. 1979) ...............................................................................................6

*Khatchadourian v. DIA*, 453 F. Supp. 3d 54 (D.D.C. 2020)...........................14

*Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ...............................................................................................6

*News-Press v. DHS*, 489 F.3d 1173 (11th Cir. 2007) .....................................5

*Stephenson v. IRS*, 629 F.2d 1140 (5th Cir. 1980).........................................6

**Statutes and Rules:**

11th Cir. I.O.P. 5...............................................................................................7

## SUMMARY OF ARGUMENT

Both the Federal Rules of Civil Procedure and the Federal Rules of Evidence require that FOIA correspondence must be filed with agency declarations supporting a motion for summary judgment if those declarations seek to characterize the correspondence. Even if that infirmity was overcome, the Holzer and Pineiro declarations are no longer entitled to the presumption of good faith. Because of these two problems, as well as DHS's failure to follow its own referral regulation and its refusal to conduct a search using Machado's alien number, the District Court erred when it concluded that DHS had met its burden of showing that it had performed adequate searches for records responsive to Counts 1, 2, 4, and 5. The District Court also erred when it misapplied § 222(f) of the Immigration and Nationality Act to information about visa revocations and cancellations and concluded that Appellees had properly withheld information under Exemption (b)(3). The District Court also erred in concluding that State had met its burden of showing that it had properly withheld information responsive to Count 8. Lastly, the District Court erred in not adjudicating the question of whether Appellees had released all reasonably segregable information.

When given a chance to refute these arguments, Appellants instead primarily attempted to reframe the issues rather than engage in a defense of the District Court's actions. To the extent that Appellants do offer arguments in the proper

context, they have failed to refute any of Appellants' points, and this leaves this Court with several alternative options for holding that the District Court erred and remanding the case to the District Court for proper adjudication on the merits, with or without specific instructions.

## **ARGUMENT**

For ease of reading and to avoid unnecessary repetition, Appellants will, for the most part, only address the most problematic issues with Appellees' arguments, in roughly the order in which they are presented in Appellees' Brief.[1]

## I.    PRELIMINARY ISSUES

For uncertain reasons, which appear to be geared towards obtaining a litigation advantage, Appellees mischaracterize the facts or the law or attempt to create confusion where there is none in three places in their Statement of the Case section. Appellants will therefore briefly address such instances here.

First, in a transparent attempt to reframe the dispute over the Exemption (b)(3) claims regarding visa revocation records, Appellees begin their entire discussion with an intentionally ambiguous statement: "This case is about

---

[1] Appellants' decision to follow the course of Appellees' Brief should not be interpreted as a concession that Appellees have properly framed the issues; it is solely to assist the Court in matching Appellees' arguments with Appellants' counterarguments. Similarly, Appellants have elected not to repeat themselves unnecessarily, so if they do not address an argument raised by Appellees herein, that is simply an indication that they stand behind the corresponding argument in their Brief.

Appellants' Freedom of Information Act ("FOIA") requests to multiple government agencies for records *related to Appellants' visa adjudications*." (Br. for the United States, Dkt. #47, at 1 (filed Dec. 19, 2023) [hereinafter Gov't Br.] (emphasis added).) The records at issue in this case pertain to visa *revocations*. While a revocation might *colloquially* be considered a type of adjudication, the *legal* distinction concerns one of the key disputes in this case: whether a statute that allows the Department of State ("State") to withheld information about the *issuance or refusal* of visas also allows it to withhold information about the *revocation* of visas. By using the generic term "adjudications," Appellees seek to plant the idea in the Court's mind that "all adjudications are the same," when that is simply not the case under the law.

Appellees' next misrepresentation pertains to which office exactly processed requests submitted to the Department of Homeland Security ("DHS") Office of Biometric Identity Management ("OBIM") and why. Appellees state that "the agencies proffered the Declarations of James V. M. L. Holzer *on behalf of OBIM*" (*id*. at 4), and later attempt to create confusion about the distinction between Dr. Holzer's office and OBIM (*id.* at 21). To be clear, Holzer *does not work for or speak for OBIM*. He is the Deputy Chief FOIA Officer for the DHS Privacy Office, which is a completely different component from OBIM. OBIM FOIA staff are physically located in the Privacy Office, DE 29-1 at 2, but remains a separate

3

component, such that a formal Memoranda of Agreement had to be executed between the Privacy Office and OBIM due to the "decentralized nature of the department's FOIA processes." *Id.* Under this agreement, OBIM FOIA requests are processed by staff (it is unclear if they are Privacy Office staff or OBIM staff) physically housed in the physical space of the Privacy Office, but a Privacy Office official—Holzer—issues declarations about their activities. *Id.*

Because Appellants attempted to be as accurate as possible about this matter in their Brief, Appellees now try to create a false distinction between DHS and OBIM: "The alleged differences in how 'DHS' processed records in 2013 versus how OBIM processed records responsive to the FOIA request at issue—seven years apart—do not show agency bad faith." (Gov't Br. at 21.) Not only does the distinction Appellees are trying to draw not exist, even if it did, they *get it backwards*: the DHS Privacy Office was not involved at all in the 2013 processing, while it *was* involved in the 2020 processing.[2] As Appellants explained, the exact nature of this relationship is relevant not only to the good faith issues, but also to the need for agency correspondence and whether it was reasonable for DHS to

---

[2] Appellees also curiously refer to "USCIS' Immigration and Customs Enforcement" (*id.*) even though the United States Citizenship and Immigration Services ("USCIS") and Immigration and Customs Enforcement ("ICE") are two separate DHS components, but Appellants assume that this is simply a grammatical mistake.

4

conduct an alien number search. (Appellants' Op. Br., Dkt. #39, at 12-14 (filed Sept. 20, 2023) [hereinafter Jiménez Br.].)

The third significant error in this preliminary section pertains to one of the issues on appeal. Appellees state that "Appellants argue the district court erred by 'holding that Appellees performed adequate searches for records responsive to the FOIA requests at issue in Counts 1, 2, 4, and 5' because the agencies did not do an alien number search in addition to the standard fingerprint search." (Gov't Br. at 9.) The alien number versus fingerprint search issue pertains only to Count 1 (Jiménez Br. at 27), and Appellees' attempt to imply that such a minor and fact-specific issue is the core of four separate counts in inexplicable but appears designed to again minimize the significance of the issues in controversy.

## II.    STANDARD OF REVIEW

Appellees correctly note the two-step standard of review in FOIA cases, in which the court reviews questions of law *de novo* but questions of fact for clear error. *News-Press v. DHS*, 489 F.3d 1173, 1187-89 (11th Cir. 2007). While Appellants do not dispute that this is currently the standard in this Circuit, they respectfully encourage the Court to follow the recent lead of the Ninth Circuit in changing this outdated standard, which was explicitly based on a D.C. Circuit ruling that the D.C. Circuit has since reversed on this count. Rather than restating the Ninth Circuit's extensive discussion of this matter, Appellants will simply state

that they adopt the complete reasoning of the Ninth Circuit's *en banc* decision in *Animal Legal Defense Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016), and encourage this Court to do the same.

Most relevantly for this case, the Ninth Circuit highlighted the fact that this two-step test was first articulated in that Circuit in *Church of Scientology v. Department of the Army*, 611 F.2d 738 (9th Cir. 1979), and that that court "borrowed the 'clearly erroneous' standard from the D.C. Circuit." 836 F.3d 987 at 989 (citing *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 n.13 (D.C. Cir. 1977)). It then explained that "the D.C. Circuit has long since abandoned this standard and, instead, now reviews summary judgment decisions in FOIA cases *de novo*, as in all other cases," adding that this is also the practice in the First, Second, Sixth, Eighth, and Tenth Circuits. *Id.*

As explained in *News-Press*, this Circuit's case law on this point was first articulated in *Stephenson v. IRS*, 629 F.2d 1140 (5th Cir. 1980). 489 F.3d at 1187. *Stephenson*, critically, borrowed the standard directly from the Ninth Circuit's *Church of Scientology* decision. 629 F.2d at 1144. Since the exact two opinions from which this Circuit's case law drew this standard have now been reversed by

6

their respective circuits, this Court should accordingly hold that the appropriate standard of review in FOIA cases is *de novo*, with no exceptions.[3]

## III.    REQUEST CORRESPONDENCE MUST BE FILED

Appellees' response to Appellants' arguments on this issue continue to rely on deflection and misdirection, while missing—either ignorantly or by design—the actual point of the arguments. First, Appellees again fixate on the Recommendation's observation that Appellants can "point to no such requirement for agency declarations in the FOIA case law." DE 86 at 10. This statement is both entirely accurate and entirely irrelevant. FOIA case law does not contain any such requirement. FOIA *itself* does not contain any such requirement. However, the Federal Rules of Civil Procedure ("FRCP") and the Federal Rules of Evidence ("FRE") *do*. Unless and until an exception to FRCP 56 and FRE 1002 is promulgated which states that those rules shall not apply in FOIA cases, *they still apply*. That is the beginning and the end of the argument. FOIA litigation is still civil litigation, and civil litigation has rules.

Appellees then attempt to minimize the relevance of the missing correspondence by stating that "there was no dispute about the details of

---

[3] Appellants understand that such an action requires an *en banc* decision, and so they respectfully ask this Court to do as the Ninth Circuit panel did and state the reasons for making this change while simultaneously requesting a poll. *See* 11th Cir. I.O.P. 5 (accompanying Fed. R. App. Proc. 35).

Appellants' various requests." (Gov't Br. at 16-17.) This is also accurate and irrelevant. There does not have to be a dispute about the details of the *requests* for there to be a dispute about the details of the *responses*. Even accepting Appellees' logic at face value, it would only mean that they did not need to file copies of the original request letters as exhibits, since only those letters were limited to the details of the requests. They would still need to file copies of everything else.

Appellants have already provided examples of the types of assertions that need to be supported by the original documents, and Appellees have not offered any arguments that those assertions are not being *disputed*; they have only argued that they are not *important*. For instance, they argue that "Appellants claim there is a discrepancy in dates regarding when a particular FOIA request was submitted," then conclude that it is not important because "the details of the FOIA requests were not in dispute." (*Id.* at 17.) However, in addition to misrepresenting the nature of the dispute, which is over when the request was *received*, not what date was *written* on it, this argument still misses the point. In that particular instance, the important fact was that the Holzer Declaration implied by omission that the agency did not receive the request until May 2019 even though it was dated November 2018, which is not accurate; the agency received and acknowledged it in November 2018, DE 75-3, and did not *forward* it to Holzer's office until May 2019. The only reason that this fact is in the record is because Appellants happened

to have a copy of the November 2018 response letter, but plaintiffs do not bear the burden of supporting an agency's declaration because that agency does not want to support its own representations with original documents as required by the rules of evidence.

The most telling aspect of Appellees' argument on this point, as exemplified in their next contention that Appellants' second dispute "is about a different agency and a different declaration—so it is not relevant to the holding Appellants challenge here" (Gov't Br. at 18), is that it mischaracterizes both Appellants' point and Appellees' own argument. Appellees argue that agencies *never* have to file FOIA correspondence because the Best Evidence rule *does not apply*, but to make that argument they cannot limit themselves to the specific correspondence in this case. If a Federal Rule of Evidence applies to no FOIA cases, then it applies to *no FOIA cases*. In order to refute such an argument, all a party needs to do is demonstrate that it applies to *some* FOIA cases. Once the Court accepts that FOIA cases are not categorically exempt from the rule, the question becomes whether it applies to *this* FOIA case, which is a question of fact that the District Court did not reach. At that point, the Court can either hold that it applies to this FOIA case based on the evidence in the record, or it can remand the case to the District Court to make such a determination. Even if the Court decides that Appellants have not definitively shown that Rule 1002 applies to *this* correspondence and *these*

declarations, it cannot hold that Appellants have not shown that the rule applies to *some* correspondence and *some* declarations, and with that ruling the District Court's entire reasoning is vacated.

Regarding Appellees' final argument that Appellants are "essentially" making a hearsay objection (*id.*), Appellants will not further belabor the point that the rules of evidence are separate and one cannot violate one with impunity simply by following another. Appellants will, however, point out the Government's consistent understanding of the Best Evidence rule in FOIA cases when correspondence is involved, in its own words:

- "Defendant respectfully refers the Court to Defendant's letter as the best evidence of its contents." Answer, Dkt. #4, ¶ 134 (filed Nov. 9, 2020), *Legal Eagle, LLC v. Council of the Inspectors Gen. on Integrity & Efficiency*, No. 20-2896 (D.D.C.).

- "Defendant respectfully refers the Court to the FBI's response, which is the best evidence of its contents." Answer, Dkt. #11, ¶ 18 (filed Aug. 18, 2021), *Musgrave v. DOJ*, No. 21-554 (D.D.C.). *See also id.* ¶¶ 22, 33, 40, 51 (same, pertaining to the Federal Bureau of Investigation, the Department of Justice ("DOJ") Executive Office of United States Attorneys, and the DOJ Criminal Division).

- "DOJ OIG respectfully refers the Court to the acknowledgement letter, which is the best evidence of its contents." Answer, Dkt. #8, ¶ 20 (filed Oct. 4, 2021), *Brown v. CIA*, No. 21-1991 (D.D.C.). *See also id.* ¶¶ 68, 72 (same, pertaining to the Department of Defense Office of the Inspector General).

- "DHS . . . refers the Court to the cited letter [sent by DHS to the requester] for the best evidence of its contents." Defs.' Answer to Pls.' Compl., Dkt. #5, ¶ 33 (filed May 17, 2023), *Cury v. Dep't of State*, No. 23-499 (W.D. Wash.).

These examples are simply a representative sample drawn from the undersigned's own recent litigation files, and Appellants are confident that should the Court review other FOIA cases in this Circuit and across the country, it would find consistent reference to the Best Evidence rule in agency filings when an allegation pertains to a piece of correspondence sent from the agency to the requester. For instance, Appellees' trial counsel himself filed a response to a Statement of Undisputed Material Facts in 2019 in which he wrote, "Defendants do not dispute that the FBI responded to Plaintiff via letter on or about June 27, 2018, regarding FOIPA Request No. 1409489-000. The June 27, 2018 letter is the best evidence of its contents," Defs.' Resp. Pl.'s "Statement of Undisputed Mat. Facts," Dkt. #42, ¶ 11 (filed Aug. 16, 2019), *Villanueva v. DOJ*, No. 19-23452 (S.D. Fla.),

11

and he repeated this same phrasing throughout the filing for various documents, including three separate letters sent from agencies to the plaintiff and four pieces of correspondence sent by the plaintiff to the agencies, including FOIA requests and appeals. *Id.* ¶¶ 10, 11, 12, 15, 21, 22. Less than two months ago, DHS wrote, "Defendants ICE and DHS CRCL respectfully refer the Court to the July 12, 2022, FOIA request as the best evidence of its content." Answer Pls.' Am. Compl., Dkt. #31, ¶ 70 (filed Nov. 24, 2023), *Doe v. ICE*, No. 23-3205 (N.D. Ga.).

A brief survey of other recent cases just from this Circuit show that many agencies will refer to the purpose of the rule without using the phrase "best evidence," but their invocation of the rule is apparent nonetheless. *See*, *e.g.*, Answer Compl. for Inj. & Decl. Relief, Dkt. #8, ¶¶ 6, 18, 20, 22, 24, 26, 31, 37 (filed Sept. 29, 2023), *SE Legal Fdn., Inc. v. Nat'l Archives & Records Adm.*, No. 23-3819 (N.D. Ga.) (referring to various pieces of correspondence from agency to requester "for a full and accurate statement of its contents"); Def.'s Ans. & Defenses to Compl. Decl. & Inj. Relief, Dkt. #15, ¶¶ 17, 21, 22, *State of Fla. v. DOJ*, No. 23-583 (M.D. Fla.) (same). It is therefore apparent that both DOJ and DHS understand that copies of FOIA correspondence are considered the best evidence of their contents, and their arguments to the contrary in this case are made in bad faith.

For a reason that Appellants do not know, Appellees did not file an Answer in this case, but had they done so, it is highly likely that it would have incorporated the same language. In short, Appellees are now asking this Court to allow them to wield the Best Evidence rule when responding to allegations but not to be bound by it when they do not wish to be, and this Court should reject such a transparent double standard.

## IV.    APPELLANTS OVERCAME THE PRESUMPTION OF GOOD FAITH IN THE HOLZER AND PINEIRO DECLARATIONS

Appellees' response to Appellants' arguments on this point relies equally heavily on misrepresentations and attempts to obfuscate the record. For example, Appellees argue that "Appellants do not show that the material they claim DHS produced in 2013 . . . was produced by OBIM, or that the records allegedly produced in 2013 are the same as those produced more recently." (Gov't Br. at 21.) Appellants clearly refuted this argument before the District Court and will simply quote that discussion herein:

> DHS again attempts to cast doubt on Plaintiffs' evidence, stating, "As an initial matter, Plaintiffs do not establish that the material they claim was produced by DHS in 2013 (Sealed Ex. A to Plaintiffs' Response) was produced by OBIM." This complaint ignores the record. The letter dated 30 July 2013, which Plaintiffs' [*sic*] attached as Ex. Q, is clearly the FOIA response letter identifying this release—each page of which is dated 17 July 2013 (see Sealed Ex. A). As for Defendants' second complaint that Plaintiffs have not proven "that the records allegedly produced in 2013 are, in fact, the same as those produced more recently," the Court is capable of seeing that for itself by comparing Sealed Ex. A and Sealed Ex. B. However, should it not be convinced,

> it should simply instruct Defendants to provide it with an unredacted copy of both releases *in camera* and *ex parte*, at which point it will be able to clearly see the frivolousness of this objection.

DE 75 at 3-4 (citations omitted) (citing DE 59-1, DE 61-6, and DE 59-2, respectively). Appellants do not understand why Appellees continue to make this argument, but it is patently false.

After attempting to sow confusion about the relationship between DHS and OBIM, as discussed above, Appellees then attempt to analogize this case to cases in which agencies released more redacted records first and then released less redacted records later, which is not the case here. Moreover, the emphasis on an agency being "entitled to reprocess records and change its mind" (Gov't Br. at 22, quoting *Khatchadourian v. DIA*, 453 F, Supp. 3d 54, 80 (D.D.C. 2020)) only means that a court should not punish an agency for releasing information that it previously withheld; it does *not* mean that an agency can *release* information and then *withhold* it later, which is expressly prohibited by the well-established prior official disclosure doctrine.

For the purposes of this case, however, the evidence of bad faith is not that DHS and ICE released information several years ago and then withheld it now; that could arguably be explained by the types of discrepancies that Appellees refer to. The evidence of bad faith is that, once these requests became part of litigation, senior officers of DHS and ICE issued sworn declarations testifying under oath

14

that the redacted information must be withheld, either with full knowledge that it had been previously officially released *by their offices* or with a complete disregard for whether it had been previously officially released which led them to give false testimony without checking to see if it was accurate. As for the claim that ICE should suffer no consequences for this false testimony because it "correct[ed] [the] errors" (Gov't Br. at 22-23), Appellees ask too much when they ask the Court to find that providing false testimony under oath is instantly forgiven if the declarant calls it an "error" after being impeached, which is effectively what happened here. Moreover, as of this filing, Appellees *still* refuse to acknowledge that ICE sent a second release on 9 June 2020, DE 61-1, continuing to cite to the very declaration that calls the fourth release the third release and refers to the first and third releases as "the first two productions." (*Id.* at 23 (quoting DE 54-1 at 3-4).) These declarations, which Appellees refuse to recant even before this Court, are no longer entitled to a presumption of good faith.

## V.    DHS SHOULD HAVE CONDUCTED AN ALIEN NUMBER SEARCH

Appellees' response on this count rises or falls on the contention that searching by alien number "'would locate the same records' as a fingerprint search." (*Id.* at 25 (quoting DE 29-1 ¶ 11).) If the Court credits this unsupported statement from Holzer, then Appellants lose the argument. However, if the Court decides that such a categorical statement requires some quantum of evidence

15

besides a conclusory declaration, then Appellants win the argument. This Court should find that Appellants have the better of this argument, for two reasons. First, as discussed above, the Holzer Declaration should not be entitled to a presumption of good faith, and without that presumption, more evidence is needed to prove such an allegation. Second, if any search of the system by alien number would yield the same results as a search using a fingerprint card, then the Court must ask, why is there an option to search using an alien number? Appellants do not know the answer to this question, but Appellees presumably do, and yet they have noticeably failed to provide it at any stage of this litigation.

The Court can also easily dispose of Appellees' argument that DHS did not need to conduct an alien number search because Plaintiff Juan Machado did not provide his alien number "with his FOIA request." (*Id.* at 25.) The test for an adequate search is not whether the requester provided information with his FOIA request; the test is whether the agency *knew* the information when it performed the search. The history of this request shows that DHS knew this information when it performed the search because it did not perform the search until after the commencement of this litigation, when Machado's alien number was available to it.

## VI.  DHS WAS REQUIRED TO REFER REQUESTS TO CBP

Appellees' response on this point again relies almost entirely on misdirection. Most glaringly, Appellees insist that Appellants are asking DHS to "search for records no longer in its possession" or "search the records system of another component." (*Id.* at 29.) This is not the case. Appellants are asking DHS to follow its regulations and refer misdirected requests to the other component so that *that component* can search *its* records. DHS has a regulation directly on point, yet for unknown reasons it has chosen to litigate the meaning of "misdirect" rather than follow it. This Court should not indulge it any further.

## VII.  PROPRIETY OF CLAIMED EXEMPTIONS

Appellants have no further argument to add on the issues of Exemptions (b)(3) and (b)(5) and rest on their arguments from their Brief. With respect to Appellees' footnote arguing that they have abandoned their arguments regarding other exemptions, those arguments were almost entirely predicated on the threshold Best Evidence and good faith issues, but if the Court reverses the District Court on either of those issues, then Appellees should be required to file a renewed motion for summary judgment addressing *all* exemptions, since a finding that they were not entitled to summary judgment for evidentiary reasons necessarily applies to *all* the items for which they sought summary judgment.

## **CONCLUSION**

For the foregoing reasons, the Court should reverse and vacate the District

Court's order.

Date: January 12, 2024

Respectfully submitted,


 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing filing contains 5,162 words, and was prepared in 14-point Times New Roman font using Microsoft Word 2016.

 /s/ Kelly B. McClanahan 
Kelly B. McClanahan, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of January, 2024, I filed the foregoing

with the Court's Electronic Case Filing system, causing a copy to be served via

electronic mail on Appellees' counsel of record.

Date: January 12, 2024

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellants*